**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

|  |  |
|---|---|
| LLT MANAGEMENT LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 4:24-cv-75 |
| DR. THERESA SWAIN EMORY, DR. RICHARD LAWRENCE KRADIN, AND DR. JOHN COULTER MADDOX, | |
| Defendants. | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION**
**AND FOR ORDER TO SHOW CAUSE**

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

ARGUMENT ............................................................................................................... 2

    A.  The Doctors' Reconsideration Request Is Proper, And Plaintiff's Contrary Argument Relies On The Wrong Federal Rule of Civil Procedure. ................................... 2

    B.  The Doctors Are Entitled to the Act's Protections. ............................................ 7

        1. New Jersey's Act Applies Under Virginia's Conflict of Laws Rules Because it Is a Substantive Law. .............................................................................................. 8

        2. The Act Applies In Federal Court. ...............................................................11

        3. The Doctors Have Demonstrated Good Cause For Filing Their Motion Now. ........... 16

        4. Defendants' Statements Fall Within The Act. ................................................. 18

CONCLUSION ........................................................................................................... 20

i

# TABLE OF AUTHORITIES

## Cases

*Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015) ............................................ 15

*ABLV Bank v. Ctr. for Advanced Def. Stud. Inc.*, No. 1:14-cv-1118, 2015 WL 12517012
    (E.D. Va. Apr. 21, 2015) ................................................................................................ 8, 9, 10

*Ackerman v. Fuego Leads, LLC*, No. 4:23-CV-61, 2024 WL 3625194
    (E.D. Va. Aug. 1, 2024) .............................................................................................................. 4

*Adelson v. Harris*, 774 F.3d 803 (2d Cir. 2014) ........................................................ 9, 14, 16, 17

*Adelson v. Harris*, 973 F. Supp. 2d 467 (S.D.N.Y. 2013) ................................................................11

*Allen v. Cooper*, 555 F. Supp. 3d 226 (E.D.N.C. 2021) .................................................................. 3

*Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505 (4th Cir. 2003)................................... 2, 3

*Auvil v. CBS 60 Minutes*, 800 F. Supp. 928 (E.D. Wash. 1992) ("*Auvil I*")................................... 4

*Auvil v. CBS 60 Minutes*, 800 F. Supp. 941 (E.D. Wash. 1992) ("*Auvil II*") ................................ 4

*Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003) ............................................................................. 9

*Bobulinski v. Tarlov*, __ F. Supp. 3d __, 2024 WL 4893277,
    (S.D.N.Y. Nov. 26, 2024) ................................................................................................... 10, 16

*Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262 (7th Cir. 1983) .......................... 6

*Burns v. Belafsky*, 741 A.2d 649 (N.J. Super. Ct. 1999) .............................................................. 17

*Caranchini v. Peck*, 355 F. Supp. 3d 1052 (D. Kan. 2018)........................................................... 14

*Carbone v. Cable News Network, Inc.*, 910 F.3d 1345 (11th Cir. 2018)................................. 15, 16

*Chi v. Loyola Univ. Med. Ctr.*, 787 F. Supp. 2d 797 (N.D. Ill. 2011).............................................. 9

*Clifford v. Trump*, 339 F. Supp. 3d 915 (C.D. Cal. 2018) ............................................................ 18

*Colonial River Wealth Advisors, LLC v. Cambridge Inv. Rsch., Inc.*, No. 3:22-cv-717,
    2023 WL 4936708 (E.D. Va. June 5, 2023) ............................................................................ 16

*Conner v. Reagle*, 82 F.4th 542 (7th Cir. 2023) ........................................................................... 17

*CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136 (9th Cir. 2022) ........................................... 13

*Dairy Stores, Inc. v. Sentinel Pub. Co., Inc.*, 516 A.2d 220 (N.J. 1986) ........................................ 5

*Diamond Ranch Acad., Inc. v. Filer*, 117 F. Supp. 3d 1313 (D. Utah 2015) ........................... 9, 14

*Eccleston ex rel. Eccleston v. Patriot Harley Davidson, Inc.*, 75 Va. Cir. 421,
   2008 WL 6759971 (Va. Cir. Ct. 2008) ....................................................................... 8

*Engineered Framing Sys., Inc. v. Vescom Structures, Inc.*, No. 05-CV-1461,
   2005 WL 8174971 (D.N.J. Nov. 1, 2005) ..................................................................... 6

*Englert v. MacDonell*, 551 F.3d 1099 (9th Cir. 2009) .................................................... 10

*Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462 (4th Cir. 1991) ................................. 2, 3

*Fines v. Rappahannock Area Cmty. Servs. Bd.*, 876 S.E.2d 917 (Va. 2022) ................................. 8

*Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415 (1996) .............................................. 11

*Geomatrix, LLC v. NSF Int'l*, 629 F. Supp. 3d 691 (E.D. Mich. 2022),
   *aff'd,* 82 F.4th 466 (6th Cir. 2023) ....................................................................... 7

*Gillon v. Bernstein*, 218 F. Supp. 3d 285 (D.N.J. 2016) ................................................... 5

*Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010) .................................................... *passim*

*Guar. Tr. Co. v. York*, 326 U.S. 99 (1945) .............................................................. 8

*Hanna v. Plumer*, 380 U.S. 460 (1965) .................................................................. 11

*Hayes v. CGB Enters., Inc.*, No. 23-cv-03296, 2024 WL 3540427
   (C.D. Ill. July 25, 2024) .............................................................................. 18

*Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164 (5th Cir. 2009) ................................... 14

*HipSaver, Inc. v. Kiel*, 984 N.E.2d 755 (Mass. 2013) ..................................................... 7

*JB & Assocs., Inc. v. Neb. Cancer Coal.*, 932 N.W.2d 71 (Neb. 2019) ...................................... 7

*La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020) ......................................................... 15

*Makaeff v. Trump Univ., LLC*, 736 F.3d 1180 (9th Cir. 2013) ........................................... 12, 13

*Mercier v. Tandy*, 503 F. Supp. 2d 797 (E.D. Va. 2007) .................................................. 13

*Mendoza v. Comm'r of Soc. Sec.*, No. 1:21-cv-352, 2021 WL 11678528
(E.D. Va. Apr. 9, 2021) ................................................................................... 4

*Mestas v. CHW Grp. Inc.*, No. 19-cv-792, 2019 WL 5549913 (D.N.M. Oct. 28, 2019) ............. 18

*Moore v. Hartman,* 332 F. Supp. 2d 252 (D.D.C.2004) ................................................... 3

*Moreau v. United States Olympic & Paralympic Comm.*, 641 F. Supp. 3d 1122
(D. Colo. 2022) ............................................................................................. 14

