# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

PECOS RIVER TALC LLC,

    Plaintiff,

    v.

THERESA SWAIN EMORY, *et al.*,

    Defendants.

Case No. 4:24-cv-75

## OPINION & ORDER

The Court previously granted in part and denied in part a Motion to Dismiss filed by Defendants Theresa Swain Emory, John Maddox, and Richard Kradin. ECF Nos. 14 (Motion), 27 (Memorandum Opinion and Order). The defendants filed a Motion for Reconsideration, seeking to change the outcome as to the one claim the Court preserved, and asking for a show cause hearing under New Jersey's anti-SLAPP law. ECF No. 29. Reconsideration will be denied because the Court's decision was not clearly erroneous. The request for an anti-SLAPP hearing will be denied because the defendants do not demonstrate good cause to invoke the law more than six months late.

## I.   BACKGROUND

The defendants published an article in a scientific journal, claiming they had identified 75 previously unreported subjects with mesothelioma who had no known exposure to asbestos except for use of cosmetic talc. ECF No. 1-2. Johnson & Johnson, who produced and marketed cosmetic talc products, was called to defend litigation by

plaintiffs who alleged its products caused their cancer. Through a subsidiary,[1] Johnson & Johnson brought three claims against the defendants. ECF No. 1. The Court dismissed two. ECF No. 27. The one claim that remains is for product disparagement under New Jersey law. *Id.*

## II.   LEGAL STANDARDS

### A.   Motions for Reconsideration

"[A]ny [interlocutory] order or other decision . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003) (a district court has "the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment"). "A district court may grant a motion for reconsideration under Rule 54(b): (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available earlier; or (3) to correct a clear error of law or prevent manifest injustice." *LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12-cv-363, 2014 WL 2121563, at *1 (E.D. Va. May 20, 2014) (citing *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993) (articulating the same standard for motions to amend a judgment under Fed. R. Civ. P. 59(e)).

---

[1] Plaintiff Pecos River Talc LLC was formed as part of Johnson & Johnson's strategy to resolve talc-related claims through bankruptcy. *See* ECF No. 32 ¶¶ 1–3. The Complaint was filed by a similar company, LLT Management LLC, which has since been restructured. ECF No. 1; *see* ECF No. 32 ¶ 3. For the sake of clarity, the Court refers to the plaintiff as Johnson & Johnson.

### B.    New Jersey's Anti-SLAPP Law

In 2023, New Jersey enacted the Uniform Public Expression Protection Act, N.J. Stat. §§ 2A:53A-49, *et. seq.*, which aims "to protect people" from Strategic Lawsuits Against Public Participation ("SLAPP"). New Jersey Governor's Message, 2023 S.B. 2802 / A.B. 4393. Such suits are "intended to intimidate" speakers like "journalists, academics, advocates, and whistleblowers" by using "lawsuits and litigation threats to punish and silence those who might speak unfavorably about" "[p]owerful entities." *Id.* New Jersey's anti-SLAPP law enables a court to act early in the litigation to dismiss with prejudice an action covered under the statute that does not state a claim on which relief can be granted or that would fail at summary judgment. *See* N.J. Stat. § 2A:53A-55.

To invoke the law and seek early termination of a case, a defendant "may file an application for an order to show cause . . . to dismiss the cause of action." N.J. Stat. § 2A:53A-51. Such an application must be submitted to the Court within 60 days after service of the complaint, unless the defendant demonstrates "good cause" for a later filing. *Id.*

## III.   ANALYSIS

### A.    Motion for Reconsideration

In ruling on the Motion to Dismiss, the Court found the Complaint plausibly alleged the defendants (1) published (2) with malice (3) a false statement of fact (4) about Johnson & Johnson's product or property (5) that caused special damages. *See* ECF No. 27 at 25–33; *see Dairy Stores, Inc. v. Sentinel Publishing Co., Inc.*, 516 A.2d

220, 238 (N.J. 1986) (Garibaldi, J., concurring). In the present Motion, the defendants assert the conclusion that their statements in the article were 'about Johnson & Johnson's product' was clearly erroneous under New Jersey law.[2] *See* ECF No. 30 at 7–11.

