UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

PECOS RIVER TALC LLC,

    Plaintiff,

v.                                                                              Action No. 4:24cv75

DR. THERESA SWAIN EMORY, *et al.*,

    Defendants.

### MEMORANDUM OPINION & ORDER

Plaintiff, Pecos River Talc LLC ("Pecos River"), was formed as part of Johnson & Johnson's effort to resolve talc-related claims through bankruptcy.[1] *See* ECF No. 32 ¶¶ 1–3. Defendants, Drs. Theresa Emory, John Maddox, and Richard Kradin, serve as plaintiff-side expert witnesses in litigation between individuals with mesothelioma and manufacturers of cosmetic talc. ECF No. 27, at 2 (citing Compl. ¶¶ 13–15, 20–28, ECF No. 1) ("MTD Op."); *see also* ECF No. 31 ¶ 20. Pecos River brought this trade libel suit against defendants, alleging that certain statements they made in a published scientific article are false. Compl. ¶¶ 150. Pending before the Court is defendants' motion to compel discovery related to whether repeated exposure to cosmetic talc may cause mesothelioma. ECF No. 50. Because the Court concludes that defendants' discovery requests are neither relevant nor proportional to the needs of the case, that motion is **DENIED**.

---

[1] LLT Management LLC ("LLT")—"a wholly-owned indirect subsidiary of Johnson & Johnson"—filed the complaint. Compl. ¶¶ 10–12. At that time, LLT owned "all rights, causes of action and privileges, and is responsible for all claims related to Johnson's Baby Powder and Shower to Shower products, including liabilities arising from all claims[.]" *Id.* ¶ 12. In August 2024, LLT underwent a corporate restructuring "in preparation to pursue its previously-announced consensual prepackaged bankruptcy plan as to certain talc-related claims." ECF No. 32 ¶ 1. As part of that restructuring, "Pecos River was allocated both the liabilities and assets of the mesothelioma-related litigation in which LLT was involved, including this case." *Id.* ¶ 4.

## I.     BACKGROUND

A.     **Defendants publish an article.**

In March 2020, defendants published an article titled "Malignant mesothelioma following repeated exposures to cosmetic talc: A case series of 75 patients" in the *American Journal of Industrial Medicine* (the "article"). Compl ¶ 3; ECF No. 46-1. The introduction of the article states that "[a]sbestos . . . is recognized as a carcinogen by the general medical and scientific communities[,]" and that "[i]t has been demonstrated that all types of asbestos and even brief and low-dose exposures are capable of causing malignant mesothelioma." ECF No. 46-1, at 2. It then cites two studies that demonstrated that cosmetic talcum powders contain asbestos, and one that implicated "repeated exposures to cosmetic talc . . . as a cause of mesothelioma[.]" *Id.* at 3. The end of the introduction states that the article "present[s] 75 . . . subjects with malignant mesothelioma[] whose only known exposure to asbestos was cosmetic talc" and who are "additional" to the "33 subjects with malignant mesothelioma[] whose only known exposure to asbestos was cosmetic talc[,]" reported in an earlier study by Dr. Jacqueline Moline (the "Moline study").[2] *Id.*

The "methods" section of the article states that defendants—who served as expert witnesses for asbestos plaintiffs often in cases against Pecos River—"initially reviewed" 140 potential subjects who had documented exposures to cosmetic talc, by examining "sworn deposition testimonies and answers to sworn interrogatories provided from subjects, parents, and spouses." *Id.* at 3; Compl. ¶ 70 (alleging that defendants "were intimately familiar with the case histories of the 75 individuals referenced in the [a]rticle based on their role as plaintiffs' experts

---

[2] Jacqueline Moline, *et al.*, *Mesothelioma Associated with the Use of Cosmetic Talc*, 62 J. Occupational & Env't Med., no. 1, Jan. 2020.

in the underlying tort cases in which those individuals had asserted claims against [Pecos River] and others"). Defendants selected the 75 subjects—"whose only known exposure to asbestos was via cosmetic talc"—for "further examination,"[3] but excluded the other 65 potential subjects "due to recalled occupational or paraoccupational exposures to other sources of asbestos." ECF No. 46-1, at 3.

In the "discussion" section, defendants claim that the article "brings the number of individuals with confirmed diagnoses of malignant mesothelioma following repeated exposure to cosmetic talcum powder to more than 100." *Id.* at 3. Later, it states that "[t]he findings of the present and other recent studies suggest that cosmetic talc may be a cause of malignant mesothelioma[,]" but "[l]arge-scale controlled studies will be required to assess the prospective risk of developing mesothelioma following repeated exposures to talc." *Id.* at 7.

