IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

| | |
|---|---|
| PECOS RIVER TALC LLC,<br><br>    Plaintiff,<br><br>    -v-<br><br>DR. THERESA SWAIN EMORY, DR. RICHARD LAWRENCE KRADIN, AND DR. JOHN COULTER MADDOX,<br><br>    Defendants. | Civil Action No. 4:24-cv-75 |

**PECOS RIVER TALC LLC'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR SANCTIONS AS TO
<u>DEFENDANT DR. KRADIN FOR THE SPOLIATION OF EVIDENCE</u>**

## TABLE OF CONTENTS

                                                **Page**

**INTRODUCTION** ............................................................................................................... 1

**BACKGROUND** ................................................................................................................. 3

**ARGUMENT** ...................................................................................................................... 4

**I.**    **A Spoliation Sanction Is Appropriate Due To Dr. Kradin's Deletion Of Emails** ..................................................................................................................... 5

       A.    Dr. Kradin's emails should have been preserved ....................................... 5

       B.    Dr. Kradin's emails are lost and cannot be replaced. ................................ 8

       C.    Dr. Kradin's failed to take reasonable steps to preserve his emails ......... 9

**II.**   **An Adverse Inference Instruction Is Warranted.** .......................................... 10

       A.    Dr. Kradin acted with the intent to deprive Pecos River of evidence. .... 10

       B.    Dr. Kradin's spoliation prejudiced Pecos River. ..................................... 12

**CONCLUSION** ................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Buddenberg v. Est. of Weisdack*,
    711 F. Supp. 3d 712 (N.D. Ohio 2024) .................................................................................12

*Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*,
    2019 WL 5694256 (E.D.N.Y. July 22, 2019) ........................................................................10

*Connor v. Sun Tr. Bank*,
    546 F. Supp. 2d 1360 (N.D. Ga. 2008) ..................................................................................12

*DeMartino v. Empire Holdings & Invs., LLC*,
    2024 WL 712456 (S.D. Fla. Jan. 26, 2024) .............................................................................9

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
    803 F. Supp. 2d 469 (E.D. Va. 2011) ......................................................................................7

*Fast v. GoDaddy.com LLC*,
    340 F.R.D. 326 (D. Ariz. 2022) .............................................................................................10

*Gomez v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*
    2021 WL 3406687 (M.D. Tenn. Aug. 4, 2021) .....................................................................13

*Kronisch v. United States*,
    150 F.3d 112 (2d Cir. 1998) ................................................................................................5, 8

*LLT Mgmt. LLC v. Emory*,
    766 F. Supp. 3d 576 (E.D. Va. 2025) ............................................................................1, 3, 4

*Micron Tech., Inc. v. Rambus Inc.*,
    645 F.3d 1311 (Fed. Cir. 2011) ...............................................................................................7

*Painadath v. Good Shepherd Penn Partners*,
    348 F.R.D. 16 (E.D. Pa. 2024) ..............................................................................................11

*Paisley Park Enters., Inc. v. Boxill*,
    330 F.R.D. 226 (D. Minn. 2019) .............................................................................................9

*Rambus, Inc. v. Infineon Techs., AG*,
    220 F.R.D. 264 (E.D. Va. 2004) ..............................................................................................7

*Simone v. VSL Pharms., Inc.*,
    2018 WL 1365848 (D. Md. Mar. 16, 2018) ..........................................................................13

*Sines v. Kessler*,
    2021 WL 5492826 (W.D. Va. Nov. 19, 2021) ................................................................... 4, 10

*Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*,
    75 F4th 1290 (11th Cir 2023) ................................................................................................ 5

*Title Cap. Mgmt., LLC v. Progress Residential, LLC*,
    2017 WL 5953428 (S.D. Fla. Sept. 29, 2017) ....................................................................... 7

*Zbylski v. Douglas Cnty. Sch. Dist.*,
    154 F. Supp. 3d 1146 (D. Colo. 2015) .................................................................................. 7

**Rules**

Rule 37 ................................................................................................................... *passim*

Plaintiff Pecos River Talc LLC ("Pecos River") submits this memorandum in support of its motion for sanctions, including an adverse inference instruction, due to Defendant Dr. Richard Lawrence Kradin's spoliation of evidence.

