**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

---

PECOS RIVER TALC LLC,

      Plaintiff,

      v.

DR. THERESA SWAIN EMORY, DR.
RICHARD LAWRENCE KRADIN, AND
DR. JOHN COULTER MADDOX,

      Defendants.

Civil Action No. 4:24-cv-75

---

**PECOS RIVER TALC LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO COMPEL DISCLOSURE OF INFORMATION RELATED TO THIRD-**
**PARTY LITIGATION FUNDING**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 4

    I.      Coordination With Simon Greenstone ........................................................ 4

    II.     Defendants' Testimony Regarding Litigation Funding................................ 7

LEGAL STANDARD .......................................................................................................... 10

ARGUMENT ....................................................................................................................... 11

    I.      Facts Concerning Litigation Funding Are Not Privileged. ........................ 11

    II.     Information Regarding Litigation Funding is Highly Relevant.................. 14

    III.    Additional Discovery is Appropriate and Not Disproportionate. .............. 16

CONCLUSION..................................................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bonumose Biochem, LLC v. Yi-Heng Zhang*,
    No. 3:17-cv-00033, 2018 WL 10068639 (W.D. Va. Sept. 10, 2018).........................11, 14, 15

*Bost v. Wexford Health Sources, Inc.*,
    No. CV ELH-15-3278, 2017 WL 3084953 (D. Md. June 19, 2017).....................................12

*Cobra Int'l, Inc. v. BCNY Int'l, Inc.*,
    No. 05-61225-CIV, 2013 WL 11311345 (S.D. Fla. Nov. 4, 2013) .........................................12

*Cohen v. Cohen*,
    No. 09 Civ. 10230 (LAP), 2015 WL 745712 (S.D.N.Y. Jan. 30, 2015)................................12

*Cont'l Cirs. LLC v. Intel Corp.*,
    435 F. Supp. 3d 1014 (D. Ariz. 2020) ..................................................................................14

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
    335 F.R.D 510 (N.D. Ill 2020)...............................................................................................11

*In re Depo-Provera*,
    No. 3:25-md-3140, 2025 WL 1860996 (N.D. Fla. July 1, 2025) ...........................................12

*Doe v. Old Dominion Univ.*,
    289 F. Supp. 3d 744 (E.D. Va. 2018) ...................................................................................10

*EEOC v. Sheffield Fin., LLC*,
    No. 1:06-CV-00889, 2007 WL 1726560 (M.D.N.C. June 13, 2007) ....................................14

*Fleming v. Mountain States Health All.*,
    No. 1:11-cv-00050, 2012 WL 1909343 (W.D. Va. May 25, 2012).......................................16

*Khartchenko v. Am. Oncologic Hosp., Inc.*,
    No. 23-23043, 2024 WL 4345277 (D.N.J. Sept. 30, 2024)...................................................11

*Leader Techs., Inc. v. Facebook, Inc.*,
    719 F. Supp. 2d 373 (D. Del. 2010)......................................................................................12

*LLT Mgmt. LLC v. Emory*,
    766 F. Supp. 3d 576 (E.D. Va. 2025) ..............................................................................1, 15

*Mainstreet Collection, Inc. v. Kirkland's, Inc.*,
    270 F.R.D. 238 (E.D.N.C. 2010) ..........................................................................................14

*Moline v. Pecos River*,
    ECF No. 16 ................................................................................................2, 7, 16

*Montgomery Cnty. v. MicroVote Corp.*,
    175 F.3d 296 (3d Cir. 1999) ....................................................................12

*Nunes v. Lizza*,
    No. 20-cv-4003-CJW, 2021 WL 7186264 (N.D. Iowa Oct. 26, 2021) .................14

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) ............................................................................14

*Pecos River Talc LLC v. Emory*,
    No. 4:24-cv-75, 2025 WL 1888565 (E.D. Va. July 8, 2025) ........................14, 16

*Pecos River Talc LLC v. Emory*,
    No. 4:24-cv-75, 2025 WL 1921507 (E.D. Va. July 11, 2025) ...........................14

*Ramirez v. T&H Lemont, Inc.*,
    845 F.3d 772 (7th Cir. 2016) ...................................................................13

*Singletary v. Sterling Transp.*
    Co., 289 F.R.D. 237, 241 (E.D. Va. 2012) ................................................10

*Tucker v. Momentive Performance Materials USA, Inc.*,
    No. 2:13-cv-04480, 2016 WL 8252929 (S.D. W. Va. Nov. 23, 2016) .............14, 16

*United States v. Haddad*,
    527 F.2d 537 (6th Cir. 1975) ...................................................................11

*United States v. (Under Seal)*,
    774 F.2d 624 (4th Cir. 1985) ...................................................................11

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ............................................................................11

