UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

PECOS RIVER TALC LLC,

    Plaintiff,

v.                                                    Action No. 4:24cv75

DR. THERESA SWAIN EMORY, *et al.*,

    Defendants.

### MEMORANDUM OPINION & ORDER

Before the Court is Pecos River Talc, LLC's ("plaintiff"), motion for sanctions "as to Defendant Dr. Kradin for the spoliation of evidence" filed on October 20, 2025. ECF No. 102. The motion seeks sanctions against defendant Dr. Richard Kradin ("Dr. Kradin") for the intentional deletion of electronically stored information ("ESI") while under a duty not to do so. ECF No. 103, at 1–3. Dr. Kradin filed a response in opposition on October 31, 2025, to which plaintiff replied on November 6, 2025. ECF Nos. 110–11. For the reasons discussed below, the motion for sanctions, ECF No. 102, is **GRANTED in part**.

### I.    FACTUAL BACKGROUND

Plaintiff was formed as part of Johnson & Johnson's effort to resolve talc-related claims through bankruptcy. *See* ECF No. 32, ¶¶ 1–3. Dr. Kradin, Dr. Theresa Emory ("Dr. Emory"), and Dr. John Maddox ("Dr. Maddox") serve as plaintiff-side expert witnesses in litigation between individuals with mesothelioma and manufacturers of cosmetic talc. ECF No. 27, at 2 (citing ECF No. 1 ("Compl."), ¶¶ 13–15, 20–28); *see also* ECF No. 31, ¶ 20. In March 2020, defendants published an article titled "Malignant mesothelioma following repeated exposures to cosmetic talc:

A case series of 75 patients" in the *American Journal of Industrial Medicine* (the "article"). Compl. ¶ 3; ECF No. 46-1.

Plaintiff sued defendants on May 9, 2024, alleging injurious trade libel/product disparagement (count one), fraud (count two), and false advertising under the Lanham Act, 15 U.S.C. § 1125(a) (count three). Compl. ¶¶ 149–80. The heart of plaintiff's complaint is that two statements in the article are allegedly false: (1) that the 75 subjects of the article are individuals whose "only known exposure to asbestos was cosmetic talc"; and (2) that the 75 subjects of the article are "additional" to the 33 subjects in another study. *Id.* ¶ 150. Plaintiff maintains that defendants made these statements with actual malice and that, by publishing the article, "defendants intended to contribute to a body of literature manufactured to be presented in court." ECF No. 27, at 3 (citing Compl. ¶ 8).

During his deposition, Dr. Kradin testified that he had two email accounts: a Gmail account and an account he refers to as "Kradin Consulting." ECF No. 104-2 ("Kradin Dep."), at 120:9–18. Dr. Kradin also described his "common practice" of deleting any sent or received emails shortly after sending or receiving them. *Id.* at 120:19–24. As a result, plaintiff claims to have been deprived of information relevant to its claims, particularly relating to whether Dr. Kradin acted with malice in contributing to the allegedly false statements in the article. Pl.'s Mem. in Supp. of Mot. for Sanctions ("Pl.'s Mem."), ECF No. 103, at 1–3. Some of the relevant emails were discovered as they were stored in the accounts of other defendants or known correspondents. *Id.* at 8–9. These discovered emails show that Dr. Kradin corresponded with Dr. Maddox and Dr. Emory and another colleague, Dr. Jacqueline Moline, about the article. ECF Nos. 104-1, 104-7, 104-10, 112-12. However, plaintiff asserts that recovery of any further relevant emails is nearly impossible as deleted information is stored for a short window of time pursuant to Google's data

2

retention policy and plaintiff has been unable to piece together who else might have corresponded with Dr. Kradin to attempt to discover if others might have saved the information. ECF No. 103, at 8–9. Despite meeting to confer on this issue on October 17, 2025, the parties did not reach a resolution. *Id.* at 4.

## II.  LEGAL STANDARDS

As the present dispute revolves around the deletion of emails, a form of ESI,[1] it is governed by Federal Rule of Civil Procedure 37(e). This rule allows for the imposition of sanctions for the spoliation of "[ESI] that should have been preserved in the anticipation or conduct of litigation . . . because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). The Court must first examine "four threshold requirements" to determine if spoliation has occurred: "(1) ESI should have been preserved; (2) ESI was lost; (3) the loss was due to a party's failure to take reasonable steps to preserve the ESI; and (4) the ESI cannot be restored or replaced through additional discovery." *Steves & Sons, Inc. v. Jeld-Wen, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018).

