UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

PECOS RIVER TALC LLC,

        Plaintiff,

v.                                                  Action No. 4:24cv75

DR. THERESA SWAIN EMORY, *et al.*,

        Defendants.

**MEMORANDUM OPINION & ORDER**

Before the Court is Pecos River Talc, LLC's ("plaintiff"), motion to compel disclosure of information related to third-party litigation funding filed on October 28, 2025. ECF No. 105. The motion seeks to compel the defendants, Dr. Theresa Emory ("Dr. Emory"), Dr. John Maddox ("Dr. Maddox"), and Dr. Richard Kradin ("Dr. Kradin") (collectively "defendants") to answer three new interrogatories after the close of fact discovery. ECF No. 106, at 22. Defendants filed a response in opposition on November 12, 2025, to which plaintiff replied on November 18, 2025. ECF Nos. 122, 125. For the reasons discussed below, the motion to compel, ECF No. 105, is **DENIED**.

I.      **FACTUAL BACKGROUND**

Plaintiff was formed as part of Johnson & Johnson's effort to resolve talc-related claims through bankruptcy. *See* ECF No. 32, ¶¶ 1–3. Dr. Emory, Dr. Maddox, and Dr. Kradin serve as plaintiff-side expert witnesses in litigation between individuals with mesothelioma and manufacturers of cosmetic talc. ECF No. 27, at 2 (citing ECF No 1. ("Compl."), ¶¶ 13–15, 20–28); *see also* ECF No. 31, ¶ 20. In March 2020, defendants published an article titled "Malignant mesothelioma following repeated exposures to cosmetic talc: A case series of 75 patients" in the *American Journal of Industrial Medicine* (the "article"). Compl. ¶ 3; ECF No. 46-1.

Plaintiff sued defendants on May 9, 2024, alleging injurious trade libel/product disparagement (count one), fraud (count two), and false advertising under the Lanham Act, 15 U.S.C. § 1125(a) (count three). Compl. ¶¶ 149–80. The heart of plaintiff's complaint is that two statements in the article are allegedly false: (1) that the 75 subjects of the article are individuals whose "only known exposure to asbestos was cosmetic talc"; and (2) that the 75 subjects of the article are "additional" to the 33 subjects in another study. *Id.* ¶¶ 6, 150. Plaintiff maintains that defendants made these statements with actual malice and that, by publishing the article, "defendants intended to contribute to a body of literature manufactured to be presented in court." ECF No. 27, at 3 (citing Compl. ¶ 8).

Though only mentioned once in the complaint, plaintiff theorizes that the article was written at the direction or with the assistance of Simon Greenstone Panatier ("SGP"), a law firm that is frequently on the plaintiff-side of mesothelioma cases, for use in litigation. Compl. ¶ 26; Pl.'s Mem. in Supp. of Mot. to Compel ("Pl.'s Mem"), ECF No. 106, at 1–2. During the depositions of all three defendants, plaintiff attempted to discover whether SGP or anyone else was financially supporting the defense of this case. ECF No. 107-1, 11:15–12:1 ("Kradin Dep."); ECF No. 107-2, 18:3–20:9 ("Emory Dep."); ECF No. 107-3, 15:25–23:1 ("Maddox Dep."). Plaintiff inquired whether defendants were aware of anyone else funding their defense, planning to fund their defense, or planning to pay any award plaintiff may win. *Id.* Defendants all testified in the negative, though Dr. Maddox and Dr. Emory hinted that they were aware of unnamed donors to the defense. *Id.*; Maddox Dep. 18:19–23:1; Emory Dep. 18:3–12. Both Dr. Kradin and Dr. Maddox were also advised not to "reveal the contents of any . . . privileged communications," which prompted them to not respond on some occasions. *See* Maddox Dep. 15:25–23:1; Kradin Dep. 11:15–12:1; Emory Dep. 18:3–20:9.