*New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090 (C.D. Cal. 2004) ................................. 17

*Perry-Bey v. City of Norfolk, Va.*, 678 F. Supp. 2d 348 (E.D. Va. 2009) ....................... 3

*Phoenix v. Amonette*, 95 F.4th 852 (4th Cir. 2024) ....................................................... 3

*Pledger v. Lynch*, 5 F.4th 511 (4th Cir. 2021) ........................................................11, 12

*Policastro v. Tenafly Bd. of Educ.*, 710 F. Supp. 2d 495 (D.N.J. 2010) ........................ 19

*Pritchard v. Wal Mart Stores, Inc.*, 3 F. App'x 52 (4th Cir. 2001) ............................... 4

*Project Veritas v. Leland Stanford Junior Univ.*, No. C21-1326, 2022 WL 1555047
(W.D. Wash. May 17, 2022) ........................................................................... 13

*Tederick v. Loancare, LLC*, No. 2:22-CV-394, 2024 WL 3607442
(E.D. Va. July 30, 2024) ................................................................................. 3

*United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963
(9th Cir. 1999) ......................................................................................... 14, 16

*Wideman v. Innovative Fibers LLC*, 100 F.4th 490 (4th Cir. 2024) ..............................11

*Zaid v. Boyd*, No. 22-1089, 2022 WL 4534633 (D. Kan. Sept. 28, 2022) ..................... 14

**Statutes**

N.J. Stat. § 2A:53A-50 ............................................................................... 19, 20

N.J. Stat. § 2A:53A-52 ............................................................................... 13, 16

N.J. Stat. § 2A:53A-55 ..................................................................................... 12

N.J. Stat. § 2A:53A-57 ................................................................................ 8, 13

N.J. Stat. § 2A:53A-58 ................................................................................................ 13

N.J. Stat. § 2A:53A-59 ................................................................................................ 16

Va. Code Ann. § 8.01-223.2(A) ................................................................................... 9

**Other Authorities**

*Governor Murphy Signs Bipartisan Bill Protecting Against Lawsuits Designed to Suppress
Free Speech* (Sept. 7, 2023),
    https://www.nj.gov/governor/news/news/562023/20230907d.shtml ................................... 9, 17

**Rules**

Fed. R. Civ. P. 8 ................................................................................................ 11, 12, 13

Fed. R. Civ. P. 9 ................................................................................................ 11, 12, 13

Fed. R. Civ. P. 11 ....................................................................................................... 14

Fed. R. Civ. P. 12 .......................................................................................... 11, 12, 13, 15

Fed. R. Civ. P. 26 ....................................................................................................... 16

Fed. R. Civ. P. 56 .......................................................................................... 11, 12, 13, 15

N.J. R. 4:6-2 .............................................................................................................. 13

**Treatises**

§ 4509 The Erie Doctrine, Rules Enabling Act, and Federal Rules of Civil Procedure—The
    'Substantive Rights' Limitation, 19 Fed. Prac. & Proc. Juris. § 4509 (3d ed.) ...................... 10

## INTRODUCTION

The Doctors seek reconsideration of the Court's motion to dismiss decision based on the narrow question of whether Plaintiff adequately alleged in its Complaint that the statements it challenges were "about the plaintiff's product or property," as required to state a trade libel claim under New Jersey law. That is entirely appropriate under Rule 54, and consistent with this Court's broad discretion to reconsider interlocutory opinions at any point prior to judgment. Plaintiff's contrary arguments erroneously rest on the more burdensome Rule 60 standard for reconsidering final judgments. Plaintiff is equally wrong on the substance. Plaintiff has never cited a single trade libel case that survived the pleadings stage that looks anything like the claim at issue here. As the Doctors have explained, trade libel—which is an offshoot of the cause of action for interference with contractual relations—requires more specific allegations than the defamation and group libel cases Plaintiff has cited. And the challenged statements are, according to Plaintiff's own allegations, about the Article's data and its methodology—not Plaintiff's products.

Plaintiff's arguments about why New Jersey's anti-SLAPP Act does not apply also miss the mark. Because the New Jersey Act is a substantive—not procedural—law, it applies in this case under Virginia's conflict-of-laws rules. And because the Act is part of the applicable state substantive law and does not conflict with the Federal Rules of Civil Procedure, it should be applied in this action to give effect to New Jersey's strong interest in protecting free speech and regulating the attempted suppression of protected speech by powerful corporations.

The Doctors also demonstrated good cause for why the Act should be applied now, and Plaintiff's contrary argument rests on (i) a string of federal habeas cases, which are subject to a uniquely complex and draconian set of procedural bars that have no bearing on this case; and (ii) arguments about delay that ignore the posture of this case, the purpose of the Act, and the fact that Plaintiff is to blame for nearly all of the delay it now claims. Finally, the Doctors' statements

1

plainly fall under the Act's protections: the challenged statements are clearly "on matters of public concern," and Plaintiff does not even attempt to argue that the Doctors were "primarily engaged in the business of selling or leasing goods or services," such that the Act's narrow carve out could exempt them from the law's broad protections.

For all of these reasons, the Doctors respectfully request that this Court reconsider its denial of their motion to dismiss Plaintiff's trade libel claim, apply the Act, and temporarily stay these proceedings while it considers the Doctors' Motion.

## ARGUMENT

### A. The Doctors' Reconsideration Request Is Proper, And Plaintiff's Contrary Argument Relies On The Wrong Federal Rule of Civil Procedure.

"The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003). In service of that responsibility, district courts enjoy significant discretion to revisit interlocutory orders at any time prior to final judgment. *See id*. at 514–15 (citing *Fayetteville Invs. v. Com. Builders, Inc.,* 936 F.2d 1462, 1469 (4th Cir. 1991)). Here, the Doctors have asked the Court to reconsider its conclusion that Plaintiff adequately alleged that the challenged statements were "about the plaintiff's product," as that phrase is applied under New Jersey law. *See* Memorandum in Support of Motion for Reconsideration and for Order to Show Cause at 1–6, ECF No. 30 ("Mem.").