The defendants argue that a New Jersey product disparagement claim requires a statement that "*explicitly* impute[s] to the corporation fraud, deceit, dishonesty, or reprehensible conduct *in relation to the product* at issue." ECF No. 30 at 7 (citation and quotation marks omitted, emphasis supplied by the defendants). But that requirement applies to defamation claims, not claims for product disparagement. The broader passage from which the defendants draw this language makes that clear:

> [C]ourts generally have been reluctant to find that a disparaging statement that merely criticizes a product is also defamatory. Defamation is found only where the imputation fairly implied is that the plaintiff is dishonest or lacking integrity, or that he is deliberately perpetrating fraud upon the public by selling a product which he knows to be defective. Thus, unless the disparaging statement explicitly imputes to the corporation fraud, deceit, dishonesty, or reprehensible conduct in relation to the

---

[2] Federal courts sitting in diversity apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). In Virginia, the law of the place of the wrong governs substantive matters in tort cases. *Jones v. R.S. Jones & Assocs.*, 431 S.E.2d 33, 34 (Va. 1993). The place of the wrong is "the state where the last event necessary to make an actor liable for an alleged tort takes place." Restatement of Conflicts of Laws § 377; *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986). Because product disparagement is not complete until the plaintiff suffers damages, the 'place of the wrong' is the place where those damages are sustained. *See Dairy Stores*, 516 A.2d at 238 (elements, including special damages). Johnson & Johnson is a citizen of New Jersey, so its alleged losses were sustained there. ECF No. 1 ¶ 11. Thus, New Jersey substantive law governs the parties' dispute.

4

> product, courts will not deem a merely critical statement to
> be defamatory.

*Dairy Stores*, 516 A.2d at 238 (cleaned up). The plaintiff in *Dairy Stores* brought a defamation claim, and the New Jersey Supreme Court noted that it could also have been construed as a claim for product disparagement. Judge Garibaldi thought the "plaintiff's cause of action [was] solely one for product disparagement," and he set out to define the contours of the "two distinct torts." *Id.* at 237. That concurrence has become the seminal opinion on New Jersey product disparagement.

Judge Garibaldi explained that product disparagement actions address "pecuniary harm caused by false statements about [a plaintiff]'s products," whereas defamation deals with harm to a plaintiff's "good name," "character," and "reputation[]." *Id.* In the relevant passage, the kinds of bad acts that must be "explicitly impute[d]" to a defendant are matters of character and reputation: "fraud, deceit, dishonesty, or reprehensible conduct." *Id.* There is no way to read the passage as defining the tort of product disparagement. Therefore, in the present case, the Court correctly did not ask whether the Complaint alleges the defendants 'explicitly imputed fraud, deceit, dishonesty, or reprehensible conduct' to Johnson & Johnson.

Additionally, the Court cannot read an 'explicitly impute' requirement from the defamation context into the product disparagement context. The entire function of that phrase in Judge Garibaldi's concurrence is to distinguish statements about a company's product from statements about the company itself. In opining that the plaintiff's claim was for product disparagement and not defamation, Judge Garibaldi reasoned that the defendant made no statement implying "fraud, deceit, dishonesty,

5

or reprehensible conduct on [the plaintiff's] part." *Dairy Stores*, 516 A.2d at 238. Thus, the *absence* of a statement 'explicitly imputing' bad character to the maker of a product is what defines a product disparagement claim as distinct from a defamation claim. *See id.* (identifying the *Dairy Stores* claim as one for product disparagement because "[the defendant's] statements were merely about [the plaintiff's] product and affected only [the plaintiff's] ability to sell that product," as opposed to being about the defendant company's character).