**B.     Pecos River sues defendants for trade libel.**

Pecos River sued defendants on May 9, 2024, alleging injurious trade libel/product disparagement (count one) ("trade libel"), fraud (count two), and false advertising under the Lanham Act, 15 U.S.C. § 1125(a) (count three). Compl. ¶¶ 149–180. The heart of Pecos River's complaint is that two statements in the article are false: (1) that the 75 subjects of the article are individuals whose "only known exposure to asbestos was cosmetic talc"; and (2) that the 75 subjects of the article are "additional" to the 33 subjects in the Moline study. *Id.* ¶ 150. The

---

[3] The article does not include the subjects' names but refers to them by an assigned case number and presents information about each subject in two tables. ECF No. 46-1, at 7. The first provides for each subject: their sex, the year they were diagnosed with mesothelioma, their age at diagnosis, the mesothelioma site, histology, the estimated number of years they used talcum powder, and the estimated number of years of the latency period. *Id.* at 4–5. The second details the results of the tissue examination for nine subjects, including the mesothelioma site, the type of asbestos, the tissues examined, the concentration of fibers detected in the tissue, the limit of detection, and the tissue digest weight. *Id.* at 6.

3

complaint alleges that at least six subjects of defendants' study had other "known [asbestos] exposure[s]," *id.* ¶¶ 72–132, and at least one subject was also included in the Moline study, *id.* ¶ 6. Pecos River maintains that defendants made these statements with actual malice and that, by publishing the article, "defendants intended to contribute to a body of literature manufactured to be presented in court." MTD Op. 3 (citing Compl. ¶ 8).

The Court granted defendants' motion to dismiss in part—concluding that the statute of limitations barred count two and count three failed to state a claim—and permitted the case to proceed on the trade libel claim. *Id.* The Court has bifurcated discovery into two phases. ECF No. 39. Phase one is limited to the substantive elements of the trade libel claim—publication, with malice, of a false statement of fact, about Pecos River's product or property. ECF No. 36, at 1. After dispositive motions practice on the issues in phase one, phase two of discovery will proceed with causation and damages. *Id.* at 1, 4.

## C. Pecos River objects to defendants' propounded discovery requests, and defendants move to compel production.

In March 2025, defendants served Pecos River with discovery requests, including requests for production ("RFPs") and requests for admission ("RFAs"). *See* ECF Nos. 51-1 (RFPs), 51-2 (RFAs). Defendants ask Pecos River to admit that: (a) "some cosmetic talc products have been shown to contain asbestos" (RFA one); (b) "mesothelioma may develop following repeated exposures to asbestos in cosmetic talcum powders" (RFA two); and (c) "testing by the U.S. Food and Drug Administration in 2019 identified chrysotile fibers within a sample of Johnson's Baby Powder" (RFA three). ECF No. 51-2, at 4–5. Defendants also served, among others, the following RFPs:

> [RFP 7]: All draft or final studies, articles, research papers, or analyses sponsored, commissioned, or supported by Plaintiff that include or reference any interim, tentative, or final conclusions regarding whether (i) cosmetic talc may be a cause

of malignant mesothelioma; (ii) repeated exposures to asbestos in cosmetic talcum powders may cause mesothelioma; or (iii) an individual whose only known exposure to asbestos was repeated exposures to cosmetic talcum powders may develop mesothelioma.

…

[RFP 11]: Any documents in Your possession that are described in, linked to, or referenced in Lisa Girion, Johnson & Johnson knew for decades that asbestos lurked in its Baby Powder, Reuters.com (Dec. 14, 2018), available at https://www.reuters.com/investigates/special-report/johnsonandjohnson-cancer/.

…

[RFP 12]: Any documents in Your possession that are described in, linked to, or referenced in Roni Caryn Rabin & Tiffany Hsu, Johnson & Johnson Feared Baby Powder's Possible Asbestos Link for Years, The New York Times (Dec. 14, 2018), available at https://www.nytimes.com/2018/12/14/business/baby-powder-asbestosjohnson-johnson.html.

ECF No. 51-1, at 9, 11, 12.