## INTRODUCTION

Dr. Kradin deliberately destroyed evidence regarding his co-authored publication *Malignant Mesothelioma Following Repeated Exposures to Cosmetic Talc: A Case Series of 75 Patients* (the "Article").

The Article states that for all 75 of its subjects, their "only known exposure" to asbestos was cosmetic talc. That statement is indisputably false. Defendants now admit that multiple subjects were exposed to asbestos form non-talc sources. Furthermore, despite representing that their subjects were all "additional" to a similar paper by Dr. Jaqueline Moline, Defendants now admit that in fact eight subjects overlap. Pecos River—an indirect subsidiary of Johnson & Johnson—brought a trade libel claim over the false statements in the Article.

Because Defendants themselves now acknowledge that multiple subjects of the Article in fact were exposed to asbestos form non-talc sources, the "actual malice" element has moved front and center. As this Court explained, "actual-malice standard requires proof that the defamatory statement was published with knowledge that it was false or with reckless disregard of its truth or falsity." *LLT Mgmt. LLC v. Emory*, 766 F. Supp. 3d 576, 599 n.11 (E.D. Va. 2025). Evidence about what the authors knew and when they knew it accordingly is at the heart of this case.

Unfortunately, Dr. Kradin destroyed critical evidence that would help answer that question. Dr. Kradin suspiciously destroys *all* of both his sent and received emails *immediately* after sending or receiving them. There can be no question that Dr. Kradin knew that his emails and other materials would be sought by talc manufacturers to assess the veracity of his Article. Dr. Kradin is a sophisticated expert witness who was involved in ongoing talc litigation. He repeatedly warned

1

his co-authors that talc defendants—including J&J specifically—would want to see their materials. For example, while drafting the Article, Dr. Kradin warned Dr. Maddox that their data may be "subpoenaed down the road," and that "J&J and Colgate are going to want to see the data on this paper." Ex. 7, MADDOX_000001674; Ex. 8, MADDOX_00001744. Shortly before the Article was to be submitted for publication, Dr. Kradin even wrote: "[G]et ready for the J&J lawyers!" Ex. 1, MADDOX_00001941. He "got ready" for the J&J layers by destroying all his emails.

While Pecos River has emails that Dr. Kradin sent to his co-defendants and to his administrative assistant (who is also his wife), Pecos River has no ability to recover emails sent or received from others, including plaintiffs' attorneys, other plaintiffs' experts, or anyone else. Pecos River does not have any ability to test who Dr. Kradin communicated with regarding the Article because he deletes *all* his emails. These are lost and cannot be recovered.

Dr. Kradin has no plausible legitimate justification for this practice of deleting all his emails. The only excuse he could provide was that he deletes his emails to "clear up space on [his] computer." Ex. 2, Kradin Dep. at 121:1. But his presumably now-empty Gmail account can store approximately 200,000 emails. And when pressed, Dr. Kradin confirmed he did not actually know if his Gmail account did not allocate enough space for him. *Id.* at 121:2-7.

The truth is that Dr. Kradin is a sophisticated litigation participant who has served as an expert witness for 40 years. He expected to himself rely on this very Article in litigation. *Id.* at 134:3-7. And so he was also "expecting that counsel for talc manufacturers would be asking to see information related to [his] article." *Id.* at 123:13-18. Yet he believes that defense attorneys "will use anything that you say in print against you." *Id.* at 148:19-149:2, 150:20-25. The only plausible explanation for Dr. Kradin's practice of deleting all his emails is to ensure that his own words and emails cannot be used against him in litigation, including emails about his Article.

2

Dr. Kradin knew he had a duty to preserve his records—he told his co-defendants as much—yet he deliberately and intentionally spoliated that evidence. It is difficult to imagine worse bad faith, particularly when he knew that this would become sought-after evidence. Pecos River requests the Court issue an adverse-inference instruction to the jury and order any further relief the Court deems just and proper, including attorney's fees and costs.