*Va. Dep't of Corr. v. Jordan*,
    921 F.3d 180 (4th Cir. 2019) ...................................................................14

*Walsh v. Kynd Hearts Home Healthcare, LLC*,
    No. 2:20-cv-630, 2022 WL 18108388 (E.D. Va. Sept. 1, 2022) .........................10

**Rules**

Fed. R. Civ. P. 26 ..................................................................................10, 13

Fed. R. Civ. P. 26(b)(1) ...............................................................................10

Fed. R. Civ. P. 37 ..................................................................................10, 13

Fed. R. Civ. P. 37(a)(1) ........................................................................................10

Fed. R. Civ. P. 37(a)(3)(B) ...................................................................................10

Fed. R. Civ. P. 37(a)(4) ..................................................................................10, 13

Fed R. Civ P. 418 (proposed Oct. 10, 2024),
    https://www.uscourts.gov/sites/default/files/2024-
    10_civil_rules_agenda_book_final_10-6.pdf. ........................................12

Loc. Civ. R. 37(E) ................................................................................................10

Va. Rules of Pro. Conduct r. 1.8(f) ...................................................................3, 13

**Other Authorities**

J. Moline, K. Patel, & A.L. Frank, Exposure to Cosmetic Talc and Mesothelioma.
    J. Occup. Med. & Toxicol 18, (2023). https://doi.org/10.1186/s12995-023-
    00367-5 ......................................................................................................4

J. Steffen, *et al.*, *Serious Ovarian Cancer Caused by Exposure to Asbestos and
    Fibrous Talc in Cosmetic Talc Powders-A Case Series*, 62 J. Occup. & Envtl.
    Med. 65, (Feb. 2020) ............................................................................4, 6, 7

Letter from Hon. David G. Campbell, Chair, Advisory Comm. on Civil Rules, to
    Hon. Jeffrey S. Sutton, Chair, Comm. on Rules of Practice & Procedure (Dec.
    2, 2014), at https://www.uscourts.gov/sites/default/files/fr_import/CV12-
    2014.pdf. ...................................................................................................12

T. Emory, J. Maddox and R. Kradin, *Malignant Mesothelioma Following
    Repeated Exposures to Cosmetic Talc: A Case Series of 75 Patients.* Am J
    Indus. Med. 484 (2020) ...................................................................1, 3, 4, 5

Plaintiff Pecos River Talc LLC ("Pecos River") submits this memorandum in support of its motion to compel the production of information regarding Defendants' litigation financing.

## INTRODUCTION

Defendants are career plaintiffs' experts in cosmetic talc litigation. With the aid of the plaintiffs' asbestos law firm, Simon Greenstone Panatier, Defendants wrote an article entitled *Malignant Mesothelioma Following Repeated Exposures to Cosmetic Talc: A Case Series of 75 Patients* (the "Emory Article" or the "Article"). Based on discovery that has been taken in this matter, it now appears that a mystery benefactor has been paying Defendants' attorneys' fees, but Defendants will not tell Pecos River who the benefactor is to confirm Pecos River's belief it is Simon Greenstone Panatier. Nor will they say whether they have an expectation that Simon Greenstone, or anyone else, will cover their damages in the event of liability.

This Court already explained in the motion to dismiss stage that the connection between Defendants' Article and the plaintiffs' bar is relevant to Pecos River's trade libel claim. This Court stated that Pecos River alleged that "the defendants intended to contribute to a body of literature manufactured to be presented in court." *LLT Mgmt. LLC v. Emory*, 766 F. Supp. 3d 576, 588 (E.D. Va. 2025) (citing Dkt. 1, ¶ 8 ("Compl.")). And this Court concluded that Pecos River "plausibly alleges that the defendants' intended and actual audience was the plaintiffs' bar, rather than the scientific community." *Id.* at 595.

Defendants have maintained that their decision to write the Article had nothing to do with litigation. *See* Ex. 1, Kradin Dep. 133:19–24; Ex. 2, Emory Dep. 130:20–23. Yet discovery has now shown that Emory Article was part of a coordinated effort by Simon Greenstone to put forward not just the Emory Article, but also two other papers on talc written by a combined eight plaintiffs' experts that were published in the same timeframe. A Southern District of New York judge already ruled that Pecos River has sufficient evidence of Simon Greenstone's coordination of these papers

to seek further discovery into the issue through a deposition of Dr. Moline—a plaintiffs' asbestos expert who wrote one of the other two papers at issue. *Moline v. Pecos River Talc LLC*, 2025 WL 2898086, at *4 (S.D.N.Y. Oct. 10, 2025)

When Pecos River asked Defendants whether Simon Greenstone (or anyone else) was paying for their defense or might pay for damages in the event of liability, they were stymied at every turn through instructions not to answer and non-responsiveness. For example, Dr. Maddox was instructed not to answer whether anyone other than himself or his co-defendants is paying for his attorneys:

> Q. Is anybody other than you, Dr. Kradin and Dr. Emory paying for your attorneys in this case?