"'It is well established that the duty to preserve evidence is triggered, at the latest, when the defendant is served with the complaint.' However, the duty to preserve 'also extends to that period before the litigation when a party reasonably should . . . anticipate litigation.'" *Jenkins v. Woody*, No. 3:15cv355, 2017 WL 362475, at *14 (E.D. Va. Jan. 21, 2017) (quoting *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 512 (S.D.W. Va. 2014)); *Steves & Sons, Inc.*, 327 F.R.D. at 105. "A party that anticipates litigation . . . is 'under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the

---

[1] "ESI is information stored on 'any type of computer device' and would include items like emails and electronic documents." *Summers v. City of Charlotte*, No. 3:18cv612, 2022 WL 385163, at *3 n.1 (W.D.N.C. Feb. 8, 2022).

3

discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 803 F. Supp. 2d 469, 496 (E.D. Va. 2011) (quoting *Samsung Elecs. Co. v. Rambus, Inc.*, 439 F. Supp. 2d 524, 543 (E.D. Va. 2006)). Often this duty of preservation arises after "the receipt of a demand letter, a request for evidence preservation, a threat of litigation, or a decision to pursue a claim." *Steves & Sons, Inc.*, 327 F.R.D. at 106. However, such actions are not required to create the duty and "the specific occurrences that should notify a party of future litigation are 'highly case specific and fact dependent.'" *Id.* (quoting *In re Ethicon, Inc.*, 299 F.R.D. at 512).

"Information is lost for purposes of Rule 37(e) only if it is irretrievable from another source, including other custodians." *Id.* at 107. "Irreplaceability does not require a party to 'pursue every possible avenue for replacing or restoring the ESI, but it must show that it made some good-faith attempt to explore its alternatives before pursuing spoliation sanctions.'" *GMS Indus. Supply, Inc. v. G&S Supply, LLC*, No, 2:19cv324, 2022 WL 853626, at *5 (E.D. Va. Mar. 22, 2022) (quoting *Steves & Sons, Inc.*, 327 F.R.D. at 107). The third element requires that "a party generally 'must suspend its routine document retention/destruction policy and put in place a "litigation hold" to ensure the preservation of relevant documents.'" *Steves & Sons, Inc.*, 327 F.R.D. at 108 (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003)); *E.I. du Pont de Nemours & Co.*, 803 F. Supp. 2d at 496.

Upon finding that these four threshold elements have been met, the Court turns to the appropriate remedy. Fed. R. Civ. P. 37(e). When a Court finds that a party has lost ESI that should have been preserved but is now irreplaceable due to a party's failure to preserve it, the remedies available depend on whether the spoliating party acted with the "intent to deprive" the other party of the ESI, or alternatively if the moving party has suffered prejudice but there was no intent to

deprive. *Id.* If the Court finds the party acted with the requisite intent, it may: (1) "presume that the lost information was unfavorable to the party;" (2) "instruct the jury that it may or must presume the information was unfavorable to the party;" or (3) "dismiss the action or enter a default judgment." *Id.* "[A] party's conscious dereliction of a known duty to preserve electronic data—whether passive or active—is both necessary and sufficient to find that the party acted with the intent to deprive another party of the information's use under Rule 37(e)(2)." *GMS Indus. Supply, Inc.*, 2022 WL 853626, at *7. The 2015 amendments to Rule 37(e) rejected cases "that authorize[d] the giving of adverse inference instructions on a finding of negligence or gross negligence." Fed. R. Civ. P. 37, Comm. Notes on Rules-2015 Amendment.

In the absence of an intent to deprive, the Court may impose a lesser remedy that is "no greater than necessary to cure the prejudice," if plaintiff proves that the loss of the ESI has caused it to be prejudiced. Fed. R. Civ. P. 37(e)(1). "[P]rejudice results when the movant 'cannot present evidence essential to its underlying claim,' such that its 'ability to present its case . . . is compromised.'" *Steves & Sons*, 327 F.R.D. at 110 (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 532 (D. Md. 2010)). "This analysis 'necessarily includes an evaluation of the ESI's importance in the litigation.'" *Id.* (citing Fed. R. Civ. P. 37, Comm. Notes on Rules-2015 Amendment).