2

After the depositions of Dr. Kradin and Dr. Maddox on September 17 and 19, 2025, respectively, plaintiff's counsel reached out to defense counsel on September 26, 2025, to express a concern that defense counsel had improperly instructed defendants not to answer questions and asserting that litigation funding is not subject to the attorney-client privilege. ECF No. 122-4, at 7–8. Defense counsel did not substantively respond until October 2, 2025, and explained that she thought the witnesses were appropriately instructed and offered to consider any new objections and "sort out any lingering disputes" at Dr. Emory's deposition. *Id.* at 6. Dr. Emory's Deposition was scheduled for the day fact discovery closed, on October 3, 2025. Defs.' Resp. in Opp'n ("Defs.' Mem."), ECF No. 122, at 12.

On October 10, 2025, plaintiff's counsel relayed to defense counsel that the issue had not been resolved by Dr. Emory's deposition and proposed that defendants respond to three interrogatories as a remedy. ECF No. 122-4, at 5–6. Plaintiff's counsel also circulated a draft motion to compel on October 14, 2025. ECF No. 126-5, at 2. Counsel for both parties continued to trade emails back and forth regarding the issue and met to confer on October 17, 2025. Pl.'s Mem. 10. Despite defense counsel offering to answer a different set of interrogatories, plaintiff's counsel remained unsatisfied and ultimately filed the current motion on October 28, 2025—25 days after the close of fact discovery. ECF No. 122-4, at 3–4. The motion seeks to compel defendants to answer the following interrogatories:

> 1. Identify all Persons or Entities other than Defendants who (A) are providing Funding for the defense of this Action; (B) have agreed to provide Funding for the defense of this Action or (C) have made any statements or suggestions that they would or might provide Funding for the defense of this Action.
>
> 2. Identify all Persons or Entities other than Defendants who (D) have agreed to provide Funding for any portion or all of Defendants' Damages; or (E) stated or suggested that they would or might provide Funding for any portion or all of Defendants' Damages.

3. For all Persons or Entities identified in response to Interrogatories 19 and 20, describe in detail the nature of any actual, suggested, or discussed Funding arrangements or statements regarding items (A)-(E), including but not limited to the terms, conditions, and communications relating to any such Funding, and the dates of any such communications.

Pl.'s Mem. 17.

## II.    LEGAL STANDARDS

A party may move the Court to compel a party to answer interrogatories or produce documents if the nonmoving party objects to or does not respond to propounded discovery. Fed. R. Civ. P. 37(a)(3)(B). Once a party moves to compel, "the burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted." *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 241 (E.D. Va. 2012).

Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Although Rule 26 does not define "relevant," relevance in the discovery context has been "'broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party.'" *EEOC v. Sheffield Fin., LLC*, No. 1:06cv889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005)); *see Tucker v. Momentive Performance Materials USA, Inc.*, No. 2:13cv4480, 2016 WL 8252929, at *3 (S.D.W. Va. Nov. 23, 2016) (noting that the discovery standard for relevance is broader than relevance in the Federal Rules of Evidence). The Court has wide discretion in determining relevance for discovery purposes. *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992).

### III. ANALYSIS

*Plaintiff's motion to compel is untimely.*

Under Local Civil Rule 37(A), "[a]fter a discovery request is objected to, or not complied with, *within time*, and if not otherwise resolved, it is the responsibility of the party initiating discovery to place the matter before the Court by a proper motion." E.D. Va. Loc. Civ. R. 37(A) (emphasis added). "Courts in this District and Circuit deny 'belated motions to compel filed close to, or after, the close of discovery.'" *Miller v. McWilliams*, 1:20cv671, 2021 WL 11723055, at *1 (E.D. Va. May 6, 2021) (collecting cases). However, "[t]he district court has discretion to consider an untimely motion to compel if the movant 'offers an acceptable explanation for the motion's tardiness.'" *U.S. ex rel Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002).

The Court has already extended fact discovery by three months in this case. ECF No. 60. Despite this extension, plaintiff did not file its motion to compel until October 28, 2025—25 days after the close of fact discovery. ECF Nos. 60, 105. The motion is untimely, and it remains for the Court to consider whether plaintiff has provided an acceptable explanation for the delay.