Plaintiff's arguments for why the Doctors' reconsideration request is supposedly improper rest on the wrong Federal Rule. *See* Plaintiff Pecos River Talc LLC's Opposition to Defendants' Motion for Reconsideration and for an Order to Show Cause at 3–4, ECF No. 40 ("Opp."). Because the Court's decision denying in part the Doctors' motion to dismiss is an interlocutory order, the Doctors' reconsideration request is governed by Federal Rule of Civil Procedure 54(b)—not Rule

2

60, which governs reconsideration of final orders and judgments. *See Phoenix v. Amonette*, 95 F.4th 852, 857 (4th Cir. 2024). This is not simply a matter of labels. "Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment," *Am. Canoe Ass'n*, 326 F.3d at 514 (citing 12 Moore's Federal Practice § 60.23), and district courts have "greater flexibility to reconsider an interlocutory order under Rule 54(b) than a final judgment under Rules 59(e) or 60(b)," *Tederick v. Loancare, LLC*, No. 2:22-CV-394, 2024 WL 3607442, at *1 (E.D. Va. July 30, 2024). *See also Fayetteville Invs.*, 936 F.2d at 1470 (district court's application of Rule 60(b) standard to motion to reconsider interlocutory order was reversible error); *Perry-Bey v. City of Norfolk, Va.*, 678 F. Supp. 2d 348, 374 (E.D. Va. 2009) ("In considering motions for reconsideration of such interlocutory orders, a district court is not required to apply the strict standards applicable to motions for reconsideration of a final judgment under Fed. R. Civ. P. 59(e)") (internal quotations omitted); *Allen v. Cooper*, 555 F. Supp. 3d 226, 233 (E.D.N.C. 2021) ("Rule 60(b) is a more stringent standard than that of Rule 54(b)"); *Moore v. Hartman*, 332 F. Supp. 2d 252, 256 (D.D.C.2004) ("[C]ourts have more flexibility in applying Rule 54(b)" than Rule 60(b)).

True, district courts *may* still be "guided by the general principles of Rule 59(e)," and "*may* consider" the Rule 59(e) factors—*i.e.*, whether there is "'(1) an intervening change in controlling law, (2) the emergence of evidence not previously available, and (3) the correction of a clear error of law or the preservation of manifest injustice'"—in adjudicating a Rule 54(b) motion. *Tedrick*, 2024 WL 3607442, at *1 (emphasis added). But the inquiry is necessarily more flexible and, unlike in the Rule 59 or Rule 60 context, these are not the only circumstances supporting reconsideration of an interlocutory order. *See, e.g.*, *id.* (noting several additional circumstances where reconsideration may be appropriate, including where "the court has 'patently misunderstood a

party'") (quoting *First Am. Title Ins. Co. v. Chesapeake Holdings GSG, LLC*, 633 F. Supp. 3d 789, 804 (E.D. Va. 2022)).[1]

Here, the Doctors' motion for reconsideration appropriately argues that the Court made a clear error of law when it concluded that the challenged statements were "about the plaintiff's product or property." *See* Memorandum Opinion and Order at 26, 30–32, ECF No. 27 ("Order"). This is not a mere disagreement with the Court's prior ruling. Instead, the Doctors argue that the ruling was based on a misapprehension of what New Jersey law requires, and whether the Complaint's allegations sufficiently state a claim under that law.

The bulk of the Motion discusses the Court's discussion of "a close[] call," Order at 31— regarding whether the statements are "about the *study*" and not about "talc-based products"—and *Auvil I*, the only case cited by the Court which addresses this element of trade libel. Mem. 2–4 (discussing *Auvil v. CBS 60 Minutes*, 800 F. Supp. 941, 942 (E.D. Wash. 1992) ("*Auvil II*")); Order at 31 (*citing Auvil v. CBS 60 Minutes*, 800 F. Supp. 928, 930 (E.D. Wash. 1992) ("*Auvil I*")). Plaintiff makes no attempt to address the Doctors' argument that the statements are about the Article's methodology (i.e., "about the study"), *compare* Opp. 3–7 *with* Mem. 2–3, perhaps because their own Complaint characterizes the challenged statements as "inaccurate statements *concerning the data* underlying their Article." Compl. ¶ 155 (emphasis added). This allegation squarely conflicts with the Court's conclusion that the Doctors' statements did not merely

---

[1] None of Plaintiff's cited authority supports a different conclusion. In *Pritchard v. Wal Mart Stores, Inc.*, 3 F. App'x 52 (4th Cir. 2001), the plaintiff requested reconsideration of a judgment, which is subject to Rule 60(b)'s more stringent standard. *Id.* at 53. *Mendoza v. Comm'r of Soc. Sec.* involved a *pro se* plaintiff's request for reconsideration of a denial of his "Motion for Leave to File a Law Suit in this Court and Motion to Appoint Attorney," and the court denied relief based in part on confusion about what relief plaintiff was seeking. No. 1:21-cv-352, 2021 WL 11678528, at *1 (E.D. Va. Apr. 9, 2021) (internal citation omitted). And although this Court denied reconsideration in *Ackerman v. Fuego Leads, LLC*, No. 4:23-CV-61, 2024 WL 3625194 (E.D. Va. Aug. 1, 2024), that decision was highly case-specific.

"describe[e] their data set," and therefore could sustain a trade libel claim based on the statements' supposed targeting of the safety of Plaintiff's products. Order at 31. Plaintiff also does not even address the *Auvil* cases in its brief, and instead advances two arguments that both fail. *Compare* Opp. 3–7 *with* Mem. 2–5.

*First,* the Complaint does not contain any allegations—much less "ample" ones—to "show why a *consumer* would associate cosmetic talc with Johnson's Baby Powder" based on the Doctors' challenged statements. *See* Opp. 7 (emphasis added). It instead alleges that various third parties, including the "asbestos mass tort plaintiffs' bar" and specialized public health and mesothelioma-related websites, published niche articles that reference the Article. Compl. ¶¶ 46 (MedicalResearch.com); 47 (VeryWellHealth.com); 48 (SurvivingMesothelioma.com); 49 (Asbestos.com); 50 (Mesothelioma.net); 51 (MesotheliomaGuide.com); 52 (AsbestosJustice.co.uk); 53 (TalcumPowderCancerLawsuit.com); 54 (Work4YouLaw.com); 55 (MesoLawsuitAfterDeath.com). It makes no difference that some of these niche articles mentioned Johnson & Johnson as a manufacturer of cosmetic talc: Plaintiff does not allege that these websites targeted the general public, much less the consumers it claims stopped buying their product as a result of the Article (nor would such allegation be plausible, in any event).[2]

*Second*, Plaintiff's attempt to distinguish *Gillon* misses the mark. *Gillon* includes a lengthy discussion of defamation and product disparagement claims, which "stem from different branches of tort law." *Gillon v. Bernstein*, 218 F. Supp. 3d 285, 294–96 (D.N.J. 2016) (quoting *Dairy Stores, Inc. v. Sentinel Pub. Co., Inc.*, 516 A.2d 220, 224 (N.J. 1986)). While defamation "affords a remedy for damage to one's reputation," product disparagement is an "offshoot of the cause of action for