The defendants' misunderstanding of *Dairy Stores*[3] seems to stem from a misapprehension about the meaning of "impute." The defendants assert that the Court should have inquired whether the allegedly false statements "explicitly imputed [Johnson & Johnson] and its product." ECF No. 30 at 7–8 (quotation marks omitted). But that sentence does not make sense. The defendants appear to believe

---

[3] Instead of citing *Dairy Stores* directly, the defendants rely on *Gillon v. Bernstein*, 218 F. Supp. 3d 285, 295–96 (D.N.J. 2016), which itself quotes *Dairy Stores*. This is puzzling, since "where the state law supplies the rule of decision," federal district courts are bound by the highest court in the relevant state, not by other federal district courts applying that state's law (no matter where the federal district court sits). *Fid. Union Tr. Co. v. Field*, 311 U.S. 169, 177 (1940); *cf. Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 96 (4th Cir. 2011) ("[I]n a diversity case, a federal court should not interpret state law in a manner that may appear desirable to the federal court, but has not been approved by the state whose law is at issue."). It is also confusing because the *Gillon* court's analysis draws the correct distinction between defamation and product disparagement and reads 'impute' correctly under New Jersey law, which is fatal to the defendants' argument. *See Gillon*, 218 F. Suppl 3d at 296 ("[T]he critical question before the Court is whether the two remaining statements from Defendant's posting on August 9, 2011, impute to Plaintiffs 'fraud, deceit, dishonesty, or reprehensible conduct' or whether the statements are merely critical of Plaintiffs' services."). Though this Court agrees with *Gillon*'s reasoning and would come to the same decision either way, the decision in the present matter must rely on *Dairy Stores* instead of a federal district court opinion applying that case.

the word 'impute' means something like 'name' or 'implicate'—which would generate the question 'did the statements explicitly *implicate* Johnson & Johnson and its products?' In reality, 'impute' means "to credit or ascribe"—*i.e.*, something closer to "attribute." *Impute*, Merriam-Webster.com, 2025, http://www.merriam-webster.com/dictionary/impute [https://perma.cc/8UFE-ZVYL] (last visited April 30, 2025). To function in a sentence, 'impute' typically requires both a direct and an indirect object[4]—*e.g.*, 'the disparaging statement explicitly imputes fraud (direct object) to the corporation (indirect object) in relation to the product.' *Cf. Dairy Stores*, 516 A.2d at 238. A speaker cannot 'impute a company and its product (direct objects),' as the defendants would have it.

Even if the question were whether the Complaint plausibly alleges the defendants' statements explicitly *implicated* Johnson & Johnson and its products, the defendants would fare no better. The New Jersey Supreme Court would not require[5]

---

[4] 'Impute' can also mean 'estimate' or 'assume,' as in 'imputed value.' *Id.* (providing examples). No object is required in that context, but that meaning does not apply here.

[5] The question of whether the defendant's statements were tied closely enough to the plaintiff's product was never presented in *Dairy Stores*, because the statements at issue there literally named the plaintiff's product. *Dairy Stores*, 516 A.2d at 222–23. Therefore, that case does not reveal the conditions under which the New Jersey Supreme Court would find a statement too loosely tied to a defendant's product to sustain a product disparagement claim. Nor is this Court aware of any other New Jersey Supreme Court case that defines that boundary. When the relevant state's highest court has issued no decision on a particular issue, the federal court must "predict" the law the state's highest court would apply. *Knibbs v. Momphard*, 30 F.4th 200, 213 (4th Cir. 2022) (citation omitted). When an intermediate appellate state court decision addresses the issue, the federal court must not disregard it "unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Comm'r v. Bosch's Est.*, 387 U.S. 456, 465 (1967).

"the actual naming of plaintiff" to sustain a cause of action for product disparagement. *Dijkstra v. Westerink*, 401 A.2d 1118, 1120 (N.J. App. 1979) (explaining the requirement in the context of libel), *cert. denied*, 407 A.2d 1203 (N.J. 1979). Instead, it would be enough to plausibly allege that "those who read or hear the [statement] reasonably understand the plaintiff to be the person intended." *Id.*; *see Foxtons, Inc. v. Cirri Germain Realty*, No. A-6120-05T3, 2008 WL 465653, at *4 (N.J. Super. Ct. App. Div. Feb. 22, 2008) (unpublished) (applying *Dijkstra* to a product disparagement claim); *Synergy Microwave Corp. v. Inst. of Elec. & Elecs. Eng'rs*, No. A-1317-21, 2023 WL 105708, at *4 (N.J. Super. Ct. App. Div. Jan. 5, 2023) (suggesting product disparagement requires a statement that "reflects on the quality of the plaintiff's product"). While a "plaintiff's own belief" that its product is the target of a disparaging statement would be "insufficient," a plausible allegation that a "specific third party thought" the statement referred to the plaintiff would weigh in favor of finding a product disparagement pleading sufficient. *Foxtons*, 2008 WL 465653, at *5 (noting that identifying a "specific third party" is "not a mandatory requirement").