Pecos River objected to these requests as outside the scope of phase one discovery, overbroad, and not proportional to the needs of the case. ECF No. 51-1, at 9, 11–12; ECF No. 51-2, at 4–5. At the parties' meet and confer, defendants proposed two revisions to these requests. First, in response to Pecos River's counsel's concern that "supported by" as used in RFP 7 was vague, defendants suggested narrowing that request to only "draft or final studies, articles, research papers, or analyses commissioned or financially supported by [Pecos River][.]" ECF No. 51, at 7 n.3. Second, defendants offered to narrow RFPs 11 and 12 to only documents "linked to" in the articles. *Id.* n.4.

Defendants' proposals did not sway Pecos River, and it stood on its objections. On May 13, 2025, defendants moved to compel Pecos River to produce discovery related to whether repeated exposure to cosmetic talc may cause mesothelioma, ECF No. 50, and a memorandum in support, ECF No 41 ("Defs.' Mem."). Pecos River opposed the motion, ECF No. 56 ("Pl.'s Mem."), and defendants have replied, ECF No. 57 ("Defs.' Reply"). The Court has fully

considered the parties' arguments in their briefs and determined it is not necessary to hold a hearing on the motion. Fed. R. Civ. P. 78(b); E.D. Va. Civ. R. 7(J).

## II. LEGAL STANDARDS

### A. Scope of Discovery

Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Although Rule 26 does not define "relevant," relevance in the discovery context has been "'broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party.'" *EEOC v. Sheffield Fin., LLC*, No. 1:06cv889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005)); *see Tucker v. Momentive Performance Materials USA, Inc.*, No. 2:13cv4480, 2016 WL 8252929, at *3 (S.D.W. Va. Nov. 23, 2016) (noting that the discovery standard for relevance is broader than relevance in the Federal Rules of Evidence). The Court has wide discretion in determining relevance for discovery purposes. *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992).

When evaluating proportionality in this context, the Court looks to "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Tucker*, 2016 WL 3252929, at *3; *see also Walsh v. Kynd Hearts Home Healthcare, LLC*, No. 2:20cv630, 2022 WL 18108388, at *1 (E.D. Va. Sept. 1, 2022).

B.  **Motion to Compel**

A party may move the Court to compel a party to answer interrogatories or produce documents if the nonmoving party objects to or does not respond to propounded discovery. Fed. R. Civ. P. 37(a)(3)(B). Once a party moves to compel, "the burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted." *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 241 (E.D. Va. 2012).

### III.  **DISCUSSION**

A.  **Discovery related to whether repeated exposure to cosmetic talc may cause mesothelioma is not relevant to either party's claims or defenses.**

The Court's inquiry begins with deciding whether the discovery defendants requested is relevant "to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Phase one discovery is limited to the substantive elements of Pecos River's trade libel claim: (a) publication; (b) of a false statement of fact; (c) with malice; (d) about Pecos River's product or property. *Dairy Stores, Inc.*, 516 A.2d at 224–25 (Garibaldi, J., concurring).[4] As the party objecting to the discovery, Pecos River bears the burden to show that defendants' discovery requests are not relevant. *Singletary*, 289 F.R.D. at 241. In short, Pecos River argues that discovery related to whether "Johnson's Baby Powder is or is not contaminated with asbestos and can or cannot cause mesothelioma is not relevant to any" of the elements of trade libel. Pl.'s Mem. 9. The Court agrees.

1.  **Are the statements ones of fact or opinion?**

This case is straightforward. Relevant here, Pecos River alleges that two statements in the article are false: (a) that the 75 subjects' "only known exposure to asbestos was via cosmetic talc"; and (b) that the 75 subjects are additional to the 33 reported in the Moline study. Compl. ¶ 150.

---

[4] The publication element is not at issue here.

7

At some point, the Court will have to decide a "threshold question of law" before Pecos River's trade libel claim can proceed: Are these statements ones of opinion or fact? MTD Op. 27 (citing *Kotlikoff v. Cmty. News*, 444 A.2d 1086, 1090 (N.J. 1982)). If the Court concludes the former, then the claim fails as a matter of law.[5] *Id.* (noting that "[o]pinion statements are generally privileged and nonactionable in New Jersey trade libel cases" (citation omitted)). Only if the Court concludes the latter is Pecos River's claim viable. *Id.* To make this decision, the Court considers three factors: content, verifiability, and context. *NXIVM Corp. v. Sutton*, No. 06cv1051, 2007 WL 1876496, at *9 (D.N.J. June 27, 2007) (quoting *Farber v. City of Paterson*, No. 03-4535, 2006 WL 3485919, at *4 (D.N.J. Nov. 29, 2006); *Ward v. Zelikovsky*, 643 A.2d 972, 978 (N.J. 1994); *see also* MTD Op. 26–27 (citations omitted). Pecos River argues that whether repeated exposure to cosmetic talc causes mesothelioma has no bearing on the content, verifiability, and context of the challenged statements. The Court agrees.