## BACKGROUND

This case arises out of the publication of *Malignant Mesothelioma Following Repeated Exposures to Cosmetic Talc: A Case Series of 75 Patients*, co-authored by Dr. Kradin and his co-Defendants.

The Article states that for all 75 subjects, their "only known exposure to asbestos" was cosmetic talc. Ex. 3, Emory Article at 2. The Article goes on to state that these exposures were assessed by reviewing "sworn deposition testimonies and answers to sworn interrogatories." *Id.* And the Article also states that all of its subjects were "additional" to the subjects in a similar paper authored by Dr. Moline, movant here. All three of these statements are false.

Dr. Kradin now admits that a number of the subjects of their Article were in fact exposed to asbestos from non-talc sources. Ex. 4, Kradin Aug. 08, 2025 Amended and Supplemental Responses to Third Set of Interrogatories at 4. It is also not true that the Emory Authors reviewed deposition transcripts and interrogatories, as stated in their Article. Dr. Kradin asked his wife/administrative assistant to review his expert reports with no further instructions. Ex. 5, Cashman Dep. at 124:4-15. Nor is it true that no overlaps exist between the Emory Article and Dr. Moline's paper. In fact, eight subjects overlap. Ex. 6, Emory Dep. at 190:19-21.

This Court set out that Pecos River must show that Defendants' false statements were made "with malice" as an element of its trade libel claim. *LLT Mgmt. LLC*, 766 F. Supp. 3d at 599. The Court explained that the "actual-malice standard requires proof that the defamatory statement was

3

published with knowledge that it was false or with reckless disregard of its truth or falsity." *Id.* at 599 n.11. But Pecos River's ability to investigate Dr. Kradin's mental state has been irreparably harmed by his systematic destruction of evidence.

Dr. Kradin testified that he maintained a practice of deleting both sent and received emails from his Gmail and "Kradin Consulting" accounts almost immediately after transmission. Ex. 2, Kradin Dep. 122:9-20. This widespread deletion extended to all professional matters, including expert witness assignments, collaboration with counsel, the drafting of expert reports, and the preparation of nominally scholarly articles such as the one at issue. *Id.* at 120:7-122:23. The only explanation Dr. Kradin could provide for deleting all his emails is to "clear up space on [his] computer." *Id.* at 121:1.

Counsel of both parties met and conferred over emails and then by video call on October 17, 2025 but could not reach a resolution to this issue.

**ARGUMENT**

Dr. Kradin spoliated evidence, and that spoliation warrants an adverse inference instruction. "Rule 37(e), provides the legal framework for evaluating claims that a party failed to preserve electronically stored information ('ESI') for another's use in litigation." *Sines v. Kessler*, 2021 WL 5492826, at *2 (W.D. Va. Nov. 19, 2021). "Under Rule 37(e), a movant must satisfy four threshold requirements before a court decides if any spoliation sanction is appropriate." *Id.* "If the movant makes the threshold showing under Rule 37(e), the court must then consider whether the movant has established one of two options that would permit imposing sanctions." *Id.* (internal quotation marks omitted).

4

## I. A Spoliation Sanction Is Appropriate Due To Dr. Kradin's Deletion Of Emails

The four threshold requirements for assessing whether a spoliation sanction is appropriate are: "(1) ESI should have been preserved; (2) ESI was lost; (3) the loss was due to a party's failure to take reasonable steps to preserve the ESI; and (4) the ESI cannot be restored or replaced through additional discovery." *Id.* All four have been met.

### A. Dr. Kradin's emails should have been preserved.

"[W]hether ESI should have been preserved ... under Rule 37(e) turns chiefly on two questions underlying the duty to preserve: 1) whether the party should have reasonably anticipated litigation, and 2) whether the party reasonably should have known that the evidence at issue might be relevant to such litigation." *Id.* at *2. Dr. Kradin knew that his emails regarding his Article were relevant to ongoing litigation and that talc manufacturers would want to examine them.