> MS. LOCKWOOD: And I'll just remind you, Dr. Maddox, not to reveal the contents of any of our privileged communications.

> THE WITNESS: I have no comment.

> Q. So you can't answer whether anyone is paying for your attorneys other than Dr. Kradin, you, and Dr. Emory without revealing the contents of your communications with attorneys?

> A. I have been so instructed.

Ex. 3, Maddox Dep. 15:25–16:12.

And when he was asked if he had "any expectation that someone other than you or your co-defendants would pay any or all of damages that may be assessed against you in the event that you're found liable," he answered non-responsively: "I have no *agreements*, either written or verbal, to that effect." *Id.* at 19:10–15 (emphasis added). Even after further questioning, Dr. Maddox—a professional expert witness—studiously avoiding answering if he had an "expectation" that someone might contribute to pay some or all of any damages assessed against him. *Id.* at 18:19–21:4.

Dr. Kradin testified that someone could be paying his attorneys fees without his knowledge. When asked how that was possible, he was instructed to answer only to the extent it would not reveal privileged communications. *Id.* at 11:23–25. With that limitation in place, he responded: "I really just don't know. I don't know the answer." *Id.* at 12:1.

Pecos River raised to defense counsel that litigation funding was not privileged, and defense counsel responded that the issue might be resolved in Dr. Emory's (at the time upcoming) deposition. Dr. Emory's deposition did not resolve the dispute. Dr. Emory confirmed that *someone* is financially contributing to their defense, but she claimed not to know the identity of who was providing funding. Ex. 2, at 18:3–6.

Dr. Emory's claimed lack of knowledge of the identity of the funder and Dr. Kradin's claimed lack of knowledge of *any* funding is particularly troubling. Virginia Rule of Professional Conduct 1.8(f) states that "[a] lawyer shall not accept compensation for representing a client from one other than the client unless: 1, the client consents after consultation." Consultation means "communication of information reasonably sufficient to permit the client to appreciate the significance of the matter in question." Model ABA Rule 1.8(f) is very similar. If Dr. Emory and Dr. Kradin's testimony is to be believed, there are serious questions as to whether these rules have been met. Dr. Emory could not have had the information to appreciate the significance and the potential conflicts of a third-party paying for her defense without knowing the *identity* of the funder. And Dr. Kradin claimed not to know anything about the funding *at all*.

Courts routinely hold that litigation funding information is not privileged. And Defendants cannot conceal the *fact* of any funding simply because it may have been communicated to them through counsel. The funding is directly relevant to the overall context of the Article, Defendants'

incentives to tell the truth now (or simply appease their source of funding), and their motivations to intentionally or recklessly disregard the truth in their Article.

In light of these concerning irregularities, and cognizant of the need to move this case forward, Pecos River proposes as a remedy that Defendants answer three simple interrogatories asking for (1) the identities of anyone who has funded, agreed to fund, or suggested they might fund the defense; (2) the identities of anyone who has agreed to pay damages or suggested they might; and (3) the nature of any such arrangements or suggestions. *See* Ex. 4, Proposed Interrogatories.

This Court should order Defendants to respond to Pecos River's Proposed Interrogatories attached as **Exhibit 4**.

## BACKGROUND

The Article at issue in this Case was written by three experts in cosmetic talc litigation, Dr. Theresa Emory, Dr. John Maddox, and Dr. Richard Kradin—the Defendants here. The Article concerns 75 individuals with mesothelioma, all of whom are plaintiffs in cosmetic talc litigation. The Emory Article's central premise—that the 75 subjects had no other exposures to asbestos—is indisputably false. Defendants now admit that a number of the subjects of their Article were in fact exposed to asbestos from non-talc sources. Ex. 5, Kradin Aug. 08, 2025 Amended and Supplemental Responses to Third Set of Interrogatories at 4.

## I.    Coordination With Simon Greenstone

Evidence from discovery demonstrates that Simon Greenstone Panatier—a law firm that represents plaintiffs in asbestos litigation—coordinated not only the Emory Article, but also a similar paper by Dr. Jacqueline Moline (the "Moline Paper"), and a third paper published in the same period by plaintiffs' experts whose lead author is Dr. Joan Steffen (the "Steffen Paper").