> A district court has broad discretion to choose the appropriate sanction for a party's spoliation, but should use that discretion to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine. Any sanction imposed should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and, (3) restore the prejudiced party to the same position [it] would have been in absent the wrongful destruction of evidence by the opposing party.

*Jenkins*, 2017 WL 362475, at *12 (citations and quotations omitted).

> Although the "burden of proof on a motion for spoliation sanctions is unsettled," courts in the Fourth Circuit typically "apply the clear and convincing evidence

5

standard, especially where a relatively harsh sanction like an adverse inference is sought." The Court therefore will apply the clear and convincing standard here.

*Norfolk S. Ry. Co. v. Railworks Maint. of Way, Inc.*, No. 2:22cv3, 2023 WL 6620341, at *1 (E.D. Va. Sep. 18, 2023) (quoting *Steves & Sons, Inc.*, 327 F.R.D. at 104); *Jenkins*, 2017 WL 362475, at *12.

### III.   ANALYSIS

Plaintiff argues that Dr. Kradin deleted emails wherein the article was discussed, despite the fact that his statements demonstrate that he was aware that the article may be subject to future litigation. Pl.'s Mem. 5–8. Plaintiff asserts that Dr. Kradin's policy of deleting every email immediately after sending or receiving it has resulted in the irrevocable loss of this data and this manual deletion is the "opposite" of taking reasonable steps to preserve ESI. *Id.* at 8–9. Because of Google's Gmail policies, plaintiff concludes that the emails were permanently deleted years ago and can never be replaced. *Id.* at 8. Plaintiff also asserts that it should not be required to reconstruct the lost evidence or to expend great effort to retrieve the evidence from other sources to determine that it is both relevant and lost. Pl.'s Reply in Supp. of Mot. for Sanctions ("Pl.'s Reply"), ECF No. 111, at 12–15. Therefore, plaintiff argues that Dr. Kradin's statements, his practice of deleting emails, and his years of litigation experience are clear evidence of an intent to spoliate evidence, which entitles plaintiff to an adverse inference jury instruction that the emails would have been unfavorable to him. Pl.'s Mem. 10–12. Further, as Dr. Kradin and the other defendants' state of mind is an element of this case, plaintiff contends that it is prejudiced and the Court should "order any other spoliation remedy the Court deems appropriate, including attorney's fees and costs." *Id.* at 12–13. Finally, plaintiff argues that the Court should adopt the preponderance of the evidence standard for the moving party's burden of proof in a spoliation dispute. Pl.'s Reply 2–5.

Dr. Kradin argues that there has been no spoliation because: (1) he was under no duty to preserve the emails when they were sent in 2019 and 2020 as he had no reason to suspect his emails would be relevant to any litigation involving him given that litigation regarding articles like these is rare; and (2) he is not sophisticated in the rules governing preservation of evidence. Kradin's Resp. in Opp'n to Mot. for Sanctions ("Kradin's Mem."), ECF No. 110, at 11–16, 23–27. Nor does Dr. Kradin believe that any information has been lost as plaintiff is only speculating that more emails exist and plaintiff cannot prove that such information is irretrievable because plaintiff never attempted to access it from other sources. *Id.* at 16–23. Further, Dr. Kradin asserts that there is no evidence that he intentionally deleted emails to deprive plaintiff of discovery because he routinely deleted emails. *Id.* at 23–27. Additionally, as plaintiff cannot establish that relevant deleted emails existed and there is no evidence of intent, Dr. Kradin concludes that plaintiff is not entitled to lesser sanctions. *Id.* at 27–30. Finally, Dr. Kradin asserts that the applicable burden of proof is clear and convincing evidence. *Id.* at 1, 10–11.