Defendants argue that plaintiff was aware well in advance of the close of discovery of the dispute arising out of defendants' deposition answers but failed to raise the issue until after the close of discovery. Defs.' Mem. 15–18. Plaintiff argues that though this motion was not made within the time allotted for discovery, it should nonetheless be granted because plaintiff received certain assurances from defense counsel that the dispute regarding the litigation funding information would be resolved on the last day of discovery at Dr. Emory's deposition. Pl.'s Reply in Supp. of Mot. to Compel ("Pl.'s Reply"), ECF No. 125, at 3–10.

The parties' communications attempting to resolve this dispute highlight the key fact pointing to the motion's untimely nature—that though plaintiff was aware of the dispute as early as September 17, 2025, it failed to file the motion until 25 days after discovery closed. During the week of September 14, 2025, Dr. Kradin and Dr. Maddox were deposed by plaintiff and asked about who was or may possibly be funding their defense. Kradin Dep. 11:15–12:1; Maddox Dep. 15:25–23:1. Both defendants were instructed not to reveal privileged information and either did not respond to the questions or stated they did not know. *Id.* Dissatisfied with these answers, counsel for plaintiff raised the issue via email on September 26, 2025, requesting answers to three questions, which are essentially the same as the three proposed interrogatories. ECF No. 122-4, at 7–8. Defense counsel responded on October 2, 2025, asserting that Dr. Kradin and Dr. Maddox appropriately answered the questions and giving what plaintiff characterizes as essentially an "assurance" that the dispute would be resolved the next day. ECF No. 122-4, at 6 ("With respect to Dr. Emory's upcoming deposition, we will consider whether any privilege objections are appropriate . . . and I would hope that we could sort out any lingering disputes at that time."); Pl.'s Reply 4.

Plaintiff's counsel did not raise the issue again until October 10, 2025—seven days later—in an email asserting that none of the three defendants appropriately answered the questions regarding litigation funding and requesting that defendants answer three interrogatories.[1] ECF No. 125, at 7–8; ECF No. 122-4, at 5–6. Three more days passed before plaintiff's counsel circulated a draft motion to compel on October 13, 2025, asserting that if defendants would not respond to the interrogatories, plaintiff planned to file the motion. ECF No. 126-5. Defense counsel replied

---

[1] These interrogatories were: "(1) who is paying, agreed to pay, or suggested they might pay for the defense of the case; (2) who has agreed to pay or suggested they might pay damages; and (3) to detail those arrangements and statements." ECF No. 122-4, at 6.

6

on October 14, 2025, and explained defendants' position that the proposed remedy was "both unwarranted and overly broad" and offered to discuss plaintiff's possible motion to compel with defendants if given more information. ECF No. 122-4, at 4–5.

The parties met to confer on the issue on October 17, 2025, and were unsuccessful in resolving it. ECF No. 125, at 9. On October 22, 2025—19 days after discovery closed—defense counsel emailed following up on a proposal from the October 17 meeting and suggesting three new versions of the interrogatories as a compromise. ECF No. 122-4, at 3–4. Plaintiff's counsel responded six days later on October 28, 2025, stating only that plaintiff did not agree to the proposed interrogatories and it intended to file the motion to compel that day. *Id.* at 3.

These communications demonstrate that plaintiff was aware as early as September 17, 2025, at Dr. Kradin's deposition, that defendants may not have been as forthcoming as plaintiff wished in their responses to litigation funding questions. Pl.'s Reply 6. This same issue arose again on September 19, 2025, at Dr. Maddox's deposition. *Id.* Despite this, plaintiff waited until it received the transcripts of these depositions to approach defense counsel about the issue on September 26, 2025. *Id.* at 6–7. The parties met for Dr. Emory's October 3, 2025, deposition, and despite the issue still not being resolved, plaintiff waited to raise an objection again until October 10, 2025, after it received the transcript. *Id.* at 7–8. Thereafter, the parties extended discussion on the matter for another 18 days, until the pending motion was filed on October 28, 2025. *Id.* at 8–9.