---

[2]  In other words, it is not plausible that visitors of websites about rare cancers caused by asbestos or lawsuits relating to cosmetic talc chose to stop purchasing Plaintiff's cosmetic talc products because of statements made on those websites.

interference with contractual relations," and requires a "disparaging statement about a product," *id.*, "of a kind calculated to prevent others from dealing with [plaintiff] or otherwise to interfere with others to [plaintiff's] disadvantage." *Engineered Framing Sys., Inc. v. Vescom Structures, Inc.*, No. 05-CV-1461, 2005 WL 8174971, at *2 (D.N.J. Nov. 1, 2005) (quoting *C.R. Bard, Inc. v. Wordtronics Corp.*, 561 A.2d 694, 696 (N.J. Super. Ct. Law Div. 1989)). In other words, because Plaintiff's theory is that the Doctors "disparage[d] the safety of" specific products, *see* Compl. ¶ 153, the challenged statements must clearly target those products—an allegation the Complaint simply does not make.[3]

In all of its briefing on this issue, Plaintiff has never cited a case that is remotely like this one. Instead, it relied on defamation or group libel cases that have nothing to do with whether the challenged statements adequately target Plaintiff's products. *See* ECF No. 17 at 20–22. The Doctors, however, have pointed the Court to a number of cases that are much more like the unique circumstance presented here. Mem. 2–5.[4] This includes *Auvil II*, and others that Plaintiff fails to distinguish. *See* Opp. 4 n.2 (discussing some of the Doctors' caselaw but ignoring *Auvil II* and others). Contrary to Plaintiff's assertion, *JB & Associates* did not "recognize[] that statements concerning a group could be subject to a trade libel claim," Opp. 4 n. 2. Instead, the court recognized that a "group libel claim" (not a product disparagement or trade libel claim) could be

---

[3] Likely because the Doctors never mentioned or referenced Johnson & Johnson in the Article, Plaintiff's trade libel theory has always been that the challenged statements "disparage[d] the safety of" particular products and were "made of and concerning" those products, *see* Compl. ¶¶ 153, 156, rather than disparaging Plaintiff's "business in general," *Engineered Framing Sys., Inc.*, 2005 WL 8174971, at *2.

[4] *See also Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 266, 274 (7th Cir. 1983) (broadcaster's statements that the cigarette industry was a "killer business" that attempts "to addict the children to poison" were insufficient to state product disparagement claim where there was no suggestion that defendant's cigarettes—though mentioned by name—were "defective, or any more unhealthful than other brands of cigarettes").

based on statements that "concern a large group or class of persons or businesses." *JB & Assocs., Inc. v. Neb. Cancer Coal.*, 932 N.W.2d 71, 79 (Neb. 2019). The court in *JB & Associates* also went on to distinguish *Auvil I* and conclude that plaintiff's product disparagement claim failed because it "require[d] more than general, industry-wide allegations." *Id.* at 80–82, 83. Similarly, the court in *HipSaver* found that statements about the quality of a class of products "in general" were "insufficient to give rise to a conclusion that" a defendant was "specifically discussing" plaintiff's product. *HipSaver, Inc. v. Kiel*, 984 N.E.2d 755, 766 (Mass. 2013). And the court's conclusion in *Geomatrix* that statements referring to a set of products were not "published of and concerning" the plaintiff's business or specific products was one of two independent bases for dismissing plaintiff's claim, and therefore hardly dicta. *Geomatrix, LLC v. NSF Int'l*, 629 F. Supp. 3d 691, 712 (E.D. Mich. 2022), *aff'd*, 82 F.4th 466 (6th Cir. 2023). For all of these reasons, the Doctors respectfully request that the Court reconsider its Order, and grant the Doctors' motion to dismiss Plaintiff's trade libel claim.

## B.  The Doctors Are Entitled to the Act's Protections.

The Doctors have also appropriately invoked New Jersey's Anti-SLAPP Act. Both Virginia and New Jersey have Anti-SLAPP laws that reflect state policies to protect people from lawsuits targeting First Amendment-protected speech on issues of public concern, like this one. Yet Plaintiff's position is that neither applies, and that because it filed suit in federal court, the Doctors are stripped of all of these protections. They are wrong. First, because the New Jersey Act is a substantive—not procedural—law, it applies in this action under Virginia conflict-of-laws rules. And second, the New Jersey Act can and should apply in federal court because it is part of the applicable state substantive law and does not conflict with the Federal Rules of Civil Procedure. Contrary to Plaintiff's argument, the Act does not conflict with the Federal Rules governing pleadings and dismissal: rather, the Act mimics the Rule 12(b)(6) and Rule 56 standards, can be

read entirely consistently with those Rules, and should be applied in this action to give effect to New Jersey's state policy and strong interest in protecting free speech and regulating the attempted suppression of that speech by powerful entities with greater resources.

        1. <u>New Jersey's Act Applies Under Virginia's Conflict of Laws Rules Because it Is a Substantive Law.</u>

The New Jersey Act is an immunity doctrine, meant to protect defendants like the Doctors from the costs and burdens of litigating lawsuits aimed at harassing and silencing them. Therefore, it is a classic type of substantive law that applies in this federal diversity action. *See* Order at 7 n.2 (holding that New Jersey substantive law applies to this action).

In Virginia, "a substantive provision is one that 'goes to the very right of the action.'" *Eccleston ex rel. Eccleston v. Patriot Harley Davidson, Inc.*, 75 Va. Cir. 421, 2008 WL 6759971, at *3 (Va. Cir. Ct. 2008) (quoting *Willard v. Aetna Casualty & Surety Co.*, 193 S.E.2d 776, 778 (Va. 1973)). A statutory provision is generally viewed as substantive if it would "significantly affect the result of litigation to disregard the statute." *Id.* (citing *Guar. Tr. Co. v. York*, 326 U.S. 99, 109 (1945)); *ABLV Bank v. Ctr. for Advanced Def. Stud. Inc.*, No. 1:14-cv-1118, 2015 WL 12517012, at *2 (E.D. Va. Apr. 21, 2015) (describing "outcome determinative test, where a law would be considered substantive if it would determine the outcome of litigation"). Immunity doctrines fall squarely in this category of substantive law. *See, e.g.*, *Fines v. Rappahannock Area Cmty. Servs. Bd.*, 876 S.E.2d 917, 926–27 (Va. 2022) (holding "immunity from tort liability" to be a "matter of *substantive* state law" and collecting caselaw) (emphasis in original).