The Complaint in the present case plausibly alleges that Johnson & Johnson "maintained well over a majority of the market share for talc powder products" and that their products were "the leading brands . . . in the market" ECF No. 1 ¶¶ 156–157. Those allegations alone make it reasonable to infer that a consumer who learned that the defendants claimed to have identified 75 new subjects who had mesothelioma but no known asbestos exposures except to cosmetic talc would understand the article

8

to impugn the safety of Johnson & Johnson's products.[6] Moreover, the Complaint incorporates statements on plaintiffs' attorneys' websites that tend to demonstrate the article's readers actually linked the defendants' statements to Johnson & Johnson. *See* ECF Nos. 1-6 ("Manufacturers like Johnson & Johnson insist they are pure. But a new study shows that may not be the case."); 1-9 (listing Johnson & Johnson's baby powder as a "culprit"). These allegations are sufficient to make out the 'about' element of a product disparagement claim under New Jersey law.

The defendants state: "It cannot be that anytime an academic publication discusses potential dangers associated with an industry's practices or products . . . the academic must fear a trade libel claim from some unnamed manufacturer in that industry." ECF No. 30 at 10. And that is true. Such a claim will not survive a motion to dismiss unless the plaintiff plausibly alleges the publication included a false statement about the plaintiff's product. The Complaint in the present case does that.

Finding no clear error of law in its Memorandum Opinion and Order on the Motion to Dismiss, the Court will deny the defendants' Motion for Reconsideration.

---

[6] The defendants at times seem to advance their own view of the article as grounds for dismissal, but under Fed. R. Civ. P. 12(b)(6), the Court is not permitted to entertain the defendants' preferred interpretation of the facts. The defendants assert that "[t]he Complaint is devoid of any plausible allegation that consumers (as opposed to the medical community, who were the intended audience for the [a]rticle) knew of the [a]rticle at all, much less that they understood it to reference [Johnson & Johnson] or its products." ECF No. 30 at 8. However, at this stage, the Court must assume the defendants' intended audience is who Johnson & Johnson alleges. *See* ECF No. 1 ¶ 8 (alleging the defendants' intended and actual audience was the plaintiffs' bar). And regardless, the inquiry is what "those who read or hear[d]" the defendants' statements would have understood—not just what the defendants' 'intended audience' would have thought. *Dijkstra*, 401 A.2d at 1120.

9

### B.      Motion for a Hearing Under New Jersey's Anti-SLAPP Law

The parties invite the Court to delve into a number of thorny issues to determine whether New Jersey's relatively new anti-SLAPP law applies to the present case. However, because the defendants do not demonstrate good cause to excuse their late request for a show cause order, the Court will leave those questions for the New Jersey courts to decide. *Cf. Knibbs*, 30 F.4th at 213 (courts "respond conservatively when asked to discern governing principles of state law") (quotation marks and citation omitted).

> When evaluating good cause in the context of a late filing, New Jersey courts have considered several factors. These include: the party's good faith; the nature . . . of the delay; prejudice to the adverse party; and whether granting a good cause exception comports with the overall purpose of the applicable statute.

*State in Int. of A.G.*, No. A-2549-20, 2021 WL 5441316, at *4 (N.J. Super. Ct. App. Div. Nov. 22, 2021) (citations omitted) (collecting cases). The Court does not doubt that the defendants have operated in good faith. But the other three factors strongly disfavor excusing the defendants' delay.