"The content factor distinguishes between 'genuinely defamatory communications,' and figurative speech or rhetorical hyperbole, like name-calling, 'which cannot reasonably be understood to be meant literally.'" MTD Op. at 27 (quoting *Ward*, 643 A.2d at 979). "Evaluation of content involves consideration not merely of a statement's literal meaning, but also of the fair and natural meaning that reasonable people of ordinary intelligence would give to it." *Lynch v. N.J. Educ. Ass'n*, 735 A.2d 1129, 1136 (N.J. 1999). Defendants' discovery requests—such as documents about the potential that cosmetic talc causes mesothelioma or Johnson & Johnson's

---

[5] Although defamation and trade libel are distinct causes of action, "both causes of action protect similarly important interests in the free flow of information and are thus subject to the same privileges, or limitations, that render certain statements nonactionable." *Pacira BioSciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*, 63 F.4th 240, 245 (3d Cir. 2023) (citing *Dairy Stores*, 516 A.2d at 226). "[A] qualified privilege [for trade libel] should exist wherever it would exist in a defamation action." *Dairy Stores*, 516 A.2d at 226. One such privilege is that opinion statements are generally nonactionable. *Pacira*, 63 F.4th at 245 (citing *Lynch*, 735 A.2d at 1137).

talcum powder products contain asbestos—are irrelevant to whether reasonable people would take defendants' statement that the 75 subjects' only known exposure to asbestos was cosmetic talc literally. Proof of the article's ultimate conclusion—that cosmetic talc may be a cause of malignant mesothelioma—does not affect how a reasonable person would interpret the statement that no other known exposures exist. Nor is the discovery sought relevant to whether the statement is hyperbolic or a figure of speech.

The verifiability factor requires the Court to determine whether the statement is "capable of . . . truth or falsity." *Ward*, 643 A.2d at 979. Defendants' arguments seem to intertwine verifiability with context. When examining the context of a statement, "courts must consider the impression created by the words used as well as the general tenor of the expression, as experienced by a reasonable person." *Id.* at 980; *see also Farber*, 2006 WL 3485919, at *5. "The listener's reasonable interpretation which will be based in part on the *context in which the statement appears*, is the proper measure for whether the statement is actionable. *Ward*, 643 A.2d at 980 (emphasis added). Examining the context of the statement to ascertain the impression it creates "as experienced by a reasonable person[,]" *id.*, includes looking at things like the "medium by which the statement is disseminated and the audience to which it is published[,]" *Wilson v. Grant*, 687 A.2d 1009, 1014 (N.J. Super. Ct. 1996).

The Court agrees with Pecos River that the requested discovery—that is, "outside evidence not presented in the [a]rticle (and that [d]efendants have potentially never seen) that supports or undermines the [a]rticle's ultimate conclusion"—is irrelevant to how a reader would understand the statement that the subjects had no other "known [asbestos] exposure[s]." Pl.'s Mem. 11.

Defendants' arguments ignore the relevant inquiry and are unconvincing to the Court. They argue that the scope is not limited to whether the 75 subjects had other "known [asbestos]

9

exposure[s] and whether they are "additional to" those reported in the Moline Study as Pecos River contends. Those statements were made, defendants argue, "in the context of a broader debate regarding whether repeated exposure to cosmetic talc may cause mesothelioma." Defs.' Mem. 9. So, they must be viewed in light of the article's "tentative" and "ultimate" conclusion"—"'[t]he findings of the [article] and other recent studies suggest that cosmetic talc may be a cause of malignant mesothelioma,' but '[l]arge-scale controlled studies will be required to assess the prospective risk . . . following repeated exposures to talc.'" Defs.' Mem. 5 (quoting ECF 46-1, at 7); Defs.' Reply 10 (conclusively stating that "the scientific nature of the [a]rticle's ultimate conclusion . . . is the relevant context here").