A preservation duty "arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001) (citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)). A spoliator need not be served with a complaint or subpoena to be on notice that evidence must be preserved; it is enough that he is aware of circumstances making litigation reasonably foreseeable. *See, e.g.*, *Kronisch*, 150 F.3d at 126. Thus, for example, a party's subjective concern that documents could be "misunderstood" reveals "a fear that the documents would become the subject of litigation." *Id.* at 127. Furthermore, the duty to preserve is more acute if the spoliator is legally sophisticated. *See, e.g.*, *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F4th 1290, 1313-14 (11th Cir 2023).

Dr. Kradin knew his Article would be subject to litigation and had a duty to preserve his email communications regarding the Article. Here, Dr. Kradin was no passive academic who could credibly claim ignorance that litigation about the Article was reasonably foreseeable. Rather, he

5

was actively serving as a paid expert in talc litigation during the very period in which the Article was conceived, drafted, and published. Ex. 2, Kradin Dep. 13:8-14; 123:7-18. When preparing the Article, Dr. Kradin expected he would be relying on the Article when serving as an expert in talc litigation. *Id.* at 134:3-7.

More critically, he knew talc manufacturers could be seeking his materials related to the Article in the underlying talc litigation. Very early in the process in November 2019, Dr. Kradin advised Dr. Maddox that their "original data [m]ay be subpoenaed down the road!" Ex. 7, MADDOX_00001674. The next month he sent Dr. Maddox a draft of the Article which stated, "You can be certain that J&J and Colgate are going to want to see the data on this paper." Ex. 8, MADDOX_00001734; Ex. 9, MADDOX_00001733 (email attaching draft). Then in the month the Article was submitted to the journal, Dr. Kradin wrote to his co-authors: "As we are all actively engaged in litigation, you can be sure that defense counsels will ask to see the data." Ex. 10, EMORY_00001189. Two weeks later when submission was approaching, he wrote: "[G]et ready for the J&J lawyers!" Ex. 1, MADDOX_00001941.

By Dr. Kradin's own admission, he anticipated "intense scrutiny" from Pecos River and other talcum powder manufacturers upon the Article's publication. Ex. 2, Kradin Dep. 138:2-6. And he admitted that he was "expecting that counsel for talc manufacturers would be asking to see information related to [his] article." *Id.* at 123:13-18. Dr. Kradin thus knew—and certainly could reasonably foresee—that his email communications and other documents were "relevant" to ongoing litigation involving Pecos River that Dr. Kradin was a part of in his role as an expert witness. *Silvestri*, 271 F.3d at 591.

In short, Dr. Kradin admitted that he knew that talc manufacturers—including J&J and its subsidiaries—would want materials relating to his Article in order to challenge the veracity of the

6

Article's assertions in the underlying talc litigation. Whether Dr. Kradin anticipated that Pecos River would want the materials to test the veracity of the Article's assertions in a *trade libel claim in particular* is immaterial.

"Rule 37 does not require the exacting prescience . . . concerning the exact *type* of litigation a party anticipates, especially when the party advancing such an argument is the alleged spoliator. To read such a requirement into the Rule would allow misbehaving parties to escape their obligations to preserve evidence through the careful splitting of hairs." *Title Cap. Mgmt., LLC v. Progress Residential, LLC*, 2017 WL 5953428, at *4 (S.D. Fla. Sept. 29, 2017). Courts "reject[] the notion that a party's obligation to preserve information arises only after it understands the *precise* nature of the *specific* litigation at issue." *Zbylski v. Douglas Cnty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1162 (D. Colo. 2015) (emphasis in original); s*ee, also e.g.*, *Rambus, Inc. v. Infineon Techs., AG*, 220 F.R.D. 264, 287 n.30 (E.D. Va. 2004) (concluding it is not required that a spoliator anticipated specific litigation with a specific party).

Instead, all that matters is that litigation *generally* was reasonably foreseeable. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 496 (E.D. Va. 2011); *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011) (explaining that the point at which litigation becomes reasonably foreseeable "is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation."). Requiring a party to anticipate the precise nature of the litigation before triggering the duty to preserve would allow misbehaving parties "to destroy evidence while avoiding undertaking any investigation that might confirm suspicions of wrongdoing. That simply cannot be." *Zbylski*, 154 F. Supp. 3d at 1166-67.