As they were drafting the Article, Defendants expected to rely on it in litigation. Ex. 3, Maddox Dep. 163:3–167:18; Ex. 1, Kradin Dep. 134:3–7; Ex. 2, Emory Dep. 130:20–23, Emory Dep. 254:10–15, 255:6–20. Early in the preparation of the Emory Article, Leah Kagan from Simon Greenstone emailed Dr. Maddox an initial set of cases for him to include in his Article upon his request. Ex. 6, Apr. 10, 2019 Email. Dr. Maddox asked for additional cases two months later, which Ms. Kagan again provided. *Id.* at 1. Throughout the process, attorneys from Simon Greenstone fielded questions from Dr. Maddox and Dr. Emory regarding subjects of the Article. Ex. 3, Maddox Dep. 23:9–26:21.

The Moline Paper became available online on October 10, 2019. Ex. 7, Written Testimony of Jacqueline Moline at 2 n.3. Months before that, Chris Panatier, a shareholder of Simon Greenstone, informed Dr. Maddox that Dr. Moline submitted her paper. Ex. 8, Aug. 10, 2019 Email. Around the same time, Dr. Kradin changed the critical language of a draft of the Emory Article. The Article previously stated that the subjects were exposed asbestos from talc "either solely *or predominantly*." Ex. 9, Kradin Redline (emphasis added); *see also* Ex. 10, July 31, 2019 Email. But Dr. Kradin deleted that language and replaced it with the statement that the subjects "*only known exposure to asbestos*" was via cosmetic talc. Ex. 9 (emphasis added). This language is nearly identical to that of Dr. Moline's at-the-time unpublished paper which states her subjects had "*no known asbestos exposure* other than cosmetic talc." Ex. 11, Moline Paper at 11 (emphasis added)

One month later—still before Dr. Moline's paper was public—Dr. Kradin and Dr. Maddox discussed the potential overlap between the subjects of their Article and the subjects of Dr. Moline's paper. *See* Ex. 12, Sept. 01, 2019 Email.[1] The reason Dr. Maddox knew that Dr. Moline

---

[1]    The email refers to "Gordon" who is a co-author of Dr. Moline's paper.

would be writing a paper with talc plaintiffs as the paper's subjects was because Mr. Panatier from Simon Greenstone told him. Ex. 3, Maddox Dep. 168:3–10.

Three days before Dr. Moline's paper was published, Dr. Maddox wrote that he understood the Dr. Moline's was to be published in the Journal of Occupational and Environmental Medicine that week. Ex. 13, Oct. 7, 2019 Email. After the paper became available online, Dr. Kradin wrote to Dr. Moline telling her: "We have all been waiting for it so congratulations are in order!" Ex. 14, Oct. 22, 2019 Email. Dr. Kradin then spoke to Dr. Moline who "encouraged [him] to submit our article asap." Ex. 15, Oct. 23, 2019 Email.

A few months later, when Dr. Emory was attempting to determine if the subjects of her Article overlapped with the subjects of Dr. Moline's, she enlisted Simon Greenstone's help: "I have SGP trying to help ensure that the Moline cases are not overlapping ours." Ex. 16, Feb. 11, 2020 Email. Although Dr. Emory has repeatedly claimed the identities of the subjects of her Article are confidential, she in fact sent the names of *all* the subjects to Simon Greenstone. Ex. 17, Feb. 10, 2020 Email.

On February 12, 2020, attorneys from Simon Greenstone informed Dr. Emory that they would speak to Dr. Moline about the issue of the overlap in papers' subjects. Ex. 18, Feb. 12, 2020 Email. Simon Greenstone then arranged for the two experts to discuss the issue. Although Dr. Emory had never had any interactions with Dr. Moline before, the next day Dr. Emory emailed Dr. Moline directly to discuss the potential for overlap of the subjects of Dr. Moline's article. Ex. 2, at 223:22–225:3; Ex. 19, Feb. 13, 2020 Email Chain.

And the Moline Paper was not the only talc paper published by plaintiffs' experts in talc litigation in this timeframe. That paper authored by Dr. Moline and Dr. Gordon (both plaintiffs' experts in cosmetic talc litigation) was a case series that was formally published as article Number

1 in Volume 62 of the Journal of Occupational and Environmental Medicine. Ex. 11, Moline Paper at 14. The Steffen Paper was article Number 2 of the same Volume of the same Journal. Ex. 20, Joan E. Steffen, et al., *Serious Ovarian Cancer Caused by Exposure to Asbestos and Fibrous Talc in Cosmetic Talc Powders—A Case Series*, 62 JOEM 65, 65 (Feb. 2020). It is *another* case series also written by three plaintiffs' experts in cosmetic talc litigation (Dr. Longo, Dr. Rigler, and Dr. Egilman) and others who work for Dr. Egilman. *Id.* at 65.

When Mr. Panatier told Dr. Maddox that Dr. Moline had submitted a paper, he also mentioned a paper from "Longo." Ex. 12. Dr. Emory, Dr. Maddox, and Dr. Kradin's case series was published the next month, bringing the total up to eight plaintiffs' experts authoring articles about cosmetic talc in this time period. Dr. Kradin implausibly claimed that it was just "coincidence" that "three articles that are all case series all about cosmetic talcum powder all authored by experts for the plaintiffs in cosmetic talc litigation came out in a close period of time in the same year." Ex. 1, at 96:16–21.