A.   **Plaintiff was under a duty to preserve emails that were relevant to the article at the time they were deleted.**

Dr. Kradin was under a duty to preserve the emails because he reasonably should have known that his correspondence regarding the article would likely be relevant in future lawsuits. Dr. Kradin's own statements provide the clearest evidence that he reasonably anticipated future litigation wherein his emails might be relevant. At his deposition, Dr. Kradin was asked whether he was "expecting that counsel for talc manufacturers would be asking to see information related to [the] article." Kradin Dep. 123:13–15. Dr. Kradin responded that he "was expecting that that would be occurring in depositions or possibly trials" around the time that he emailed the other defendants on February 9, 2020. *Id.* at 123:16–17. In that email communicating about a version of the article, Dr. Kradin wrote

7

> [a]s we are all actively engaged in litigation, you can be sure that defense counsels will ask to see the data, including reports, depositions, etc. While they may not be successful in their endeavors, be aware that sometimes they have been, so EVERYTHING in this paper must be ABSOLUTELY ACCURATE.

ECF No. 104-10, at 2. A few weeks later, on February 23, 2020, Dr. Kradin provided further feedback on a draft of the article to Dr. Emory and stated that he thought the article was "a major contribution to the field but get ready for the J&J lawyers!" ECF No. 104-1, at 2. Dr. Kradin's emails also show a similar awareness of future litigation as early as November 2019 when he emailed Dr. Maddox: "be clear about those [subjects] that may have had additional exposures [to asbestos] as original data may be subpoenaed down the road!" ECF No. 104-7, at 2.

In addition to these statements, Dr. Kradin's work as an expert witness belies his argument that he did not reasonably anticipate that his emails about the article would be relevant to future litigation. Dr. Kradin has been testifying *weekly* for 40 years and the end goal of this article was not only to contribute to this field of medical research, but also to provide a resource for expert witnesses to rely on in testimony, including himself. Kradin Dep. 28:18–29:4, 119:21–120:6, 134:3–7.

Taken together, the evidence shows that Dr. Kradin anticipated that the article would be relevant to future litigation, at least as a tool for himself to rely on in his expert capacity. Most notably, Dr. Kradin stated to the other defendants that he wanted to ensure that the article was as accurate as possible because he was aware that its veracity may come into question in litigation. ECF No. 104-10, at 2. Dr. Kradin also was aware of what information regarding the article would be relevant to such litigation like "data, including reports, depositions, etc." *Id.* It is reasonable to expect that, if the veracity of the article were to come into question, requests for production of emails would follow. Therefore, plaintiff has met its burden of proving by clear and convincing

evidence that Dr. Kradin was under a duty to preserve the missing emails around the time he deleted them.

**B.      The deleted emails have been lost.**

After Dr. Kradin deleted the emails, only two sets of sources remain to recover them: (1) Dr. Kradin's email correspondents or (2) Google. As for Dr. Kradin's correspondents, it is possible that the missing emails are stored in the email accounts of others, as demonstrated by discovery of some of the deleted emails. *See* ECF Nos. 104-1, 104-7, 104-10. Not only has plaintiff retrieved some of the emails from the other defendants, plaintiff has also sought to recover more emails through serving process on Dr. Siobhan Cashman,[2] Dr. Moline, and Dr. Moline's employer. Pl.'s Reply 10–15. Plaintiff has also attempted to discover to what extent Dr. Kradin communicated with others through his deposition testimony, but his memory on the subject was admittedly incomplete. *See, e.g.,* Kradin Dep. 110:2–111:16. Plaintiff reasonably tried to recover this information from obvious correspondents and by questioning Dr. Kradin. Absent more information, the Court would be imposing an unnecessary burden on plaintiff to attempt to subpoena every possible person that Dr. Kradin potentially emailed with about the article during the relevant period. The emails that may remain in unknown accounts are effectively lost.

Nor was plaintiff required to take further steps to recover information from Google. Plaintiff has pointed the Court to evidence regarding Google's retention of data policy both when the emails were created and deleted and as it currently stands. *See* ECF Nos. 112-11, 112-12. Google generally deletes data within a few months after the user places the information in the trash. *See* ECF No. 104-11. Further research has confirmed that the likelihood of recovering

---

[2] Dr. Cashman is plaintiff's spouse and research assistant who assisted plaintiff in compiling data to send to his codefendants. Kradin Dep. 27:4–28:2, 178:25–179:1.

information that is more than a year or so old is almost zero.[3] Given how unlikely it is that Google has retained these emails, the emails are lost.