Although the Court appreciates counsels' efforts to resolve the dispute before filing a motion, these efforts do not excuse the fact that the motion was not filed until 25 days after the close of discovery. Plaintiff's counsel, who was present for each of the depositions, was also in a position to contemporaneously assess whether defendants' answers were satisfactory. *Id.* at 6–7.

7

Rather than raising the issue with defense counsel as soon as possible and contrary to plaintiff's assertion that it acted "immediately," plaintiff's counsel waited until he had received the transcripts for each deposition. *Id.* Notably, plaintiff's counsel did not circulate a draft of the motion to compel, or mention that one might be filed, until 10 days after discovery closed. ECF No. 126-5, at 2. Plaintiff claims to have relied on defense counsel's "assurances," but those assurances in the October 2 email only promised to work with plaintiff's counsel to resolve the issue, not to answer the questions as plaintiff's counsel wished. *Id.* at 6. Despite claiming that defendants are prone to delay tactics, Pl.'s Reply 4–5, plaintiff did not act expeditiously to ensure its motion was considered by the Court as soon as possible.

Even if plaintiff's counsel waited to engage in further discussions regarding the matter based on defense counsel's assurances that the issue could be resolved at Dr. Emory's deposition, this does not excuse plaintiff's failure to let defense counsel know that the issue had not been resolved until seven days after the deposition. Considering that the Court already extended phase I discovery in this case by three months and plaintiff has not shown good cause for its delay, no basis exists to excuse the untimely nature of the motion.[2]

---

[2] Further, even if plaintiff's motion had been filed timely, the Court would deny the motion to compel. It would do so because the requested discovery about defendants' litigation or damages funding is tangential, at best, and of little to no relevance to the merits of the pending claim. *See In re Valsartan N-Nitrosodimethylamine Contamination Prod. Liab. Litig.*, 405 F. Supp. 3d 612, 616 (D.N.J. 2019) (describing "litigation funding [as] a 'side issue' that has nothing to do with addressing the key issues in the case"); *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 312 (D. Nev. 2019), *aff'd*, No. 2:17cv2349, 2020 WL 1042515 (D. Nev. Mar. 3, 2020) (noting that "[c]ourts will compel discovery into funding sources only upon the presentation of 'some objective evidence' that the discovering party's 'theories of relevance are more than just theories'").

This conclusion is buttressed by the fact that plaintiff served no written discovery upon defendants directed to the matters about which it now seeks to reopen discovery. Further, the record reflects that plaintiff had a sufficient opportunity to inquire about the disputed topic during defendants' depositions. Defendants answered all of the relatively few questions asked about this subject, with perhaps two exceptions. Maddox Dep. 15:25–17:3. Plaintiff's dissatisfaction, after the fact, with

## IV. CONCLUSION

For the reasons discussed above, plaintiff's motion, ECF No. 105, is **DENIED** as untimely. The Clerk is **DIRECTED** to send a copy of this memorandum opinion and order to all counsel of record.

**IT IS SO ORDERED.**

                                        /s/
                                  Robert J. Krask
                          United States Magistrate Judge

Norfolk, Virginia
March 10, 2026

---

some or all of the answers provided does not excuse the decision not to more vigorously pursue this topic during the depositions. Nor does it warrant reopening written discovery outside the schedule previously set by the Court. *See* Def.'s Mem. 25–26 (describing the remedy sought by plaintiff as "untethered to its deposition questions and overbroad").

Moreover, given plaintiff's familiarity with defendants and their public and active roles in asbestos litigation over many years, this is not a case where the sought after discovery is needed to provide grist for attacks upon any alleged bias or credibility issues. Giving due regard to that history, as well as the limited scope of the inquiry and the answers provided at the depositions, no further discovery on this subject is warranted.