Plaintiff asserts, without analysis or citation, that the New Jersey Act regulates procedure alone and is not an immunity doctrine. Opp. 9. That is incorrect. Among other things, the Act confers an immediate right to interlocutory appeal to defendants who are unsuccessful on a show-cause motion. *See* N.J. Stat. § 2A:53A-57. As numerous courts have found, this express carve out

from the collateral order doctrine indicates a legislative intent to protect individuals from the costs of suit rather than merely provide a defense to liability. *See, e.g.*, *Batzel v. Smith*, 333 F.3d 1018, 1025 (9th Cir. 2003) ("[A] defendant's rights under the anti-SLAPP statute are in the nature of immunity: They protect the defendant from the burdens of trial, not merely from ultimate judgments of liability."). And the legislative history of the Act and statements of New Jersey public officials around its passage make clear that it is designed to protect individuals from the expense of being drawn into court.[5]

Relying on similar reasoning, numerous courts have found anti-SLAPP laws that resemble New Jersey's to be immunity doctrines and therefore substantive law, rather than mere procedural devices. *See, e.g.*, *Batzel*, 333 F.3d at 1025 (construing California anti-SLAPP statute as a substantive immunity from suit, even in the absence of an express immunity provision); *Diamond Ranch Acad., Inc. v. Filer*, 117 F. Supp. 3d 1313, 1318 (D. Utah 2015) (finding anti-SLAPP statute to be in the nature of an immunity because it is designed to protect the defendant from having to litigate meritless claims aimed at chilling First Amendment expression); *cf. ABLV Bank*, 2015 WL 12517012, at *2 (finding D.C. anti-SLAPP law to be procedural based on the fact that it *lacked* an immediate right to appeal, unlike other anti-SLAPP laws previously held substantive).[6] Courts have also reasoned that anti-SLAPP laws are intended to "promote free speech, not merely to increase efficiency in litigation," in holding that they are therefore substantive. *See Chi v. Loyola Univ. Med. Ctr.*, 787 F. Supp. 2d 797, 808–09 (N.D. Ill. 2011) (collecting additional cases finding anti-SLAPP statutes substantive); *see also Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (Nevada's anti-SLAPP immunity provision constitutes substantive law).

---

[5] *See Governor Murphy Signs Bipartisan Bill Protecting Against Lawsuits Designed to Suppress Free Speech* (Sept. 7, 2023), https://www.nj.gov/governor/news/news/562023/20230907d.shtml.
[6] Virginia's own anti-SLAPP law is an immunity doctrine. *See* Va. Code Ann. § 8.01-223.2(A).

9

Plaintiff asserts that "most state courts have found that anti-SLAPP statutes are procedural in nature." *See* Opp. 9 n.5.[7] But as Plaintiff acknowledges, *id.*, anti-SLAPP laws are not a monolith—they have differing characteristics that render some procedural and some substantive. Where anti-SLAPP laws are solely about procedures and lack an immediate right to interlocutory appeal, courts have found them to be procedural. *See, e.g.*, *ABLV Bank*, 2015 WL 12517012, at *3 (holding D.C. anti-SLAPP law, which "simply creates a heightened pleading standard" without any immediate right to appeal, is procedural); *Englert v. MacDonell*, 551 F.3d 1099, 1106 (9th Cir. 2009) (finding lack of immediate right to interlocutory appeal determinative in characterizing Oregon anti-SLAPP law as procedural rather than substantive). But where, as here, they contain the right to appeal and other indicators that they constitute a substantive immunity doctrine, they are substantive law.

That is enough to find the Act is substantive law and therefore applies in this diversity action under Virginia choice of law rules. Plaintiff's cursory argument to the contrary ignores other parts of the Act, including the provision providing for attorney's fees and costs for defendants who successfully obtain dismissal under the Act. That, too, is a provision that courts routinely find to be substantive. *See Godin v. Schencks*, 629 F.3d 79, 85 n.10 (1st Cir. 2010) ("We have held that a nominally procedural state rule authorizing an award of attorney's fees . . . is substantive for purposes of *Erie* analysis."); *Bobulinski v. Tarlov*, __ F. Supp. 3d __, 2024 WL 4893277, at *12 (S.D.N.Y. Nov. 26, 2024) ("The Second Circuit has consistently held that provisions for attorney's

---

[7] Plaintiff cites a secondary source which asserts that "most state courts" have found anti-SLAPP statutes to be procedural. Opp. 9 n.5 (quoting § 4509 The Erie Doctrine, Rules Enabling Act, and Federal Rules of Civil Procedure—The 'Substantive Rights' Limitation, 19 Fed. Prac. & Proc. Juris. § 4509 (3d ed.)). That source, however, cites *zero* state cases finding anti-SLAPP statutes to be procedural, *see* 19 Fed. Prac. & Proc. Juris. § 4509 at n.142, so it is entirely unclear what cases it is relying on. Similarly, Plaintiff does not cite a single case—state *or* federal—finding an anti-SLAPP act to be procedural in nature. *See generally* Opp. 8–9.

fees are a substantive, not procedural, right.") (collecting cases); *Adelson v. Harris*, 973 F. Supp. 2d 467, 493 n.21 (S.D.N.Y. 2013) ("The traditional rule is that state statutes authorizing attorney's fees are substantive in nature when they embody a substantial policy of the state.").

### 2. The Act Applies In Federal Court.

The default presumption in a federal diversity action is that state substantive law and federal procedural rules govern, *see Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996), unless they conflict. "[T]he Supreme Court has provided us with a well-established, two-step framework for mediating any potential conflict" between those state and federal bodies of law. *Pledger v. Lynch*, 5 F.4th 511, 518 (4th Cir. 2021). In assessing whether a state law applies in a federal diversity action, a court first asks "whether the Federal Rules 'answer the question in dispute.'" *Id.* at 518–19 (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)). If a Federal Rule is "sufficiently broad either to cause a direct collision with" state law or "implicitly, to control the issue," then the Federal Rule governs. *Id.* at 519. If there is no conflict, however, the court "must look to state law for the substantive rights of the parties." *See Wideman v. Innovative Fibers LLC*, 100 F.4th 490, 496 (4th Cir. 2024). Whether a state law is substantive must be determined with reference to the twin aims of the *Erie* Rule: discouragement of forum-shopping and avoidance of inequitable administration of the law. *See Hanna v. Plumer*, 380 U.S. 460, 468 (1965).