The nature of the delay disfavors finding good cause in this case. Firstly, the delay was long: The defendants filed the current motion more than six months after the deadline to seek relief under the New Jersey anti-SLAPP law. *Compare* ECF No. 9 (waiver of service on June 3, 2024, resulting in a July 29, 2024 deadline) *with* ECF No. 29 (Motion, filed February 19, 2025). Just as critically, the reason for the delay appears to be a matter of strategy, not a mere oversight. Defense counsel acknowledges that after Johnson & Johnson's claims were dismissed in New Jersey

10

and refiled in this Court, she "did not revisit the question" whether relief might be available under an anti-SLAPP law. ECF No. 30 at 12. That tells the Court that counsel did 'visit' the issue in the first place—she was not merely unaware that an anti-SLAPP law might afford the defendants relief. However, counsel was aware that "whether an anti-SLAPP law applies in a federal diversity action is complex and implicates difficult choice-of-law questions." *Id.* at 12–13. "After this Court . . . found that New Jersey substantive law does apply to [Johnson & Johnson's] state law claims, . . . counsel reassessed whether New Jersey had an available anti-SLAPP law." *Id.* (quotation marks omitted). In other words, once the legal issues associated with invoking the anti-SLAPP law appeared to narrow, counsel decided to pursue a path that she had previously 'assessed' differently.

While the Supreme Court of New Jersey has been reluctant to hold an attorney's inadvertent error against a litigant—at least in the case of a "short delay," *Martindell v. Martindell*, 122 A.2d 352, 356 (N.J. 1956)—the same principle does not apply when the relevant decision is a matter of judgment. *Cf. Karcher v. Philadelphia Fire & Marine Ins. Co.*, 116 A.2d 1, 2 (N.J. 1955) ("A mistake in judgment by an attorney . . . is ordinarily not comprehended within the meaning of the terms 'mistake, inadvertence, surprise, or excusable neglect' . . . . This would give litigants a most dangerous license to experiment with the administration of justice."). It is often wise to forego certain avenues of possible relief in order to focus limited resources on other issues. But once such a decision is made, demonstrating good cause to reverse course is usually an uphill climb. That is the case here.

The prejudice to Johnson & Johnson associated with a further stay of discovery and preparation for an extra hearing would be substantial. The Court has already stayed this case once and agreed to a phased discovery plan for the remainder of the litigation, which includes an expedited schedule for dispositive motions. ECF Nos. 26, 39. Having concluded that one of Johnson & Johnson's claims should proceed, the Court finds the prejudice factor favors avoiding further delays.

Finally, the purpose of the anti-SLAPP law figures into the Court's reasoning significantly. As compared to most other laws that impose filing deadlines, this statute is about timing predominately. The principal purpose of anti-SLAPP protections is to afford quick relief to individual defendants who might otherwise be overwhelmed by litigation that will ultimately fail on a motion to dismiss or a motion for summary judgment. Here, the Court had already ruled on the defendants' motion to dismiss before they sought an anti-SLAPP hearing, and the parties have already agreed to a discovery schedule that will enable accelerated resolution of motions for summary judgment. ECF Nos. 27, 39. And while the law affords an expedited right of appeal from an order denying an order to show cause, it does not give the defendants early access to an appeal on the merits. *See* N.J. Stat. § 2A:53A-57. In short, the intended benefits of the anti-SLAPP law are largely lost, because of the defendants' own—seemingly well reasoned—delay. At this point, granting a show cause hearing would likely result in a *slower* resolution of this matter—the exact opposite of what the law seeks to achieve.

Considering the balance of all the factors, the Court finds that the defendants do not demonstrate good cause to file a late request for a show cause hearing under the New Jersey anti-SLAPP law. Accordingly, their Motion will be denied on those grounds.[7]

## IV.   CONCLUSION

The defendants' Motion for Reconsideration and for Order to Show Cause (ECF No. 29) is **DENIED** as to reconsideration, **DENIED** as to an order to show cause, and **DENIED AS MOOT** as to a stay.

**IT IS SO ORDERED**.

/s/

Jamar K. Walker
United States District Judge

Newport News, Virginia
April 30, 2025

---

[7] The defendants also request a stay of proceedings pending resolution of the present Motion. ECF No. 30 at 21. That request is denied as moot.