Why are the article's "ultimate conclusions" the pertinent context when deciding whether the challenged statements are fact or opinion? Defendants do not say, and the Court does not know. Although defendants' arguments are difficult to follow and bear no relation to what the Court must look at when examining the context of the statements, as well as the Court understands, their arguments go like this. First, defendants state that "when assessing a defamation claim, '[t]he publication *as a whole* must be considered, with the alleged defamation weighed in context.'" Defs.' Reply 10 (quoting *Sedore v. Recorder Pub. Co.*, 716 A.2d 1196, 1200 (N.J. Super. Ct. App. Div. 1998)). The "ultimate conclusions," therefore, are relevant context for the challenged statements." *Id.*

This argument loses the forest for the trees. No doubt that the Court looks beyond the challenged statements in isolation to "publication as a whole" when examining the context of the statements. But "publication as a whole" is examined considering the relevant inquiry—"the impression created by the words used as well as the general tenor of the expression, as experienced by a reasonable person." *Ward*, 643 A.2d at 980. It does not necessarily follow, as defendants

10

contend, that the veracity of every statement in the article comes into play. Defs.' Reply 10. For example, in *Roberts v. Mintz* the defendant stated on an online blog that the plaintiffs were "grifters" and their business was a "fraudulent puppy mill ring." No. A-1563-14T4, 2016 WL 3981128, at *6 (N.J. Super. Ct. App. Div. July 26, 2016). The court noted that in isolation, these statements "can be used to describe unscrupulous or deceptive business practices." *Id.* But the court found that when viewed in context, that is, that the defendant made these statements under the heading "Rants and Raves[,]" the statements "signal[ed] to any reader that what followed were the author's personal viewpoints." *Id.* at *7. Even more context, the court stated: "Given the profanity-laden, emotionally-charged context in which defendant used 'grifters,' 'scammed,' and 'fraudulent puppy mill,' *a reader would not reasonably understand* defendant as charging plaintiffs with a crime or fraud. Instead, *a reasonable reader* would interpret these statements as name-calling and hyperbole." *Id.* (emphasis added). One example of many, *Roberts* makes clear that the relevant inquiry is how the statements would be understood when read in context. Defendants' argument bypasses this.

  Second, defendants argue that the requested discovery will show that whether the subjects had other "known [asbestos] exposure[s]" "is routinely in dispute in the underlying personal injury litigations, which almost always come down to a battle of the experts on questions of exposure and causation . . . that are necessarily relevant to the [a]rticle's ultimate conclusions." Defs.' Mem. 13–14. That may be true. But the basis of defendants' argument—that the existence of other "known [asbestos] exposure[s]" cannot be "divorced from the [a]rticle's overall conclusions"—is itself divorced from the pertinent inquiry: How does the requested discovery relate to whether experts may disagree about what constitutes an other "known [asbestos] exposure"? Simply, it does not. And defendants do not explain otherwise. At face value, whether Pecos River's products

11

are contaminated with asbestos or cause mesothelioma bears no relation to whether experts differ on what constitutes a "known" exposure to asbestos. And more importantly, it is unrelated to a reasonable person's impression of the words—the context inquiry. *Ward*, 643 A.2d at 980

Third, defendants try to argue that Pecos River opened the door to the "ultimate conclusions" because the "crux" of Pecos River's claim is that the article "as a whole has 'pollute[d] the scientific literature,' constitutes 'junk litigation opinions in scientific journals,' and has been used to build a 'fraudulent foundation' for [defendants]' work." Defs.' Mem. at 12–13 (citing Compl. ¶ 8). And Pecos River's consumer survey expert, Dr. Gal Zauberman, discussed more than the challenged statements—including excerpts from the article's background, results, and conclusions—but did not reference whether the subjects are "additional to" the Moline study, when offering the basis of his opinions. *Id.* at 13. Dr. Zauberman's task, however, was to survey individuals to assess whether they would associate the article with Johnson & Johnson—a separate element of the trade libel claim. ECF No. 51-10, at 8. Even so, this does not alter the Court's conclusion that the evidence that defendants' request relating to the article's ultimate conclusions is irrelevant to how a reader would perceive the challenged statements.

Defendants also contend that evidence of the "ultimate conclusions" is fair game because Pecos River had several allegations in the complaint relating to the harm that the article (not just the challenged statements) has caused. Defs.' Reply 8; *see* Compl. ¶ 152 ("false Article" was "republished" and "relied upon" in "litigation throughout the country"); *id.* ¶ 159 ("websites linked the article to Johnson & Johnson"); *id.* ¶¶ 163–64 (Pecos River has suffered "lost profits on the sale of Johnson's Baby Powder caused by the widespread *dissemination of the Article*" (emphasis added)). Relegated to a footnote, however, is the flaw of this argument. Defs.' Reply 8 n.1. These allegations are confined to the section of the complaint titled "[Pecos River] was Gravely Harmed

12

by [Defendants]' False Statements." Compl. pp. 32–33. If and how the challenged statements caused Pecos River harm is outside the scope of phase one discovery.