7

Here, Dr. Kradin—a sophisticated, paid expert in talc cases—understood at a minimum that the Article would be invoked in the *ongoing* talc litigation with Pecos River and that its accuracy and methodology would be a key disputed point in that litigation. *See, e.g.*, *Kronisch*, 150 F.3d at 127 (upholding district court's determination that defendants' acknowledged concern over how documents might be perceived showed a subjective fear of litigation, sufficient to make the duty to preserve objectively apparent).

Dr. Kradin's own emails and testimony demonstrate he had a duty to preserve the underlying data and communications.

### B.     Dr. Kradin's emails are lost and cannot be replaced.

Despite Dr. Kradin having a duty to preserve his electronic communications, he deleted them. And now, because of his intentional destruction of critical evidence, they "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Dr. Kradin's primary email account is his Gmail. Ex. 2, Kradin Dep. 122:9-19. According to Google's retention policy, once data is deleted Google "immediately start[s] the process of removing it." Ex. 11, Google Privacy Policy.[1] Google's retention policy confirms that data can remain on its backup systems only for "up to 6 months." *Id.* Pecos River has no means to recover Dr. Kradin's intentionally deleted emails from 5 years ago.

Pecos River of course has the emails Dr. Kradin sent to his co-authors and to his wife (who is also his administrative assistant) from their respective inboxes. But Pecos River has no emails Dr. Kradin sent to anyone else, and no way to even know who those individuals are. Emails to plaintiffs' attorneys or other plaintiffs' experts cannot be recovered. Nor does Pecos River know what others were sending to Dr. Kradin, or what he was sending to himself while working on the

---

[1] https://policies.google.com/privacy

Article. Kradin's vague recollections of who he may have communicated with, which he admits are incomplete, plainly do not suffice. For example, Dr. Kradin claimed not to remember the substance of a conversation he had with Dr. Moline about his Article. Ex. 4, Kradin Dep. 111:14-16.

Dr. Kradin destroyed all his emails. And no matter how many document requests or subpoenas Pecos River services, the end result is that all those emails will never see the light of day. That, of course, appears to be by design.

### C. Dr. Kradin's failed to take reasonable steps to preserve his emails.

Dr. Kradin's conduct was not accidental. He admitted to a deliberate practice of deleting sent and received emails almost immediately after transmission, even after he could foresee their relevance to litigation. This was not a case of inadvertence, oversight, or technical error. Yet even autodeletion, as opposed to the much more serious manual destruction that happened here potentially hundreds of times (or more), is no excuse for spoliation because "[i]t takes, at most, only a few minutes to disengage the autodelete function on a cell phone." *Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 233 (D. Minn. 2019); *see also DeMartino v. Empire Holdings & Invs., LLC*, 2024 WL 712456, at *6 (S.D. Fla. Jan. 26, 2024) (explaining that an "intelligent professional" should know to preserve automatically deleted ESI).

Actively deleting all emails is the opposite of "reasonable steps to preserve" them.

\* \* \*

Dr. Kradin destroyed emails relevant to the litigation which can no longer be recovered. In short, Dr. Kradin spoliated evidence. The Court should therefore turn to determining the appropriate remedy for that spoliation.

9

## II. An Adverse Inference Instruction Is Warranted.

The proper remedy for Dr. Kradin's spoliation is an adverse interference instruction that the factfinder may presume that the destroyed emails would have been unhelpful to him.

"If the movant makes the threshold showing under Rule 37(e), the court must then consider whether the movant has established one of two options that would permit imposing sanctions." *Sines*, 2021 WL 5492826, at *2 (internal quotation marks omitted). "'[O]nly upon finding that the party acted with the intent to deprive another party of the information's use in the litigation,' the court may presume that the lost information was unfavorable to the party who lost it, instruct the jury that it may or must so presume, or dismiss the action or enter a default judgment." *Id.* (quoting Fed. R. Civ. P. 37(e)(2)). Alternatively, "'upon finding prejudice to another party from loss of the information, [the court] may order measures no greater than necessary to cure the prejudice.'" *Id.* (quoting Fed. R. Civ. P. 37(e)(1)).