A Southern District of New York judge outlined this same evidence and ruled that Pecos River has sufficient evidence of Simon Greenstone's coordination to seek further discovery into the issue through a deposition of Dr. Moline. *Moline*, 2025 WL 2898086, at *4. The Court wrote: "On the record before the Court, however, Pecos River has adduced evidence indicating that Dr. Moline likely possesses information bearing on communications among SGP and the Emory defendants regarding overlap between the Moline and/or Steffen articles. Such evidence has clear potential to bear on Pecos River's claims of actual malice." *Id.*

## II.    Defendants' Testimony Regarding Litigation Funding

Having learned about this coordination between Defendants and Simon Greenstone, Pecos River has tried to learn whether that firm—or anyone else—is playing a role in funding the defense of this case either now or with some reimbursement in the future.

Of the three Defendants, Dr. Kradin's deposition occurred first. When asked if anyone other than himself and his co-defendants were paying for his attorneys, Dr. Kradin suspiciously responded, "Not to my knowledge." Ex. 1, at 11:15–17. He was then asked whether there was "any reason somebody would be paying your attorneys without your knowledge and responded even more cryptically: "There could be." *Id.* at 11:18–20.  When asked why someone might be paying his attorneys without his knowledge, he was instructed not to answer only to the extent it would not reveal privileged communications. *Id.* at 11:23–25. With that limitation in place, he responded: "I really just don't know. I don't know the answer." *Id.* at 12:1.

Dr. Maddox deposition held two days later followed a similar theme. Dr. Maddox was instructed not to answer whether anybody other than himself and his co-defendants are paying for his attorneys in this case:

> Q. Is anybody other than you, Dr. Kradin and Dr. Emory paying for your attorneys in this case?
>
> MS. LOCKWOOD: And I'll just remind you, Dr. Maddox, not to reveal the contents of any of our privileged communications.
>
> THE WITNESS: I have no comment.
>
> Q. So you can't answer whether anyone is paying for your attorneys other than Dr. Kradin, you, and Dr. Emory without revealing the contents of your communications with attorneys?
>
> A. I have been so instructed.

Ex. 3, at 15:25–16:12.

Dr. Maddox also gave evasive and non-responsive answers to questions regarding whether anyone might be paying for any damages assessed against him. He was asked if he had "any expectation that someone other than you or your co-defendants would pay any or all of damages that may be assessed against you in the event that you're found liable?" *Id.* at 19:9–13. He

responded with very particular, and non-responsive, wording: "I have no agreements, either written or verbal, to that effect." *Id.* at 19:14–15.

When asked again, he gave another non-responsive answer: "Well, I mean, I also have expectations or hopes that I win the Powerball. But as far as written or verbal agreements with any entity, no, I don't have any." *Id.* at 19:22–25.  When asked for an actual responsive answer not about what he "hopes," counsel objected on "asked and answered" and stated she would permit Dr. Maddox to "answer it one last time." *Id.* at 20:17–21. He then gave the same response based on his "hopes" and his lack of "written or verbal agreements"—"I can hope that if there was a bad outcome for me, that others would help me. But I have no written or verbal agreements to that effect." *Id.* at 20:22–25.  He ultimately testified that he "hope[s]" that if he is found liable, Simon Greenstone "would take notice and act accordingly." *Id.* at 21:18–19. He carefully avoided ever stating what his "expectations" were.

Based on this deposition testimony, Pecos River believed that Simon Greenstone has told Defendants—perhaps through counsel—that it will cover some or all of Defendants attorneys' fees and/or damages but without written agreements that would be discoverable. Counsel for Pecos River therefore emailed counsel for the Defendants requesting: "(1) who other than Defendants is providing funding for the defense of this case, including any statements or suggestions that the Defendants' costs of defending the case would or might be compensated after the fact; (2) who other than Defendants has stated or suggested that they would or might contribute to pay for some or all of any damages assessed against Defendants in the event they are found liable or reimburse Defendants for such damages; and (3) the nature of any such actual, suggested, or discussed arrangements." Ex. 21, Sept. 26, 2025 Email.

Defendants responded by suggesting that Dr. Emory's then-upcoming deposition might be able to resolve the dispute. Counsel wrote: "With respect to Dr. Emory's upcoming deposition, we will consider whether any privilege objections are appropriate based on the questions that you ask (and with the authority that you've cited below in mind), and I would hope that we could sort out any lingering disputes at that time." *Id.*

But Dr. Emory's deposition did not put an end to this issue.  Dr. Emory testified that *some unknown source* is paying for a portion of the attorneys' fees, that it's "possible" that source is Simon Greenstone, but that she does not know who it is.  Ex. 2, Emory Dep. at 20:2–9.