### C. Dr. Kradin failed to take reasonable steps to prevent the deletion of the emails while under the duty to preserve them.

Though Dr. Kradin should have reasonably anticipated litigation, he continued his routine, *manual* deletion policy of all emails. Kradin Dep. 120:19–24. Rather than suspend this policy for emails relevant to the article, he continued to delete each one individually and by doing so failed to take reasonable steps to preserve the information.

### D. The missing emails cannot be restored or replaced through additional discovery.

As has already been discussed, plaintiff engaged in several good faith attempts to locate the information elsewhere. *See supra* Part III.B. Plaintiff researched Google's data retention policy, obtained some of the emails from other accounts, deposed all the defendants, deposed other relevant persons, and has engaged in other legal process. Pl.'s Mem. 8–9; Pl.'s Reply 12–15. These efforts were made in an attempt to recover the information or piece together enough of a record to make requests to the appropriate sources. Nothing more was required.

### E. Plaintiff has not demonstrated by clear and convincing evidence that Dr. Kradin acted with an intent to deprive plaintiff of the lost emails.

Plaintiff has not demonstrated by clear and convincing evidence that Dr. Kradin intentionally deleted the emails for the purpose of depriving plaintiff of their use in litigation. Plaintiff points the Court to the following evidence regarding intent: (1) Dr. Kradin "affirmatively deleted" all of his emails immediately upon sending or receiving them, Kradin Dep. 120:19–24;

---

[3] California Learning Resource Network, *How Long Does Gmail Keep Deleted Emails*, https://www.clrn.org/how-long-does-gmail-keep-deleted-emails/ (last visited Feb. 13, 2026) (noting that within 30 days of a user deleting an email, Google will begin the process of permanently deleting data and the success rate for recovering data after a few years is "negligible").

(2) Dr. Kradin has even deleted personal emails against the advice of his assistant, *id.* at 121:22–122:8; (3) Dr. Kradin's rationale for this habit is to save space in his account and remove long email threads, *id.* at 120:25–121:7; (4) his Gmail account can hold a vast amount of data before reaching capacity, Pl.'s Mem. 11–12; and (5) Dr. Kradin is an experienced plaintiff's expert witness, Kradin Dep. at 28:15–29:8.

      The fact that Dr. Kradin deletes *all* of his emails weighs against intent to deprive in this case. The evidence tends to show that Dr. Kradin habitually deleted emails that were important to his personal life, despite his account's apparent capacity to hold a large amount of emails. Given that deletion has always been Dr. Kradin's practice, Kradin Dep. 120:19–121:10, the Court declines to find that he intentionally deleted the emails for the purpose of depriving plaintiff of them. One man's habit, although perhaps inadvisable, is not evidence that rises beyond the level of gross negligence as is required under Rule 37(e).

      Further, Dr. Kradin's statements in the emails referenced above are proof that he should have been aware of his duty to preserve the emails, but they are not probative of an intent to deprive plaintiff of any information. Dr. Kradin's admonitions to the others to be careful and accurate and about the likelihood of legal scrutiny cannot be easily squared with an intent to deprive. ECF No. 104-7, at 2; ECF N0. 104-10, at 2. Nor did Dr. Kradin instruct others to delete his or their own emails to deprive plaintiff of that evidence. All of the allegedly spoliated emails were deleted years before this suit was filed on May 9, 2024. Kradin Dep. 120:19–122:23 (noting Dr. Kradin deletes all emails as soon as they are sent or received); Compl. Though Dr. Kradin should have been aware that the emails would be relevant to some future litigation, the evidence tends to show that this particular litigation was unexpected. Kradin Dep. 123:13–124:3. Although Dr. Kradin's

11

actions give the Court pause for concern, plaintiff has not established by clear and convincing evidence that he intended to deprive plaintiff from using such information in this case.