Plaintiff argues that Federal Rules 8, 9, 12, and 56 answer the same question the New Jersey Act attempts to answer. Opp. 12–13. It is wrong. The cited Federal Rules govern the general pleading and dismissal standards in federal court. The Act, on the other hand, provides a substantive defense in a subset of cases which involve state claims based on a defendant's First Amendment-protected speech. As the Ninth Circuit explained in rejecting a similar argument, this type of anti-SLAPP statute "create[es] a separate and additional theory upon which certain kinds

of suits may be disposed of before trial," and therefore it "supplements rather than conflicts with the Federal Rules." *See Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1182 (9th Cir. 2013); *see also Godin*, 629 F.3d at 88 (explaining that Maine's anti-SLAPP act "is only addressed to special procedures for [a subset of] state claims" and "create[s] a supplemental and substantive rule to provide added protections, beyond those in Rule 12 and 56"). As in *Makaeff*, the anti-SLAPP statute at issue here "asks an entirely different question" than the Federal Rules: "whether the claims rest on the SLAPP defendant's protected First Amendment activity and whether the plaintiff can meet the substantive requirements [New Jersey] has created to protect such activity from strategic, retaliatory lawsuits." *See Makaeff*, 736 F.3d at 1182.

And the Act is entirely consistent with Rules 8, 9, 12, and 56, and does not attempt to displace those basic principles. It does not contain any additional pleading requirements beyond what is required by Rule 8.[8] It also does not impose any heightened burden beyond Rule 12(b)(6) or Rule 56; in fact, the language of the Act mimics the Rule 12(b)(6) and Rule 56 standards. *See* N.J. § 2A:53A-55(a)(3)(b)(i)–(ii) (requiring dismissal where plaintiff "failed to state a cause of action upon which relief can be granted" or where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law").[9] The Act simply provides

---

[8] That distinguishes the New Jersey Act from the statute in *Pledger v. Lynch*, 5 F.4th 511 (4th Cir. 2021). There, the statute in question required the plaintiff to serve, along with the complaint, "a certificate attesting to the merit of th[e] claim." *Id.* at 519. The Fourth Circuit found that conflicted with Rule 8, which requires only a "short and plain statement" of a plaintiff's claim, and Rule 9, which specifies the few situations when heightened pleading is required in federal court. *Id.* at 519–20. Here, the Act imposes no additional pleading requirements.

[9] Another provision of the Act contains different language. *See* N.J. Stat. § 2A:53A-55(a)(3)(a) (requiring dismissal where plaintiff "fails to establish a prima facie case as to each essential element of any cause of action in the complaint"). It is unclear whether this language imposes a different standard than the motion to dismiss standard, but other courts have read anti-SLAPP acts with differing language to incorporate the same burdens under the Federal Rules in order to avoid conflicts. The Court need not answer this question today, as the Doctors do not invoke this section.

for expedited consideration of these bases for dismissal, along with additional protections: an immediate right to interlocutory appeal, a discretionary stay of discovery, and recovery of attorney's fees and costs. *See* N.J. Stat. § 2A:53A-52, -57, -58. These protections do not conflict with Rules 12 or 56. *See also Project Veritas v. Leland Stanford Junior Univ.*, No. C21-1326, 2022 WL 1555047, at *4 (W.D. Wash. May 17, 2022) (no conflict where anti-SLAPP act "essentially mimics the language of Rule 12(b)(6) in stating the standards for courts to use when analyzing a special motion for expedited relief to dismiss"); *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1143 (9th Cir. 2022) (no conflict where "challenges to the legal sufficiency of a defamation claim made pursuant [to] California anti-SLAPP statute must be analyzed under the same standard as Rule 12(b)(6) . . . and challenges to factual sufficiency under the same standard as Rule 56"). Indeed, New Jersey itself has general procedural rules which are analogues to Federal Rules of Civil Procedure 12(b)(6) and 56. *See* N.J. R. 4:6-2. This is "strong evidence that the [general procedural rules and anti-SLAPP] provisions are intended to serve different purposes and control different spheres." *See Makaeff*, 736 F.3d at 1182; *Godin*, 629 F.3d at 88 (similar).

As further evidence that Rules 8, 9, 12, and 56 were not intended to "occupy the field" with respect to pretrial procedures and create an exclusive set of rules, federal law has supplemental rules and special treatment for weeding out meritless claims in particular subsets of cases (just like the New Jersey Act is doing here): as just a few examples, the Prison Litigation Reform Act provides for pre-screening and dismissal of meritless cases, *see Mercier v. Tandy*, 503 F. Supp. 2d 797, 798–99 (E.D. Va. 2007) (citing 28 U.S.C. § 1915(e)(2)), and the Private Securities Litigation Reform Act sets a higher pleading standard in other cases, *see Godin*, 629 F.3d at 91 & n.20 (citing 15 U.S.C. § 78u-4(b)). As the *Godin* court held, this "provides some support to [the] conclusion that Congress, in approving Rules 12 and 56, did not intend to preclude special rules designed to

13

make it more difficult to bring certain types of actions where state law defines the cause of action." *id.*; *see also United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 972 (9th Cir. 1999) ("[T]here is no indication that Rules 8, 12, and 56 were intended to 'occupy the field' with respect to pretrial procedures aimed at weeding out meritless claims.").[10]

Relying on similar reasoning, and analyzing similar laws, other courts, including several courts of appeals, have found anti-SLAPP laws apply in federal diversity actions. *See, e.g.*, *Newsham*, 190 F.3d at 972–73 (California's anti-SLAPP law can "exist side by side" with Rules 8, 12, and 56, "each controlling its own intended sphere of coverage without conflict") (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752 (1980)); *Godin*, 629 F.3d at 87–92 (similar, as to Maine anti-SLAPP law); *Adelson*, 774 F.3d at 809 (Nevada anti-SLAPP act's provisions regarding civil liability and mandatory fee shifting apply in federal court); *Moreau v. United States Olympic & Paralympic Comm.*, 641 F. Supp. 3d 1122, 1132–33 (D. Colo. 2022) (same, as to Colorado anti-SLAPP act); *Zaid v. Boyd*, No. 22-1089, 2022 WL 4534633, at *5 (D. Kan. Sept. 28, 2022) (Kansas anti-SLAPP act); *Caranchini v. Peck*, 355 F. Supp. 3d 1052, 1057 (D. Kan. 2018) (same); *Diamond Ranch Acad., Inc.*, 117 F. Supp. 3d at 1320 (California and Utah anti-SLAPP laws). *See also Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 183 (5th Cir. 2009) (Louisiana anti-SLAPP law).