Fourth, defendants contend that they need the requested discovery on the article's "ultimate conclusions" to rebut arguments that Pecos River has made, not here, but in underlying personal injury cosmetic talc litigation, including "that cosmetic talc is not contaminated with asbestos and thus is incapable of causing cancer at all." Defs.' Reply 7 (citation omitted). Pecos River is not arguing that its products are not contaminated with asbestos or that talc (or its products) do not cause mesothelioma here.

2.   **Did defendants make the statements with actual malice?**

Pecos River must prove by clear and convincing evidence that defendants made the challenged statements "'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Cannon v. Peck*, 36 F.4th 547, 566 (4th Cir. 2022) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)). The briefing shows that defendants contend that only RFPs 11 and 12—which ask Pecos River to produce the documents linked to or described in certain *Reuters* and *New York Times* articles—and RFA 3—which requests Pecos River to admit that a 2019 FDA study found asbestos in a sample of Johnson's Baby Powder—are relevant to actual malice. That is so because defense counsel "anticipate" that defendants "will each testify that they were aware of public reporting regarding the presence of asbestos in cosmetic talc products," including the materials identified in the discovery requests, "as relevant to and supportive of the [a]rticle's ultimate conclusions." Defs.' Mem. 17. So they seek to fend off any attempt by Pecos River to undermine the articles and avoid authenticity disputes. *Id.*

The Court agrees with Pecos River that the article's ultimate conclusions are not relevant to the actual malice inquiry. Pl.'s Mem. 14 (quoting MTD Op. 26 n.11). Whether the ultimate

13

conclusions of the article are true or false is not pertinent to whether defendants stated that the 75 subjects had no other "known [asbestos] exposure[s]" with knowledge, or in reckless disregard, of the fact that the statement was false. In other words, those conclusions have no bearing on whether defendants knew whether the 75 subjects were exposed to asbestos from sources other than talc. For the same reasons, the Court rejects defendants' argument that RFA 3 is relevant to actual malice because it would avoid an "unnecessary side dispute regarding the admissibility of the FDA's voluntary recall announcement[.]" Defs.' Mem. 17.

Moreover, actual malice focuses on the defendants' state of mind. *See* Defs.' Mem. in Opp. to Pecos River Talc LLC's Mot. to Compel Identities of the Article's Subjects and for an Am. Answer 18, ECF No. 53 ("[I]t is the Doctors' contemporaneous files and communications— not a brand new investigation into the underlying cosmetic talc cases—that are relevant to actual malice."). Information in Pecos River's possession is not relevant to what defendants knew about the subjects' other "known [asbestos] exposure[s]" when they published the article. *See Gilmore v. Jones*, No. 3:18cv17, 2021 WL 68684, at *6 (W.D. Va. Jan. 8, 2021) ("[E]vidence that the publisher had not yet obtained at the time of publication could not be relevant to his state of mind[.]").

At bottom, this inquiry boils down to: Is there anything in Pecos River's possession that would have any bearing on whether defendants made the challenged statements with actual malice? The Court need look no further for the answer than defense counsel's argument at the hearing on Pecos River's motion to compel:

> I think, again . . . the touchstone is relevant for the claim that's being litigated in this case. And when here, not only because of the way that courts have defined the actual malice standard, but also the statements that they are challenging in the article, which are known exposures, *those two things are sort of bookends of what is relevant in this case.* So this isn't the case, I think, where there is a bunch of third-party discovery that might be relevant because *what matters here is what the*

14

> *doctors knew at the time that they wrote the article.* And so *what might exist in some file somewhere is not relevant to that question.*

June 26, 2025 Hr. Tr. 15:18–16:4 (emphasis added). The answer is no.

### 3. Are the statements about Pecos River's product or property?

Pecos River must also prove that the statements are about its product or property. *Dairy Stores, Inc.*, 516 A.2d at 224–25 (Garibaldi, J., concurring). To do so, it must show that "those who read or hear the [statements] reasonably understand the plaintiff to be the person intended." *Dijkstra v. Westerink*, 401 A.2d 1118, 1120 (N.J. Super. Ct. App. Div. 1979)).