### A. Dr. Kradin acted with the intent to deprive Pecos River of evidence.

Dr. Kradin intended to deprive Pecos River of evidence. If a party destroys evidence "with the intent to deprive another party of the information's use in the litigation," the Court may "instruct the jury that it may or must presume the information was unfavorable to the part." Fed. R. Civ. P. 37(e)(2). "Once an intent to deprive has been established, Rule 37(e)(2) does not require an additional finding of prejudice." *Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*, 2019 WL 5694256, at *12 (E.D.N.Y. July 22, 2019), *R&R adopted*, 2020 WL 1242616 (Mar. 16, 2020).

Dr. Kradin told his co-authors repeatedly that he knew that talc defendants would want to see materials related to the Article. He told Dr. Maddox he could be "certain" that J&J is "going to want to see data on this paper. Ex. 8, MADDOX_00001734. He told his co-authors they could be "sure" defense counsel would want to see the data. Ex. 10, EMORY_00001189. And when it

10

came time to submit the the Article, he wrote, "[G]et ready for the J&J lawyers!" Ex. 1, MADDOX_00001941.

Yet instead of making any effort to preserve his emails, he affirmatively deleted all of them immediately. *See Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 339-40 (D. Ariz. 2022) (finding intent to deprive where plaintiff deleted Facebook posts after becoming aware of their relevance to the litigation, including evidence that plaintiff was conscious of defendants' interest in the posts, deliberately chose permanent deletion over archiving despite knowing how to preserve them, and offered an implausible explanation for her actions); *see also Painadath v. Good Shepherd Penn Partners*, 348 F.R.D. 16, 27-28 (E.D. Pa. 2024) (finding intent sufficiently demonstrated where spoliator "didn't just fail to take reasonable steps to preserve the information on his phone — he affirmatively deleted a good chunk of it.").

Dr. Kradin has been an expert in litigation for over 40 years. Ex. 2, Kradin Dep. 28:18-21. With this experience in litigation and knowing J&J in particular would want to see materials related to the Article to challenge the Article's veracity, Dr. Kradin maintained a practice to delete all his emails immediately after he sends and receives them. This practice makes no sense other than to ensure all his emails cannot be used in litigation. He has lost confirmations for tickets for events or flights from deleting his emails—to the point where he can't find them when it is time to go to the event. Ex. 5, Cashman Dep. 62:8-11; Ex. 2, Kradin Dep. 121:22-122:3. His wife tells him he should keep his emails, but he doesn't. Ex. 5, Cashman Dep. 62:8; Ex. 2, Kradin Dep. 122:7-8.

Dr. Kradin's explanation for immediately deleting all sent and received emails makes no sense. He said he deletes all his emails to "clear up space on [his] computer." Ex. 2, Kradin Dep. 121:1. But at no charge, Google allocates *15 gigabytes* of space of storage for a Google account,

11

including Gmail.[2] That represents space for approximately 200,000 emails.[3] When Dr. Kradin was pressed on if he was really testifying that the Google space that he is "allocated doesn't have enough from for [his] emails," Dr. Kradin could only respond: "I don't know." *Id.* at 121:2-7. Nor would wanting to clear up space justify deleting every single email *immediately* as Dr. Kradin's inbox is presumably empty and nowhere near the storage limit.

Dr. Kradin is a sophisticated litigation participant who has been an expert witness for 40 years. Ex. 2, Kradin Dep. 28:18-21. It is his view that defense attorneys "will use anything that you say in print against you." *Id.* at 148:19-149:2, 150:20-25. He expected J&J in particular to want to see materials related to the Article. The only rational explanation for deleting emails was to deprive opposing counsel of any ability to use his emails, including in this litigation, as he fears opposing counsel will use anything he writes down against him.

Because Dr. Kradin intended to deprive Pecos River of evidence, the court should instruct the jury that it may presume the information was unfavorable to him. *See* Fed. R. Civ. P. 37(e)(2).