Consistent with Federal Rule of Civil Procedure 37(a)(1) and Local Civil Rule 37(E), the parties met and conferred regarding this dispute by email and by video call on October 17, 2025. Despite these efforts, the parties were unable to reach agreement regarding the production of the requested information. Pecos River requested that Defendants respond to the interrogatories in Exhibit 4.  Dr. Maddox and Dr. Kradin would agree to provide responses regarding some but not all of the requested information requested, and Dr. Emory would not agree to respond to the interrogatories at all.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "In considering whether evidence is relevant and proportional, the Court considers importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Walsh v. Kynd Hearts Home Healthcare, LLC*, No. 2:20-cv-630, 2022 WL 18108388, at *1 (E.D. Va. Sept. 1, 2022) (citing Fed. R. Civ. P.

26(b)(1)). The party objecting to disclosure must "establish that the challenged production should not be permitted." *Doe v. Old Dominion Univ.,* 289 F. Supp. 3d 744, 749 (E.D. Va. 2018) (citation omitted).

## ARGUMENT

Under Federal Rule of Civil Procedure 37, "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if … a deponent fails to answer a question." Fed. R. Civ. P. 37(a)(3)(B), (i). A failure to answer includes "evasive or incomplete" answers. Fed. R. Civ. P. 37(a)(4). "On a motion to compel, 'the burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted.'" *Old Dominion Univ.*, 289 F. Supp. 3d at 749 (quoting *Singletary v. Sterling Transp.* Co., 289 F.R.D. 237, 241 (E.D. Va. 2012)). Here, as confirmed by courts around the country, Defendants cannot meet that burden with respect to third-party litigation funding.

## I.     Facts Concerning Litigation Funding Are Not Privileged.

"[T]he attorney-client privilege normally does not extend to the payment of attorneys' fees and expenses." *United States v. (Under Seal)*, 774 F.2d 624, 628 (4th Cir. 1985) (citing, inter alia, *United States v. Haddad*, 527 F.2d 537, 538 (6th Cir. 1975)). That is because such payment is a fact—not advice of counsel. *See, e.g.*, *Haddad*, 527 F.2d at 539 ("[T]he payment of a fee is not normally a matter of confidence or a communication.").

Nor do such facts become privileged simply because a client learns those facts from counsel, who of course is the client's agent. To the contrary, it is black-letter law that "[t]he privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981); *see also Khartchenko v. Am. Oncologic Hosp., Inc.*, No. 23-23043

(ESK/EAP), 2024 WL 4345277, at *8 (D.N.J. Sept. 30, 2024) ("[T]he attorney-client privilege does not protect a party from disclosing underlying facts. Rather, it simply protects communications between a party and the party's attorney.").

Courts therefore can and do order the production of information bearing on litigation funding. *See, e.g.*, *Bonumose Biochem, LLC v. Yi-Heng Zhang*, No. 3:17-cv-00033, 2018 WL 10068639, at *4 (W.D. Va. Sept. 10, 2018) (ordering production of facts "bearing on whether … any other persons or entities with a potential interest in the plaintiffs' remaining claims against Defendants have at any time offered or agreed to pay, are paying, have paid, have been charged for, or have contributed to payment of Defendants' legal fees and costs") (emphasis omitted).

That is because such information—again, financial facts, not legal advice—simply is not privileged. *See, e.g.*, *In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D 510, 519 (N.D. Ill 2020) (communications relating to "litigation funding … are not communications protected by attorney-client privilege."); *Cobra Int'l, Inc. v. BCNY Int'l, Inc.*, No. 05-61225-CIV, 2013 WL 11311345, at *3 (S.D. Fla. Nov. 4, 2013) ("litigation funding agreement is relevant and is not privileged"); *Cohen v. Cohen*, No. 09 Civ. 10230 (LAP), 2015 WL 745712, at *4 (S.D.N.Y. Jan. 30, 2015) (similar); *Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 377 (D. Del. 2010) (similar); *see also Montgomery Cnty. v. MicroVote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999) ("The attorney-client privilege does not shield fee arrangements."). In short, "federal judges can and do still obtain information about third-party litigation funding arrangements in cases filed in their courts." *In re Depo-Provera*, No. 3:25-md-3140, 2025 WL 1860996, at *1 (N.D. Fla. July 1, 2025).