F.  **Plaintiff has proven by clear and convincing evidence that it is prejudiced by the loss of the emails.**

The central issue of this case is whether the defendants made maliciously false statements of fact in the article, Compl. ¶ 150, and the defendants' email correspondence regarding such statements is certainly important to this issue. Dr. Kradin's emails are significant in this case as they provide a window into his state of mind at the time the article was written. Plaintiff agrees that Dr. Kradin's email correspondence with Dr. Emory, Dr. Maddox, and Dr. Cashman has been recovered through other discovery. Pl.'s Mem, at 6. Recovery of this information reduces but does not eliminate the prejudice to plaintiff.

Plaintiff remains prejudiced because what remains missing from discovery are Dr. Kradin's emails with other individuals, including Dr. Moline.[4] *Id.* at 12–13. Dr. Kradin explained that his goal in writing this article was not only to serve as another resource for the medical and scientific community, but also to serve as a reference during his work as an expert witness. Kradin Dep. 119:21–120:6, 134:3–17, 251:22–25. Dr. Kradin also played a specific role in writing the article. Both he and Dr. Maddox served as the brain trust of the article, and they furnished ideas and information to Dr. Emory, who did the bulk of the leg-work. *Id.* at 23:10–12, 56:7–21, 115:18–116:1. To fulfill this role, Dr. Kradin reached out to at least one law firm, SGP, for more information about cases where he had served as an expert and also received information about

---

[4] In its reply to Dr. Kradin's memorandum in opposition to the motion, plaintiff represents to the Court that though it has served a subpoena on both Dr. Moline and her employer and engaged in process to enforce such subpoenas, "to date [plaintiff] has nothing to show for all that work." Pl.'s Reply 12–13. However, it appears that at least one email between Dr. Kradin and Dr. Moline was recovered from October 22, 2019, as it was marked as an exhibit in Dr. Kradin's deposition. Kradin Dep. 106:14–111:24.

cases in which he was not an expert witness. *Id.* at 52:13–20; ECF No. 94, ¶ 122. Dr. Kradin also received news from law firms regarding the publication of other articles around the same time. Kradin Dep. 88:10–89:5, 106:22–107:20. Accordingly, Dr. Kradin was substantially involved in the process of writing an article intended for public consumption in which he communicated with others through email.

Despite this process, Dr. Kradin has a limited memory about who else he discussed the article with. *See* 48:10–51:7. This, in turn, limits plaintiff's ability to pursue leads to attempt to recover emails from others. For example, plaintiff is unable to determine whether Dr. Kradin sought information or input from others, if he made any further remarks regarding the article and any underlying data and research, or what other steps, if any, he independently took to facilitate publication.

Plaintiff is under no burden to prove the contents of the missing emails to demonstrate that there is prejudice. Fed. R. Civ. P. 37, Comm. Notes on Rules-2015 Amendment. "Determining the content of lost information may be a difficult task in some cases" and this appears to be one of those cases. *Id.*

Accordingly, the Court finds that plaintiff has been prejudiced and it remains to determine the appropriate sanction. Generally, the severity of the sanction should be proportionate to the importance of the lost information. *Id.* Here, plaintiff is prejudiced by the loss of Dr. Kradin's email communications with persons who were not his codefendants (or his assistant). This prejudice is, however, somewhat tempered by the recovery of Dr. Kradin's emails sent to and from his codefendants (and his assistant). Plaintiff has requested that the Court "instruct the jury that Dr. Kradin had a legal obligation to preserve his emails at the time that he destroyed them." Pl.'s Mem. 13. This request is narrowly tailored to remedy the loss and would serve to remediate the

13

prejudice caused by the fact that plaintiff cannot utilize the missing emails in support of its claims at trial. Thus, the Court adopts plaintiff's suggested remedy and the jury will be so instructed.

## IV.   CONCLUSION

For the reasons discussed above the Court finds that Dr. Kradin spoliated evidence when he deleted his emails relating to the article at issue in this case. Therefore, plaintiff's motion for sanctions, ECF No. 102, is **GRANTED in part**. The jury will be instructed that Dr. Kradin had a legal obligation to preserve his emails at the time he destroyed them. Plaintiff's request for an adverse inference and for attorney's fees incurred in filing this motion are **DENIED**.

The Clerk is **DIRECTED** to send a copy of this memorandum opinion and order to all counsel of record.

**IT IS SO ORDERED.**

/s/
Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
March 10, 2026