To be sure, Plaintiff has cited several cases that have come to the opposite conclusion. *See* Opp. 12–13. This does not change the result in this case for two reasons: (i) Plaintiff's cases generally rely on reasoning inapplicable in this case and (ii) even if courts disagree, there is a

---

[10] Plaintiff briefly suggests that the Act conflicts with Rule 11's language that "a pleading need not be verified or accompanied by an affidavit." Opp. 13 n.9. This argument appears to be drawn directly from *Pledger*—but it does not apply here. Unlike in *Pledger*, where the law in question required "an early affidavit from an expert," *see* 5 F.4th at 520, the New Jersey Act does not require any verification, certification, or affidavit. Accordingly, it does not conflict with Rule 11.

circuit split on this issue, the Fourth Circuit has yet to decide it, and the reasoning of the cases cited above is more persuasive and faithful to *Shady Grove* than Plaintiff's caselaw.

In particular, many other courts have focused on the fact that some state anti-SLAPP laws require a heightened pleading burden—for example, that a plaintiff show a "likelihood of success" on their claims in order to avoid dismissal. This is a significantly higher bar than Rules 12 and 56, and courts therefore have held that this impermissibly imposes a higher burden than the federal rules. *See, e.g.*, *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1334 (D.C. Cir. 2015) (finding conflict because anti-SLAPP act required a plaintiff to "show a likelihood of success of the merits," thus "setting up an additional hurdle" beyond the Federal Rules); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1351 (11th Cir. 2018) (refusing to apply anti-SLAPP act that imposed a "far more demanding" burden on plaintiffs by requiring them to show likelihood of prevailing at trial); *La Liberte v. Reid*, 966 F.3d 79, 83 (2d Cir. 2020) (similar, as to anti-SLAPP law requiring plaintiff to show "a probability that the plaintiff will prevail"). That reasoning does not apply here, where the language in the New Jersey Act mimics the language of Rules 12 and 56.

Where there is no conflict, the next question is whether applying the state law will serve the "twin aims of the *Erie* rule: discouragement of forum shopping and inequitable administration of the laws." *Godin*, 629 F.3d at 91. Here, it would promote both. If the Act were not enforceable in federal court, this would incentivize plaintiffs to seek a federal forum to avoid the Act's protections. *See id.* at 91–92. The same defense would also result in different outcomes in state and federal forums: in federal courts, plaintiffs filing SLAPP suits could subject defendants to more expansive and prolonged litigation burdens, and could circumvent the right to appeal and attorney's fees provisions. *See id.* Filing in federal court would also allow plaintiffs to achieve an end run around the legislature's clear purpose to discourage these kinds of harassing lawsuits. This

15

would lead to inequitable administration of justice. *See also Newsham*, 190 F.3d at 973 ("Plainly, if the anti-SLAPP provisions are held not to apply in federal court, a litigant interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum.").

Plaintiff is also wrong that the discovery provisions of the New Jersey Act conflict with Rule 26. *See* Opp. 13. The Act provides discretionary authority to enter a stay. *See* N.J. Stat. § 2A:53A-52(a)(1) ("the court *may* order . . . discovery . . . to be stayed" (emphasis added)). This is entirely consistent with the Court's authority under Rule 26 to issue a stay of discovery. *See* Fed. R. Civ. P. 26(c)(1)(A)–(B); *see Colonial River Wealth Advisors, LLC v. Cambridge Inv. Rsch., Inc.*, No. 3:22-cv-717, 2023 WL 4936708, at *1 (E.D. Va. June 5, 2023) (court has "wide discretion" to "stay discovery during the pendency of a motion to dismiss for good cause shown"). Plaintiff cites no case finding a conflict on this basis, and in fact cases finding anti-SLAPP discovery provisions to present a conflict appear to arise exclusively in the context of statutes with mandatory stay provisions. *See, e.g.*, *Carbone*, 910 F.3d at 1351.

Finally, Plaintiff does not address whether the attorney's fees provision of the New Jersey Act can apply in federal court. Many courts have held they can and should. Even courts that have found conflict with certain provisions in anti-SLAPP acts have found that attorney's fees provisions can be applied in federal diversity actions unproblematically. *See, e.g.*, *Bobulinski*, 2024 WL 4893277, at *12; *Adelson*, 774 F.3d at 809.

### 3. The Doctors Have Demonstrated Good Cause For Filing Their Motion Now.

Granting a good cause exception in this case comports with the overall purpose of the Anti-SLAPP statute, which the New Jersey legislature deemed so critical to protecting First Amendment interests that it commanded that the Act should be "broadly construed and applied." N.J. Stat. § 2A:53A-59. It simply is not true that the purposes of the Anti-SLAPP statute would be "significantly diminished," Opp. 16, if applied now. The animating purpose of the statute is to

deter "powerful parties [that] aim to silence their critics by making it impossible for those with fewer resources to spend the time and money necessary to legally defend themselves."[11] This case remains in its infancy, and those goals would still be well served by considering the Doctors' Motion at this stage. *See also* Mem. 6–9.

All three of the cases Plaintiff cites for its argument that ignorance of the law cannot satisfy the good cause standard, Opp. 15–16, are federal habeas cases, which are famously "governed by a set of strict deadlines, byzantine procedural default rules, and a body of jurisprudence that is quite complex." *Conner v. Reagle*, 82 F.4th 542, 543 (7th Cir. 2023). Plaintiff does not cite a single case supporting its argument in a non-habeas civil case like this one, and ignores entirely the New Jersey case law the Doctors cited holding that "inadvertence of counsel" can constitute good cause where "the delay does not prejudice the adverse party and a rational application under the circumstances present favors a determination that provides justice to the litigant." *See* Mem. 8–9 (quoting *Burns v. Belafsky*, 741 A.2d 649, 654 (N.J. Super. Ct. 1999)).

Plaintiff also makes no effort to address any of the cases the Doctors cited where other courts around the country considering late anti-SLAPP motions found good cause in circumstances like those present here. *See* Mem. 8–10; *Adelson*, 774 F.3d at 810 (finding good cause "given the difficult choice-of-law question"); *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1100 (C.D. Cal. 2004) ("Because this case has not proceeded in any material respect with the exception of litigating Plaintiff's motion for a preliminary injunction, the filing of this anti-SLAPP motion after the sixty-day period does not frustrate the anti-SLAPP statute's purpose of disposing of improper

---

[11] *See Governor Murphy Signs Bipartisan Bill Protecting Against Lawsuits Designed to Suppress Free Speech* (Sept. 7, 2023), https://www.nj.gov/governor/news/news/562023/20230907d.shtml.

lawsuits in the early stages . . ."); *Clifford v. Trump*, 339 F. Supp. 3d 915, 924 (C.D. Cal. 2018) (where case is at its early stage, prejudice from an untimely anti-SLAPP motion is minimal).