Defendants rely on the Court's finding that Pecos River sufficiently pleaded this element when it denied their motion to dismiss. Defs.' Mem. 18. In doing so, the Court found that the challenged "statements [are not] about the defendants' methods or assumptions," but "convey the thrust of the whole publication—which is squarely about the safety of talc-based products like Johnson & Johnson's." MTD Op. 30–31. Clinging to that final clause, defendants argue that "if this factor is analyzed based on the [a]rticle as a whole, then" they should be allowed to gather evidence to support the article's "ultimate conclusions regarding the safety of cosmetic talc products[.]" Defs.' Br. 18. The Court does not see it so. Just because the statements may be about "the safety of talc-based products like Johnson & Johnson's" does not mean that whether talc-based products *are safe* is somehow relevant to this factor.

### 4. Is the requested discovery relevant to any defenses?

Recall that materials are discoverable if they are relevant "to any party's claim *or defense.*" Fed. R. Civ. P. 26(b)(1) (emphasis added). Defendants contend that the requested discovery is relevant to their defense if the challenged statements "are construed as statements of fact" because "the 'law of defamation overlooks minor inaccuracies, focusing instead on substantial truth.'" Defs.' Mem. 15 (quoting *G.D. v. Kenny*, 15 A.2d 300, 310 (N.J. 2011)). So, the argument goes, if

15

Pecos River proves that the challenged statements are factual statements with "minor inaccuracies," defendants can still prevail if they can show the statements "describing data that supported the [a]rticle's ultimate conclusions . . . are substantially true." *Id.* at 15–16. But again, Pecos River *does not* intend to argue that the ultimate conclusions are at issue. Defs.' Mem. 4. Although the Court will not decide the scope or availability of this defense to defendants at this time, the case defendants cite in support of their argument is of no help.

In *G.D. v. Kenny*, the Supreme Court of New Jersey examined a flyer that called the plaintiff "a drug dealer who went to jail for five years for selling coke near a public school." 15 A.2d at 311. The plaintiff argued that the statement was false because he "was never convicted of 'selling coke near a school'" but of "possessing with *intent to distribute* a substantial quantity of cocaine and was sentenced to a five-year prison term." *Id.* at 317–18. He argued it was also false because he did not "go to jail for five years." *Id.* at 318. The court found that the statement in the flyer was substantially true because, among other things, "[i]t would be fair and reasonable to infer that a person who admitted to having the intent to distribute cocaine from a large cache was not acting for eleemosynary purposes[,]" the reference to "drug dealer" is not inconsistent with the charge he pleaded guilty to, and the campaign flyer's statement that the plaintiff "went to jail for five years" is, "at the very least, substantially accurate, however imprecise the flyer's language may be." *Id.* (noting about the later statement that "the 'substance,' 'gist,' and 'sting' of that statement when measured against [the plaintiff's] sentence cannot serve as the basis for a claim of falsity in a defamation action").

Thus, the relevant consideration appears to be whether the *challenged statement* is substantially true. *See also Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516 (1991) (looking at whether the allegedly defamatory statement was substantially true); *Ballengee v. CBS Broad.,*

*Inc.*, 968 F.3d 344, 350 (4th Cir. 2020) ("Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, *of the libelous charge* be justified." (citation and internal quotation marks omitted) (emphasis added)). So, *G.D.* may become analogous to this case if, for example, defendants argued that 72 people had no other "known [asbestos] exposure[s]" and thus the challenged statement is "substantially true." But they do not. Even if they did, the requested discovery would be irrelevant to such an argument.[6]

* * *

Accordingly, the discovery sought by defendants is not relevant to a party's claim of defense.

**B.     The discovery that defendants request is not proportional to the needs of the case.**

Even if the Court were to conclude that defendants' discovery requests are relevant, it would still deny the motion to compel because the requests are not proportional to the needs of the case. When evaluating proportionality in this context, the Court looks to "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Tucker*, 2016 WL 3252929, at *3; *see also Walsh*, 2022 WL 18108388, at *1.