**B.    Dr. Kradin's spoliation prejudiced Pecos River.**

At a minimum, Dr Kradin's spoliation prejudiced Pecos River, permitting the Court to at the very least "order measures no greater than necessary to cure the prejudice" under Rule 37(e)(1). These measures can include, for example, "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument." Rule 37 Committee Notes on Rules—2015 Amendment.

---

[2] https://support.google.com/mail/answer/9312312?hl

[3] https://support.themessaging.co/hc/en-au/articles/10177034706319-How-much-storage-do-I-need

Pecos River has lost some ability to use Dr. Kradin's own words to test his mental state regarding the Article—a critical issue in this litigation. *Buddenberg v. Est. of Weisdack*, 711 F. Supp. 3d 712, 822 (N.D. Ohio 2024) (holding that lack of ESI necessarily prejudiced defendants where context provided by that ESI "changes the complexion of the case"); *Connor v. Sun Tr. Bank*, 546 F. Supp. 2d 1360, 1376 (N.D. Ga. 2008) ("[T]he absence of the relevant evidence prejudices the party that would have relied on it to prove its case."). Because Dr. Kradin destroys *all his emails*, Pecos River has no ability to demonstrate who he communicated with regarding the Article. And while Pecos River has been able to recover some emails from the other Defendants, Pecos River has no way to test what he said about his Article to plaintiffs' counsel, other plaintiffs' experts, or anyone else. This is critical to the "actual malice" mental state element.

At a minimum, this Court should instruct the jury that Dr. Kradin had a legal obligation to preserve his emails at the time that he destroyed them. See *Gomez v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 2021 WL 3406687, at *4 (M.D. Tenn. Aug. 4, 2021) ("The Court will instruct the jury that 'Metro had a duty to preserve emails from Gomez's and Smith's email accounts, including emails contemporaneous to the "I hate" email but failed to do so.'")

Furthermore, "in addition to a spoliation sanction, a court will award a prevailing litigant the litigant's reasonable expenses incurred in making the motion, including attorney's fees." *Goodman*, 632 F. Supp. 2d at 523; *see also Simone v. VSL Pharms., Inc.*, 2018 WL 1365848, at *8 (D. Md. Mar. 16, 2018) (awarding attorneys' fees for spoliation where the moving party incurred significant costs in investigating destruction of documents and to deter "similarly situated future litigants . . . from destroying documents that may be relevant in future litigation").

## CONCLUSION

The Court should give an adverse inference instruction and order any other spoliation remedy the Court deems appropriate, including attorney's fees and costs.

Dated: October 20, 2025

Respectfully submitted,

*/s/ Benjamin L. Hatch*

**MCGUIREWOODS LLP**

Benjamin L. Hatch (VSB No. 70116)
Sylvia Macon Kastens (VSB No. 92375)
World Trade Center
101 West Main Street, Suite 9000
Norfolk, VA 23510-1655
Telephone: (757) 640-3727
Facsimile: (757) 640-3947
bhatch@mcguirewoods.com
skastens@mcguirewoods.com

Samuel L. Tarry, Jr. (VSB No. 36850)
1750 Tysons Boulevard, Suite 1800
Tysons, VA 22102-4215
Telephone: (703) 712 5000
Facsimile: (703) 712 5050
starry@mcguirewoods.com

**KIRKLAND & ELLIS LLP**

Kristen Fournier *(pro hac vice)*
Matthew Bush *(pro hac vice)*
601 Lexington Avenue
New York, NY 10022
T: (212) 446-4800
F: (212) 446-4800
kristen.fournier@kirkland.com
matthew.bush@kirkland.com

Akhil K. Gola *(pro hac vice)*
1301 Pennsylvania Ave NW
Washington, DC 20004
T: (202) 389-3256
F: (202) 736-1910
akhil.gola@kirkland.com

*Attorneys for Plaintiff Pecos River Talc LLC*

14

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 20, 2025, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of electronic filing to all counsel of record.

*/s/ Benjamin L. Hatch*
Benjamin L. Hatch (VSB No. 70116)