Other sources further confirm this point. For example, the Advisory Committee on Civil Rules "agreed that judges currently have the power to obtain information about third-party funding when it is relevant." Letter from Hon. David G. Campbell, Chair, Advisory Committee on Civil

Rules, to Hon. Jeffrey S. Sutton, Chair, Committee on Rules of Practice & Procedure 4 (Dec. 2, 2014), at https://www.uscourts.gov/sites/default/files/fr_import/CV12-2014.pdf. This is a point of "broad agreement." Advisory Committee on Civil Rules, Agenda—Meeting of the Advisory Committee on Civil Rules 418 (Oct. 10, 2024), https://www.uscourts.gov/sites/default/files/2024-10_civil_rules_agenda_book_final_10-6.pdf. Several courts even *require* such information as a matter of course. *See, e.g.*, *Depo-Provera*, 2025 WL 1860996, at *1 (collecting local rules).

Despite this authority, Defendants' counsel refused to allow their clients to answer simple questions about third-party litigation funding. But Pecos River, like any plaintiff, is entitled to receive undoubtedly nonprivileged, discoverable information. *See, e.g.*, *Bost v. Wexford Health Sources, Inc.*, No. CV ELH-15-3278, 2017 WL 3084953, at *5 (D. Md. June 19, 2017) (counsel needs a valid privilege to "instruct a deponent not to answer a question").

Even in the instances where instructions not to answer were not interposed, Dr. Maddox gave evasive and non-responsive answers—not actually responding to whether he has an "expectation" that someone would pay for his damages in the event he is found liable. *See* Background § II. As discussed above, a failure to answer under Rule 37 includes "evasive or incomplete" answers. Fed. R. Civ. P. 37(a)(4). That is exactly what occurred.

Finally, Dr. Emory's claimed lack of knowledge of the identity of the funder and Dr. Kradin's claimed lack of knowledge of any funding is alarming. Virginia Rule of Professional Conduct 1.8(f) states that "[a] lawyer shall not accept compensation for representing a client from one other than the client unless: 1, the client consents after consultation." Consultation means "communication of information reasonably sufficient to permit the client to appreciate the significance of the matter in question." Model ABA Rule 1.8(f) is very similar.

13

Defendants could not possibly appreciate the significance and risks of third-party funding without knowing who the funder is or if the funding even existed. If Dr. Kradin and Dr. Emory's testimony is true, then it appears that the litigation funding was improperly structured to try to ensure that it would either not be discoverable and/or communicated through counsel for the (mistaken) purpose of attempting to create a privilege shield that in fact does not exist. If Defendants' testimony regarding their lack of knowledge is not true, then that is equally alarming, if not more so. And Rule 37 still "extend[s] to instances of a party hiding evidence and lying in his deposition." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016).

The information regarding litigation funding is not privileged and is discoverable.

## II.    Information Regarding Litigation Funding is Highly Relevant.

Information about who is paying for Defendants' legal defense is also highly relevant. As this Court explained, "[a]lthough Rule 26 does not define relevant, relevance in the discovery context has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Pecos River Talc LLC v. Emory*, No. 4:24-cv-75, 2025 WL 1888565, at *3 (E.D. Va. July 8, 2025) (internal quotation marks omitted) (quoting *EEOC v. Sheffield Fin., LLC*, No. 1:06-CV-00889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007)).

For purposes of discovery, "[r]elevance is not, on its own, a high bar." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019). After all, "the discovery standard for relevance is broader than relevance in the Federal Rules of Evidence." *Pecos River Talc LLC v. Emory*, No. 4:24-cv-75, 2025 WL 1921507, at *3 (E.D. Va. July 11, 2025) (citing *Tucker v. Momentive Performance Materials USA, Inc.*, No. 2:13-cv-04480, 2016 WL 8252929, at *3 (S.D. W. Va. Nov. 23, 2016)). Instead, "[d]uring discovery, relevance is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or

may be in the case.'" *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)).

Facts about litigation funding are relevant if they "'logically relate[]' to claims and fact issues remaining in the case," such as "provid[ing] probative circumstantial evidence related to a key dispute." *Bonumose Biochem*, 2018 WL 10068639, at *2. Such evidence includes "discovery that may refute potential trial themes," like "any David vs. Goliath narrative at trial," as well as discovery "bear[ing] on the[] credibility" of "witnesses who may appear [at] a trial." *Cont'l Cirs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1018–19 (D. Ariz. 2020). And when a dispute turns on the mental state of a party, such as "actual malice" in defamation cases, litigation funding is obviously relevant. *See Nunes v. Lizza*, No. 20-cv-4003-CJW, 2021 WL 7186264, at *4, *6 (N.D. Iowa Oct. 26, 2021).

Additionally, this Court has already ruled that the connection between the Article and the underlying cosmetic talc litigation is relevant. In ruling on Defendants' motion to dismiss, this Court considered Pecos River's allegations that "the defendants intended to contribute to a body of literature manufactured to be presented in court." *LLT Mgmt.*, 766 F. Supp. 3d at 588. Ultimately, this Court concluded that Pecos River "plausibly alleges that the defendants' intended and actual audience was the plaintiffs' bar, rather than the scientific community." *Id.* at 595. In so doing, this Court found it relevant that the facts regarding the subjects' exposures "pre-existed the scientific process the article describes—in fact, they were discovered through litigation, not through any scientific method." *Id.* at 601.