Finally, Plaintiff's complaints about delay, Opp. 1, 16, ring hollow against the backdrop of the procedural history of this case. Plaintiff waited almost three years after the Article was published to file suit, which it improperly filed in a bankruptcy case. Compl. ¶¶ 3, 19. After the Third Circuit dismissed the bankruptcy as not having been filed in good faith, *In re LTL Mgmt.*, LLC, 58 F.4th 738, 746 (3d Cir. 2023), *amended and superseded by In re LTL Mgmt., LLC*, 64 F.4th 84 (3d Cir.), Plaintiff waited another five months to file its second suit against the Doctors, and then selected a forum that plainly lacked jurisdiction over the Doctors. *LTL Mgmt. LLC v. Emory*, No. 23-cv-3649, 2024 WL 1928825, at *10 (D.N.J. Apr. 30, 2024) (dismissing complaint for lack of jurisdiction and denying jurisdictional discovery after noting it is "only appropriate where it is not clearly frivolous"). And even setting aside that most of this delay Plaintiff complains of was of its own making, a brief, temporary pause while the Court considers the constitutional and statutory interests at stake would create little, if any prejudice. *See, e.g.*, *Hayes v. CGB Enters., Inc.*, No. 23-cv-03296, 2024 WL 3540427, at *1 (C.D. Ill. July 25, 2024) ("A mere delay in plaintiff's ability to proceed to discovery caused by the stay amounts to little, if any, prejudice" (cleaned up)); *Mestas v. CHW Grp. Inc.*, No. 19-cv-792, 2019 WL 5549913, at *2 (D.N.M. Oct. 28, 2019) (rejecting plaintiff's argument that generalized delay alone amounted to prejudice).

### 4. Defendants' Statements Fall Within The Act.

Plaintiff is also wrong that the Doctors' statements fall outside the Act's protections, for two reasons. First, Plaintiff's argument that the Doctors' speech was not "on matters of public concern," Opp. 17, makes no sense. This Court, of course, has not ruled that the Doctors' statements were "genuinely defamatory communications" outside the scope of the First Amendment. *Id.* (citing Order at 27). This Court instead merely concluded "the content of what

the defendants wrote suggests it is a statement of fact" and not an "exaggeration." Order at 27. And while it is also true that statements *proven* to be defamatory are not protected by the First Amendment, *see Policastro v. Tenafly Bd. of Educ.*, 710 F. Supp. 2d 495, 504 (D.N.J. 2010), that has no bearing on whether—at this stage—the challenged statements are on a "matter of public concern." N.J. Stat. § 2A:53A-50(b)(3). The Doctors cited ample cases confirming that their statements fall squarely within the Act's protections, Mem. 10-11, which Plaintiff entirely ignored.

Plaintiff's second argument that the Act's exception applies here fares no better. The Act does not apply under this provision if two things are true: (i) the defendant "primarily engaged in the business of selling or leasing goods or services"; and (ii) "the cause of action arises out of a communication related to the person's sale or lease of the goods or services." N.J. Stat. § 2A:53A-50(c)(3). The Doctors submitted declarations which show (among other things) that none of them were "primarily engaged in the business of selling or leasing goods or services." *See* Mem. 11–13. Plaintiff does not address this requirement at all beyond inappropriately characterizing these sworn statements as "self-serving" and "not credible." Opp. 17–19 & n.11 (describing the services as "extremely lucrative," but not addressing whether the Doctors were "primarily engaged" in selling them). Because the first prong of the exception fails, the Court can end its inquiry here.

But even if that was not the case, Plaintiff's arguments on the second prong—whether the "communication related to the person's sale or lease of the goods or services"—also fail. The inquiry here is not whether the Article "could support [the Doctors'] litigation opinions." Opp. 19. The statute requires that the communication relate to the Doctors' *sale* of "goods or services." N.J. Stat. § 2A:53A-50(c)(3). Plaintiff does not even attempt to argue that the Article related to the Doctors' sale of their services—in fact, it never once mentions the word "sale" in its argument, beyond citing the statute itself. *Id.* at 16–19. This is telling, and fatal to Plaintiff's arguments.

19

Finally, Plaintiff makes much of the Doctors' reliance on their scholarship to support their expert opinions, Opp. 18–19, but these later-in-time citations to the Article do not magically transform the Article itself into a "communication related to the sale" of the Doctors' expert services. N.J. Stat. § 2A:53A-50(c)(3).[12] Because it is "virtually impossible to perform scientific research on mesothelioma cases that are not also the subjects of litigation," Decl. of Dr. Theresa Emory, MD ¶ 8 (Feb. 17, 2025) (ECF No. 30-1), Plaintiff's theory would mean that *any* academic article about the cause of mesothelioma necessarily could be construed to relate to expert-witness services, and be exempt from the Act's protections. The Act's exception, however, does not sweep so broadly, and is instead obviously meant to exempt, as just a few examples, a competitor's false advertising claim, a consumer's deceptive trade practices' claim, and a purchaser's fraudulent misrepresentation claim. For all of these reasons, the Act's exception does not apply, and the Doctors are exactly the type of defendants the Act was intended to protect.

## CONCLUSION

For the reasons the Doctors stated in their Motion, and in light of the Act's presumption in favor of staying proceedings, the Doctors respectfully submit that a temporary stay of discovery is warranted while their Motion is pending, and additionally request that the Court reconsider its Order and dismiss Plaintiff's trade libel claim with prejudice.


Dated: March 11, 2025                    Respectfully submitted,

                              By:    /s/ *Kathryn M. Ali*
                                     Kathryn M. Ali (VSB No. 97966)
                                     Elizabeth C. Lockwood (admitted *pro hac vice*)

---

[12] It also is not surprising that the Doctors relied on their scholarship in future testimony, given their belief that it made an important contribution to the scientific literature and the medical community's understanding of an exceedingly rare and lethal disease. *See* Decl. of Dr. Theresa Emory, MD ¶¶ 7–8 (Feb. 17, 2025) (ECF No. 30-1); Decl. Dr. John C. Maddox, MD ¶ 9 (Feb. 18, 2025) (ECF No. 30-2); Decl. of Richard L. Kradin, MD ¶ 9 (Feb. 18, 2025) (ECF No. 30-3).

ALI & LOCKWOOD LLP
501 H Street, Suite 200
Washington, D.C. 20002
Telephone: 202-651-2476
katie.ali@alilockwood.com
liz.lockwood@alilockwood.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of March, 2025, a copy of the foregoing Motion has been filed electronically. Notice of this filing has been served upon counsel of record via the Court's electronic filing system. Access to this filing can be obtained via the Court's electronic filing system.

*/s/ Kathryn Ali*
Kathryn Ali