Pecos River has met its burden to prove that the requested discovery should not be produced because it is not proportional. *Singletary*, 289 F.R.D. at 241. First, Pecos River objects

---

[6] Beyond defending against falsity and malice, defendants argue that the discovery requests are relevant to their ability to defend themselves against Pecos River's attacks against them. Defs.' Mem. 12–13; Defs.' Reply 14–15. This argument is also unconvincing. Whether cosmetic talc causes mesothelioma, whether repeated exposures to asbestos in talc causes mesothelioma, or whether Pecos River's products are or were contaminated with asbestos is not relevant to defendants' credibility. And, even if it was, it certainly is not proportional to the needs of this trade libel case.

to the requested discovery because it is not important to resolve the issues here and "would significantly expand the scope of Phase 1 discovery, requiring exponentially more time, resources, and expense than necessary." Pl.'s Mem. 16. The Court agrees. As to the first point, the Court concluded above that the requested discovery is not relevant "to any party's claim or defense." So it is not important to this case. Even if it was relevant for purposes of discovery, it still is not important. Discovery of information relating to talc causing mesothelioma, Pecos River's products containing asbestos, or documents in various news articles, is not important to resolving whether Pecos River can prevail on its trade libel claim or defendants can defend themselves against the same. For example, note defendants' argument that the statements are ones of opinion because "the mere fact that a defense expert or defense counsel posits an additional potential exposure does not mean all scientists would agree with the determination, or more generally about what qualifies as an 'exposure.'" Defs.' Mem. 14–15. Not only is the requested discovery not relevant to proving this, but—looking at the two examples defendants provide—it appears that defendants are in possession of more than enough to material pursue that defense. The Court cannot say that the requested discovery is proportional.

This is a trade libel case. Further narrowing the scope of discovery at this juncture, the Court has bifurcated discovery into two phases. Phase one, which the parties are engaged in now, encompasses only some elements of trade libel—publication, with malice, of a false statement of fact, about Pecos River's product. ECF No. 39. The dispute centers around defendants' assertion that the study subjects had no other "known [asbestos] exposure[s]." MTD Op. 31. Defendants' argument that their requests are nevertheless "narrow" rings hollow.

At the hearing on the parties' motion to bifurcate discovery, the Court expressed to the parties "it may come as no surprise that my concern is that the motion appears to contemplate

essentially four sets of motions practice—phase 1 dispositive motions, phase 1 *Daubert* motions, and then phase 2 dispositive motions and phase 2 *Daubert* motions." ECF No. 52, at 4:24–5:3. In response to this concern, defendants represented to the Court that "there is unlikely to be a lot of expert discovery or maybe any expert discovery in phase 1 and, therefore, no need for *Daubert* motions." *Id.* at 7:2–4. Should this case become one that addresses whether talc causes mesothelioma—the article's "ultimate conclusion"—expert discovery will become expansive.[7] A trade libel case would take on the appearance of a personal injury asbestos case.

The Court also agrees with Pecos River that the discovery and the potential evidence and arguments that flow from that discovery would substantially lengthen the time to litigate this trade libel case. Pl.'s Mem. 19. As of now, Pecos River must prove, if it can, among other things, that the challenged statements are false (that is, that at least some of the subjects had other "known [asbestos] exposure[s]") and that defendants made them with actual malice. And defendants have the option to prove that they are opinion and that they did not act with actual malice. But expanding this case to encompass the article's "ultimate conclusions" transforms this rather limited case described above to one that involves voluminous documentary evidence relating to asbestos contamination and causation—issues that are often at the heart of a personal injury asbestos case. Myra Paiewonsky Mulcahy, *Proving Causation in Toxic Torts Litigation*, 11 Hofstra L. Rev. 1299, 1302–1312 (1983) (discussing various theories of causation in asbestos litigation and the difficulty in proving them).

Defendants have much to do about Pecos River's failure to address the proportionality of each request individually. Defs.' Reply 17. The Court's analysis above, however, encompasses

---

[7] Accounting for that possibility, Pecos River has retained three experts to opine on those issues. Defs.' Mem. 17–19. Pecos River, however, intends to withdraw those experts pending the Court's ruling on this motion. *Id.* at 18 n.4.

the heart of all the requests—discovery "related to whether repeated exposure to cosmetic talc may cause mesothelioma"—as defendants frame their motion. ECF No. 50. Requiring Pecos River to admit or deny whether some talc products have contained asbestos (RFA one) or repeated exposures may lead to mesothelioma (RFA two) or that the FDA identified asbestos in its products (RFA three) is immaterial to this trade libel case. Lastly, acceptance of defendants' argument on the RFAs, which essentially says, "how hard could it be to admit this statement?" would render nugatory the proportionality inquiry under Rule 26 for any RFA.

### IV.   CONCLUSION

For the reasons discussed above, defendants' discovery requests are neither relevant to any party's claim or defense nor proportional to the needs of this case. Therefore, defendants' motion to compel, ECF No. 50, is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this memorandum opinion and order to all counsel of record.

**IT IS SO ORDERED.**

_____
Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
July 11, 2025