Yet as part of their defense, the Emory Authors have maintained that their decision to write their Article had nothing to do with their work as experts in cosmetic talc litigation. Ex. 1, at 133:19–24; Ex. 2, at 130:20–23. At a bare minimum, any funding by the plaintiffs' bar is relevant

to Defendants' credibility. The source of funding raises questions about whether Defendants are motivated to tell the truth or to appease Simon Greenstone to ensure funding for their defense and even indemnification for any damages. Funding is also highly relevant to disprove Defendants' assertions that they prepared their Article for purely altruistic purposes divorced from litigation, which is relevant to the overall context of the case, their motive to recklessly disregard the truth, and also to show that the statements are actionable.

If nothing else, any funding arrangement would be powerful "probative circumstantial evidence" that Defendants did not fear making false, disparaging statements when publishing their Article and thus were more willing to disregard the Article's falsity. *See Bonumose Biochem*, 2018 WL 10068639, at *2.

A judge of the Southern District of New York concluded that the evidence of Simon Greenstone coordination has "clear potential to bear on Pecos River's claims of actual malice." *Moline*, 2025 WL 2898086, at *4. Simon Greenstone's funding of the defense is part of that coordination.

In short: Information regarding litigation funding is highly relevant.

## III.    Additional Discovery is Appropriate and Not Disproportionate.

As this Court explained, "[w]hen evaluating proportionality in this context, the Court looks to 'the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Emory*, 2025 WL 1888565, at *3 (quoting *Tucker*, 2016 WL 8252929, at *3). Furthermore, Defendants bear "the burden of showing that the requested discovery is overly broad or unduly burdensome." *Fleming v. Mountain States Health All.*, No. 1:11-cv-00050, 2012 WL 1909343, at *5 (W.D. Va. May 25, 2012).

Pecos River proposes as a remedy that Defendants be ordered to answer three interrogatories:

1.    Identify all Persons or Entities other than Defendants who (A) are providing Funding for the defense of this Action; (B) have agreed to provide Funding for the defense of this Action or (C) have made any statements or suggestions that they would or might provide Funding for the defense of this Action.

2.    Identify all Persons or Entities other than Defendants who (D) have agreed to provide Funding for any portion or all of Defendants' Damages; or (E) stated or suggested that they would or might provide Funding for any portion or all of Defendants' Damages.

3.    For all Persons or Entities identified in response to Interrogatories 19 and 20, describe in detail the nature of any actual, suggested, or discussed Funding arrangements or statements regarding items (A)-(E), including but not limited to the terms, conditions, and communications relating to any such Funding, and the dates of any such communications.

Ex. 4, Proposed Interrogatories.

Answering these interrogatories will impose minimal burden on Defendants, is certainly less burdensome than further depositions, and hopefully more likely to get to the truth given what occurred at the depositions already taken.

## CONCLUSION

For the foregoing reasons, Pecos River respectfully requests the Court to order Defendants to respond to the Proposed Interrogatories attached as **Exhibit 4.**

Dated: October 28, 2025

Respectfully submitted,

/s/ Benjamin L. Hatch

**MCGUIREWOODS LLP**

Benjamin L. Hatch (VSB No. 70116)
Sylvia Macon Kastens (VSB No. 92375)
World Trade Center
101 West Main Street, Suite 9000
Norfolk, VA 23510-1655
Telephone: (757) 640-3727
Facsimile: (757) 640-3947
bhatch@mcguirewoods.com
skastens@mcguirewoods.com

Samuel L. Tarry, Jr. (VSB No. 36850)
1750 Tysons Boulevard, Suite 1800
Tysons, VA 22102-4215
Telephone: (703) 712 5000
Facsimile: (703) 712 5050
starry@mcguirewoods.com

**KIRKLAND & ELLIS LLP**

Kristen Fournier (VSB No. 48290)
Matthew Bush *(pro hac vice)*
601 Lexington Avenue
New York, NY 10022
T: (212) 446-4800
F: (212) 446-4800
kristen.fournier@kirkland.com
matthew.bush@kirkland.com

Akhil K. Gola *(pro hac vice)*
1301 Pennsylvania Ave NW
Washington, DC 20004
T: (202) 389-3256
F: (202) 736-1910
akhil.gola@kirkland.com

*Attorneys for Plaintiff Pecos River Talc LLC*

18

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on October 28, 2025, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of electronic filing to all counsel of record.

*/s/ Benjamin L. Hatch*
Benjamin L. Hatch