**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION**

PECOS RIVER TALC LLC,

        Plaintiff,

        -v-

DR. THERESA SWAIN EMORY, DR.
RICHARD LAWRENCE KRADIN, AND
DR. JOHN COULTER MADDOX,

        Defendants.

Civil Action No. 4:24-cv-75

**PECOS RIVER TALC LLC'S RESPONSE IN OPPOSITION TO
DR. KRADIN'S OBJECTIONS TO MEMORANDUM ORDER AND OPINION
REGARDING ITS MOTION FOR SANCTIONS**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 3

    I.     The Falsehoods in Defendants' Article.................................................................. 3

    II.    Dr. Kradin's Intentional Deletion of Relevant Emails............................................. 4

    III.   Magistrate Judge Krask's Factual Findings and Spoliation Order ........................ 7

ARGUMENT ..................................................................................................................... 8

    I.     Magistrate Judge Krask Did Not Clearly Err in Finding That Dr. Kradin Had A Duty To Preserve His Emails About the Article. ....................................... 9

         A.    Magistrate Judge Krask's Factual Findings Are Well Supported............. 11

         B.    Dr. Kradin's Arguments Fail. ................................................................... 13

    II.    Magistrate Judge Krask Also Did Not Clearly Err in Finding that Dr. Kradin's Spoliation Prejudiced Pecos River.................................................. 18

         A.    Magistrate Judge Krask's Factual Findings Again Are Well Supported. ................................................................................................ 19

         B.    Dr. Kradin's Arguments Again Fail............................................................ 19

    III.   Regardless, Dr. Kradin Intentionally Deprived Pecos River of Evidence............ 25

         A.    The Correct Standard is Preponderance of the Evidence......................... 26

         B.    Dr. Kradin Deliberately Deprived Pecos River of Relevant Evidence.................................................................................................. 27

CONCLUSION................................................................................................................. 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Application of Republic of Ecuador*,
  280 F.R.D. 506 (N.D. Cal. 2012)...................................................................................18

*Barnes v. Harling*,
  368 F. Supp. 3d 573, 607 (W.D.N.Y. 2019) .................................................................15

*Bhattacharya v. Murray*,
  2022 WL 875032 (W.D. Va. Mar. 23, 2022)..................................................................15

*Buddenberg v. Est. of Weisdack*,
  711 F. Supp. 3d 712 (N.D. Ohio 2024)..........................................................................19

*Coleman Co., Inc. v. Team Worldwide Corp.*,
  2021 WL 5045067 (E.D. Va. Oct. 18, 2021)..................................................................17

*Colindres v. Quietflex Mfg.*,
  228 F.R.D. 567 (S.D. Tex. 2005)....................................................................................18

*Connor v. Sun Tr. Bank*,
  546 F. Supp. 2d 1360 (N.D. Ga. 2008) ..........................................................................19

*Deitchman v. E.R. Squibb & Sons, Inc.*,
  740 F.2d 556 (7th Cir. 1984) ..........................................................................................16

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019).........................................................................................................30

*Dillon v. Nissan Motor Co.*,
  986 F.2d 263 (8th Cir. 1993) ..........................................................................................10

*Donald v. Novant Health, Inc.*,
  2025 WL 863621 (E.D.N.C. Mar. 18, 2025) ..................................................................15

*Donofrio v. Ikea US Retail, LLC*,
  2024 WL 1998094 (E.D. Pa. May 6, 2024) ....................................................................21

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
  803 F. Supp. 2d 469 (E.D. Va. 2011) .........................................................................12, 21

*Fast v. GoDaddy.com LLC*,
  340 F.R.D. 326 (D. Ariz. 2022) ......................................................................................20

*First Fin. Sec., Inc. v. Lee*,
   2016 WL 881003 (D. Minn. Mar. 8, 2016) ...............................................................25

*FTC v. F&G Int'l Grp. Holdings, LLC*,
   339 F.R.D. 325 (S.D. Ga. 2021) ........................................................................20, 28

*Gammons v. Adroit Med. Sys., Inc.*,
   2022 WL 17640125 (E.D. Tenn. Dec. 13, 2022)......................................................15

*Globus Med., Inc. v. Jamison*,
   2023 WL 2127410 (E.D. Va. Feb. 10, 2023)............................................................26

*Glynn v. EDO Corp.*,
   2010 WL 3294347 (D. Md. Aug. 20, 2010) .............................................................26

*Grogan v. Garner*,
   498 U.S. 279 (1991)..................................................................................................26

*Harrison v. Shanahan*,
   2019 WL 2216474 (E.D. Va. May 22, 2019) ..............................................................9

*Haysbert v. Bloomin' Brands, Inc.*,
   2021 WL 5003284 (E.D. Va. July 9, 2021) ..............................................................26

*Herman & MacLean v. Huddleston*,
   459 U.S. 375 (1983)..................................................................................................27

*Hoffer v. Tellone*,
   128 F.4th 433 (2d Cir. 2025) ....................................................................................26

*Jenkins v. Woody*,
   2017 WL 362475 (E.D. Va. Jan. 21, 2017) ..............................................................26

*Johns v. Gwinn*,
   503 F. Supp. 3d 452, 462 (W.D. Va. 2020) ..............................................................10

*Johnson & Johnson v. Northwell Health Inc.*,
   231 A.D.3d 481 (1st Dep't 2024) ..............................................................................16

*Johnston v. Colvin*,
   2015 WL 893064 (D.S.C. Mar. 3, 2015) ..................................................................23

*Kaiser v. Imperial Oil of N. Dakota, Inc.*,
   2025 WL 305462 (D. Mont. Jan. 27, 2025)..............................................................17

*Kellington v. Bayer Healthcare Pharms., Inc.*,
   2016 WL 5349801 (W.D. Va. Sept. 23, 2016) .........................................................16

iv

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
    341 F.R.D. 474 (S.D.N.Y. 2022) ...................................................................21, 28

*Kronisch v. United States*,
    150 F.3d 112 (2d Cir. 1998)..........................................................................3, 11, 20

*Lamb v. Liberty Univ.*,
    2022 WL 3692670 (W.D. Va. Aug. 25, 2022) .........................................................29

*Lee v. County of L.A.*,
    2025 WL 2505484 (C.D. Cal. Aug. 29, 2025)....................................................2, 20

*LLT Mgmt. LLC v. Emory*,
    766 F. Supp. 3d 576 (E.D. Va. 2025) ..................................................................1, 4

*Mitku v. Ultradent Prods., Inc.*,
    2022 WL 137720 (D. Utah Jan. 14, 2022)...............................................................18

*Modern Remodeling, Inc. v. Tripod Holdings, LLC*,
    2021 WL 3852323 (D. Md. Aug. 30, 2021) .............................................................28

*Moline v. Pecos River Talc LLC*,
    2025 WL 2898086 (S.D.N.Y. Oct. 10, 2025) ...........................................................7

*Navient Sols. LLC v. L. Offs. of Jeffrey Lohman*,
    2020 WL 1917837 (E.D. Va. Apr. 20, 2020) ..........................................................25

*Owens v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*,
    695 F. Supp. 3d 750 (M.D. La. 2023).............................................................3, 22, 24

*Paisley Park Enters. v. Boxill*,
    330 F.R.D. 226 (D. Minn. 2019)............................................................... *passim*

*Pierce v. N. Carolina State Bd. of Elections*,
    97 F.4th 194 (4th Cir. 2024) ...................................................................................14

*In re Plaza Shoe Co.*,
    15 F.2d 278 (2d Cir. 1926)......................................................................................26

*Rambus, Inc. v. Infineon Techs., AG*,
    220 F.R.D. 264 (E.D. Va. 2004) ..............................................................................12

*Rimkus Consulting Grp., Inc. v. Cammarata*,
    688 F. Supp. 2d 598 (S.D. Tex. 2010) .......................................................20, 21, 25

*Robinson v. Food Lion, LLC*,
    2010 WL 11700599 (E.D. Va. Apr. 13, 2010) .........................................................17

*Rodo Inc. v. Guimaraes*,
   2023 WL 8520426 (S.D.N.Y. Dec. 8, 2023) ...................................................................10

*Roman v. City of Chicago*,
   2023 WL 121765 (N.D. Ill. Jan. 6, 2023) ....................................................................17

*Schnatter v. 247 Grp., LLC*,
   2022 WL 2402658 (W.D. Ky. Mar. 14, 2022) ......................................................3, 21, 22, 24

*Schwarz & Schwarz of Va., LLC v. Certain Underwriters at Lloyd's London Who*
   *Subscribed to Pol'y No. NC959*,
   2009 WL 1043929 (W.D. Va. Apr. 17, 2009) ...............................................................17

*Silvestri v. General Motors Corp.*,
   271 F.3d 583 (4th Cir. 2001) ............................................................................10, 11, 15, 22

*Sines v. Darling Ingredients, Inc.*,
   2022 WL 1554824 (D.N.M. May 17, 2022) ..................................................................17

*Sines v. Kessler*,
   2021 WL 4943742 (W.D. Va. Oct. 22, 2021).................................................................23

*Sines v. Kessler*,
   2021 WL 5492826 (W.D. Va. Nov. 19, 2021) ..............................................................9, 11

*Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*,
   75 F.4th 1290 (11th Cir. 2023) ..................................................................................11

*Snell v. Reid*,
   2024 WL 2815061 (4th Cir. June 3, 2024) ...................................................................14

*Spencer v. Greenwald*,
   2022 WL 2180052 (D. Idaho June 15, 2022) ...............................................................17

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
   327 F.R.D. 96 (E.D. Va. 2018) ..........................................................................22, 25, 26

*StoneX Grp., Inc. v. Shipman*,
   2024 WL 1509346 (S.D.N.Y. Feb. 5, 2024).................................................................27

*Summers v. City of Charlotte*,
   2022 WL 385163 (W.D.N.C. Feb. 8, 2022) .................................................................9, 23

*Synthes Spine Co., L.P. v. Walden*,
   232 F.R.D. 460 (E.D. Pa. 2005)...............................................................................18

*Title Cap. Mgmt., LLC v. Progress Residential, LLC*,
   2017 WL 5953428 (S.D. Fla. Sept. 29, 2017) ..............................................................1, 12

vi

*Trigon Ins. Co. v. United States*,
   204 F.R.D. 277 (E.D. Va. 2001) ........................................................................................20

*Vitality Sys., Inc. v. Sogeval Labs, Inc.*,
   2010 WL 11507249 (M.D. Fla. May 13, 2010).............................................................20, 22

*Vodusek v. Bayliner Marine Corp.*,
   71 F.3d 148 (4th Cir. 1995) .............................................................................................10

*Webb v. Daymark Recovery Servs., Inc.*,
   2022 WL 17832160 (M.D.N.C. July 26, 2022) .................................................................14

*Wolpin v. Philip Morris Inc.*,
   189 F.R.D. 418 (C.D. Cal. 1999) .....................................................................................16

*Wright v. Jeep Corp.*,
   547 F. Supp. 871 (E.D. Mich. 1982).................................................................................16

*Zbylski v. Douglas Cnty. Sch. Dist.*,
   154 F. Supp. 3d 1146 (D. Colo. 2015)..........................................................................12, 14

**Rules**

Federal Rule of Civil Procedure 26 ......................................................................................16, 17

Federal Rule of Civil Procedure 37 ................................................................................. *passim*

Federal Rule of Civil Procedure 72 ........................................................................................8, 9

## **INTRODUCTION**

Dr. Richard Kradin committed textbook spoliation. As the Court is aware, Defendants' article, *Malignant mesothelioma following repeated exposures to cosmetic talc: A case series of 75 patients* (2020) (the "Article"), states that for all 75 of its subjects, their "only known exposure" to asbestos was cosmetic talc. Ex. 3, Emory Article at 2.[1] Yet Defendants now admit that multiple subjects were exposed to asbestos from other sources. So a critical issue in this litigation is the mental state element that requires demonstrating that "the defamatory statement was published with knowledge that it was false or with reckless disregard of its truth or falsity." *LLT Mgmt. LLC v. Emory*, 766 F. Supp. 3d 576, 599 n.11 (E.D. Va. 2025). Evidence about what the authors knew (and when) thus goes to the heart of this case. Unfortunately, Dr. Kradin deliberately deleted *all* his emails *immediately* after sending or receiving them, thus destroying critical evidence that would help answer that question.

Dr. Kradin has two primary arguments to try to justify his destruction of evidence. Neither holds water—and both come nowhere close to demonstrating clear error.

***First***, he claims he did not anticipate the emails being used in a *trade libel* lawsuit, just talc litigation. But "Rule 37 does not require the exacting prescience . . . concerning the exact *type* of litigation a party anticipates, especially when the party advancing such an argument is the alleged spoliator. To read such a requirement into the Rule would allow misbehaving parties to escape their obligations to preserve evidence through the careful splitting of hairs." *Title Cap. Mgmt., LLC v. Progress Residential, LLC*, 2017 WL 5953428, at *4 (S.D. Fla. Sept. 29, 2017).

---

[1]    For ease of the Court's review, Plaintiff has re-filed the declarations and exhibits submitted to the Magistrate Judge. Exhibits 1-11 and 12-23 were submitted by Pecos River in connection with their motion and reply, respectively. Exhibits A-H were submitted by Defendants in connection with their opposition.

1

Dr. Kradin himself admits that he "reasonably foresaw that the Article could be used in talcum powder personal injury cases, where he might 'rely on [it] in his expert capacity.'" Obj. 13. And he also admits that "translates to a duty to preserve evidence he knew or reasonably should have known would be relevant *in that personal injury litigation.*" *Id.* (emphasis in original). Those concessions are fatal. The issue is whether Dr. Kradin knew or should have known the materials he destroyed would be relevant in the underlying talc litigation—a factual question subject to clear error review.

The Magistrate Judge's findings are unassailable. It is plain that Dr. Kradin knew his emails and other materials would be sought by talc manufacturers to assess the veracity of his Article. He is a sophisticated expert witness. He admitted he was "expecting that counsel for talc manufacturers would be asking to see information related to [his] article," Ex. 2, Kradin Dep. 123:13-18, and that attorneys "will use anything that you say in print against you." *Id.* at 148:19-149:2, 150:20-25. In fact, he warned his co-authors that talc defendants—including J&J specifically—would want to see their materials. For example, while drafting the Article, Dr. Kradin warned Dr. Maddox that their data may be "subpoenaed down the road," and that "J&J and Colgate are going to want to see the data on this paper." Ex. 7, MADDOX_000001674; Ex. 8, MADDOX_00001744. Shortly before the Article was to be submitted for publication, he even wrote: "[G]et ready for the J&J lawyers!" Ex. 1, MADDOX_00001941. He "got ready" for the J&J lawyers by destroying all his emails.

***Second***, Dr. Kradin also faults Pecos River for not proving the contents of his deleted emails. But "that is precisely the problem that arises in spoliation cases—the party claiming spoliation does not know what it does not have." *Lee v. County of L.A.*, 2025 WL 2505484, at *9 (C.D. Cal. Aug. 29, 2025). "[H]olding the prejudiced party to too strict a standard of proof

2

regarding the likely contents of the destroyed evidence" would "allow parties who have intentionally destroyed evidence to profit from that destruction." *Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998). At a bare minimum, his spoliation prevents Pecos River from knowing the full extent and nature of his communications. Courts frequently find prejudice when parties "delete[] all [their] text messages," *Schnatter v. 247 Grp., LLC*, 2022 WL 2402658, at *14 (W.D. Ky. Mar. 14, 2022), or wipe their cell phone, *Owens v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 695 F. Supp. 3d 750, 759 (M.D. La. 2023). Just so here.

Because Dr. Kradin spoliated evidence, a jury instruction is amply warranted. But if the Court does not simply affirm the Order as written, there is another reason to affirm: Dr. Kradin intentionally destroyed evidence to prevent Pecos River from getting it. Here, the challenged Order takes a middle path. Pecos River argued below that the correct standard is preponderance of the evidence and for an adverse inference. Dr. Kradin urged the clear-and-convincing standard and no remedy at all. Magistrate Judge Krask applied a heightened standard and awarded Pecos River a jury instruction, not an adverse inference. Dr. Kradin urges the Court to reject that middle ground, but that would not mean no remedy. Instead, the Court should accept Pecos River's legal position if for whatever reason the Court does not simply overrule the Objection under the clear-error standard.

## BACKGROUND

### I.   The Falsehoods in Defendants' Article

This case concerns the Article authored by Dr. Kradin and his co-Defendants. As the Court knows from other pleadings, the Article contains falsehoods. For example, it states that for all 75 subjects, their "only known exposure to asbestos" was cosmetic talc. Ex. 3, Emory Article at 2. The Article further states that the authors assessed those exposures by reviewing "sworn deposition

3

testimonies and answers to sworn interrogatories." *Id.* And the Article also states that all 75 subjects were "additional" to the subjects in a similar paper authored by Dr. Moline. *Id.*

None of those statements are true. Dr. Kradin now admits that some subjects were exposed to asbestos from *non-talc* sources. Ex. 4, Kradin Aug. 08, 2025 Amended and Supplemental Responses to Third Set of Interrogatories at 4. Nor is it true that Defendants reviewed deposition transcripts and interrogatories. Rather, Dr. Kradin assigned that task to his wife—who was working as his administrative assistant. Ex. 5, Cashman Dep. 124:4-15. And eight subjects overlap between the Article and Dr. Moline's paper. *See* Ex. 6, Emory Dep. 190:19-21.

To prevail in this litigation, however, the fact that Pecos River has proved the Article is false is not sufficient. Instead, Pecos River must also prove that Defendants' false statements were made "with malice." *LLT Mgmt.*, 766 F. Supp. 3d at 599. This "standard requires proof that the defamatory statement was published with knowledge that it was false or with reckless disregard of its truth or falsity." *Id.* at 599 n.11. Accordingly, the most important issue in this litigation—and the focus of the parties' discovery—is what Defendants subjectively believed when they wrote the Article.

## II.     Dr. Kradin's Intentional Deletion of Relevant Emails

Unfortunately, Pecos River's ability to investigate Dr. Kradin's motive behind the Article has been irreparably harmed by his destruction of every one of his emails that he sent or received while working on the Article, including every email that could be relevant to this litigation.

Dr. Kradin has been a professional expert witness for more than 40 years and admits that he co-authored the Article (at least in part) so he can use it when he testifies as an expert witness in talc litigation. Ex. 2, Kradin Dep. 28:18-21, 134:3-7. In fact, during the same period that he was co-authoring the Article, Dr. Kradin was an expert witness in talc litigation. While drafting the Article, moreover, Defendants discussed its contents with Simon Greenstone Panatier—a law firm

that represents plaintiffs in asbestos litigation. ECF No. 95-4, Kradin Dep. 144:8-11.[2] This is not a case, in other words, where a scientist works on a research project with little expectation of litigation. Rather, there was a 100% certainty of litigation here, because Dr. Kradin *already* was involved in talc litigation when he co-authored the Article.

Dr. Kradin, moreover, does not (and cannot) dispute that he knew that the Article would be relevant to that litigation. While drafting the Article, Dr. Kradin warned Dr. Maddox that their data may be "subpoenaed down the road," and that "J&J and Colgate are going to want to see the data on this paper." Ex. 7, MADDOX_000001674; Ex. 8, MADDOX_00001744. In the month the Article was submitted to the journal, Dr. Kradin wrote to his co-authors: "As we are all actively engaged in litigation, you can be sure that defense counsels will ask to see the data." Ex. 10, EMORY_00001189. Two weeks later when submission was approaching, he wrote: "[G]et ready for the J&J lawyers!" Ex. 1, MADDOX_00001941. And during his deposition, he admitted that while drafting the Article, he was "expecting that counsel for talc manufacturers would be asking to see information related" to it, Ex. 2, Kradin Dep. 123:13-18, and that he anticipated "intense scrutiny" from Pecos River and other cosmetic talc manufacturers, *id.* at 138:2-6.

Nonetheless, Dr. Kradin deleted each of his email messages (including messages in his sent folder) as soon as those messages were received or sent. Ex. 2, Kradin Dep. 122:9-20. This deletion included his emails about the Article. *Id.* at 120:7-122:23. Yet despite having gigabytes of storage available in his Gmail account (which he admits he used for emails about the Article), his explanation was he wanted to "clear up space on [his] computer." *Id.* at 121:1.

---

[2]     As detailed in Pecos River's Objection to Magistrate Judge Krask's litigation funding order, Simon Greenstone Panatier also was involved with a similar paper by plaintiff's expert Dr. Moline (the "Moline Paper").

Dr. Kradin's destruction of evidence has harmed Pecos River. For example, there are significant gaps in the chronology of the Article's drafting, including whether Simon Greenstone Panatier or another plaintiffs' firm was the Article's impetus. The earliest email produced about the Article is Dr. Maddox's February 2019 message to Dr. Kradin about a "similar exposure group," but that message includes no context. Ex. 14, MADDOX_00000079 at 0080. During discovery, Dr. Kradin testified he did not know if he and Dr. Maddox had discussed co-authoring an article prior to the email, and he had only met Dr. Maddox twice before in his life. Ex. 15, Kradin Dep. 48:23-49:9. He claimed not to be able to remember any more about where the idea for the Article came from: "I'm sorry, I'm at a loss. I—I just don't recall." *Id.* at 50:23. But Dr. Kradin obviously had previously communicated with *someone* who told him that Dr. Maddox would email; otherwise, Dr. Kradin's response to the email would be inexplicable. Pecos River is entitled to discover who came up with the idea of writing the Article, as well as their motivation.

Nor is that the only gap in the evidence. Defendants communicated with Dr. Moline about the Article, Ex. 2, Kradin Dep. 110:8-111:24; Ex. 13, MADDOX_00000134, and Simon Greenstone Panatier connected Defendants to Dr. Moline, ECF No. 95-5, Emory Dep. 205:14-206:14. Unfortunately, the nature of those communications and that connection remains cloudy because Pecos River cannot access any messages that Dr. Kradin sent to Dr. Moline or plaintiffs' firms.

While Pecos River has emails that Dr. Kradin sent to his co-authors and to his administrative assistant, Pecos River cannot recover emails he sent or received from others. This is not for lack of trying. For example, beyond subpoenaing Dr. Kradin's administrative assistant, Pecos River subpoenaed Dr. Moline herself. In response, Dr. Moline claimed she had no relevant documents and moved to quash her deposition, arguing that Pecos River's subpoena was "an

6

attempt to harass her" (an argument rejected by the Southern District of New York). *Moline v. Pecos River Talc LLC*, 2025 WL 2898086, at *1, *4 (S.D.N.Y. Oct. 10, 2025). That refusal to cooperate forced Pecos River to subpoena her employer, Northwell Health, which refused to produce a single document, thus forcing Pecos River to move to compel, a motion which is currently pending. It appears that Northwell does, in fact, have all of Dr. Moline's emails in its "archive" despite Dr. Moline's claim that she did not have any responsive documents. Obj. 18 n.7.

### III.    Magistrate Judge Krask's Factual Findings and Spoliation Order

After it became apparent during Dr. Kradin's deposition that he deleted all his emails, counsel met and conferred but could not resolve this issue. Pecos River thus promptly filed a motion challenging Dr. Kradin's spoliation of evidence. On March 10, 2026, Magistrate Judge Krask granted Pecos River's motion in part and found the following:

- Dr. Kradin had a duty to preserve his emails because, as a sophisticated witness who intended to use the Article in his own cases, Dr. Kradin "anticipated that the article would be relevant to future litigation, at least as a tool for himself to rely on in his expert capacity." Order 8, ECF No. 140.

- Given his involvement in litigation, Dr. Kradin had "reason[] to expect that, if the veracity of the article were to come into question, requests for production of emails would follow." *Id.*

- Despite Pecos River's best efforts, Dr. Kradin's deleted emails are "lost." *Id.* at 9. For example, Google's retention policy makes the likelihood of recovery "almost zero." *Id.* at 10. Pecos River "also attempted to discover to what extent Dr. Kradin communicated with others through his deposition testimony, but his memory on the subject was admittedly incomplete." *Id.* at 9.

- Forcing Pecos River to "attempt to subpoena every possible person that Dr. Kradin potentially emailed with about the article during the relevant period" is unreasonable and would "impos[e] an unnecessary burden on plaintiff." *Id.*

- Not only did "Dr. Kradin fail[] to take reasonable steps to prevent the deletion of the emails while under the duty to preserve them," he "*manual[ly]*" destroyed evidence despite knowing that the Article's "veracity may come into question in litigation." *Id.* at 8, 10.

- Pecos River "has proven by clear and convincing evidence that it is prejudiced by the loss of the emails," and the fact some of Dr. Kradin's "email correspondence . . . has been recovered" does not "eliminate the prejudice" because "what remains missing from discovery are Dr. Kradin's emails with other individuals, including Dr. Moline." *Id.* at 12. Furthermore, Dr. Kradin's emails are particularly relevant because he (along with Dr. Maddox) was "the brain trust of the article." *Id.*

Given those findings, Magistrate Judge Krask ruled that Pecos River is entitled to a jury instruction "that Dr. Kradin had a legal obligation to preserve his emails at the time he destroyed them." *Id.* at 13. But rather than applying the preponderance-of-the-evidence standard and ordering an adverse inference, Magistrate Judge Krask took the middle position and did not order an adverse inference under Rule 37(e)(2) because Pecos River "has not established by clear and convincing evidence that [Dr. Kradin] intended to deprive plaintiff from using such information in this case." *Id.* at 12.

## ARGUMENT

Dr. Kradin's objections should be denied because the Magistrate Judge's Order is neither clearly erroneous nor contrary to law. Under Federal Rule of Civil Procedure 72(a), a district court reviewing a magistrate judge's non-dispositive order "must . . . modify or set aside any part of the

8

order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). This standard is highly deferential. *See Harrison v. Shanahan*, 2019 WL 2216474, at \*2 (E.D. Va. May 22, 2019). A finding is "clearly erroneous" only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Summers v. City of Charlotte*, 2022 WL 385163, at \*2 (W.D.N.C. Feb. 8, 2022) (citation omitted). A legal conclusion is "contrary to law" only where the magistrate judge applied an incorrect legal framework. *Harrison*, 2019 WL 2216474, at \*2.

Rule 37(e) "provides the legal framework for evaluating claims that a party failed to preserve electronically stored information ('ESI') for another's use in litigation." *Sines v. Kessler*, 2021 WL 5492826, at \*2 (W.D. Va. Nov. 19, 2021). "Under Rule 37(e), a movant must satisfy four threshold requirements before a court decides if any spoliation sanction is appropriate." *Id.* These four requirements are: "(1) ESI should have been preserved; (2) ESI was lost; (3) the loss was due to a party's failure to take reasonable steps to preserve the ESI; and (4) the ESI cannot be restored or replaced through additional discovery." *Id.* Where, as here, prejudice results, a court may "giv[e] the jury instructions to assist in its evaluation of such [spoliated] evidence." Fed. R. Civ. P. 37(e) (Adv. Comm. Notes on 2015 amend.).

## I.    Magistrate Judge Krask Did Not Clearly Err in Finding That Dr. Kradin Had A Duty To Preserve His Emails About the Article.

Magistrate Judge Krask found that Dr. Kradin destroyed important evidence despite knowing that his emails regarding the Article would be relevant to ongoing talc litigation. He concluded that Dr. Kradin (a professional expert witness) intended to use the Article for expert testimony and reasonably anticipated that his emails about that Article would be sought in

9

litigation. Order 8. By themselves, those findings of fact require affirmance. Dr. Kradin's efforts to muddy the record fail.

Expert witnesses, no less than parties and their counsel, have a duty to preserve relevant evidence. *See Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155 (4th Cir. 1995) (upholding jury instruction that "[i]t is the duty of a party, a party's counsel and any expert witness, not to take action that will cause the destruction or loss of relevant evidence"); *Silvestri v. General Motors Corp.*, 271 F.3d 583, 592 (4th Cir. 2001) (faulting not only the party and "his attorneys" but also "his expert witnesses" for failing to preserve evidence); *Dillon v. Nissan Motor Co*., 986 F.2d 263, 267 (8th Cir. 1993) (upholding sanctions where expert witness spoliated evidence). Magistrate Judge Krask's finding that Dr. Kradin—a professional expert witness in ongoing litigation—had a duty to preserve his emails about the Article is squarely supported by this authority.[3]

Dr. Kradin concedes that the clear error standard applies to a magistrate judge's findings—indeed, the title of Section I of his Objection invokes it. Dr. Kradin himself admits that he "reasonably foresaw that the Article could be used in talcum powder personal injury cases, where he might 'rely on [it] in his expert capacity.'" Obj. 13. And he also admits that this "translates to a duty to preserve evidence he knew or reasonably should have known would be relevant *in that personal injury litigation*." *Id.* (emphasis in original). Those concessions are fatal to his argument.

---

[3]   Dr. Kradin argues that, as a non-party to the talc litigation, he had no duty to preserve. But even the cases he relies on undercut this argument. In *Johns v. Gwinn*, the court recognized that a non-party has a duty to preserve if a "special relationship" to the party existed "arising by reason of an agreement, contract, statute, or other special circumstance." 503 F. Supp. 3d 452, 462 (W.D. Va. 2020). Dr. Kradin was serving as a retained expert witness for numerous plaintiffs when he destroyed the relevant evidence—a paradigmatic "special circumstance" giving rise to a duty to preserve. And in *Rodo Inc. v. Guimaraes*, the court imposed sanctions on a non-party for destroying evidence. 2023 WL 8520426, at *3 (S.D.N.Y. Dec. 8, 2023). Dr. Kradin was no neutral third party who was a stranger to talc litigation. He was a hired expert witness actively participating in that litigation.

10

The issue is whether Dr. Kradin knew or should have known the materials he destroyed would be relevant in the underlying talc litigation—a factual question subject to clear error review. Magistrate Judge Krask did not clearly err in making that finding. Dr. Kradin's own words—warning his co-authors that "defense counsels will ask to see the data" and to "get ready for the J&J lawyers!"—amply support the finding that he knew his correspondence about the Article would be sought in litigation. Ex. 10, EMORY_00001189; Ex. 1, MADDOX_00001941.

### A.    Magistrate Judge Krask's Factual Findings Are Well Supported.

Dr. Kradin had a duty to preserve his emails: "whether ESI should have been preserved . . . under Rule 37(e) turns chiefly on two questions underlying the duty to preserve: 1) whether the party should have reasonably anticipated litigation, and 2) whether the party reasonably should have known that the evidence at issue might be relevant to such litigation." *Sines*, 2021 WL 5492826, at *2. This duty thus "arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri*, 271 F.3d at 591 (citing *Kronisch*, 150 F.3d at 126). Concern that documents could be "misunderstood" in litigation thus by itself can trigger a preservation duty, *e.g.*, *Kronisch*, 150 F.3d at 126-27, especially if (as here) the spoliator is legally sophisticated, *e.g.*, *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1313-14 (11th Cir. 2023).

Dr. Kradin knew his Article would be subject to litigation, thus triggering a duty to preserve his emails regarding it. Dr. Kradin was no passive academic who could claim ignorance that litigation about the Article was reasonably foreseeable. Rather, he was serving as a paid expert in talc litigation while the Article was conceived, drafted, and published. *See* Order 7-8; Ex. 2, Kradin Dep. 13:8-14, 28:22-29:1, 134:14-17. He also intended to personally use the Article as an expert witness in talc litigation. *See* Order 8; Ex. 2, Kradin Dep. 134:3-7. In short, "the evidence shows

11

that Dr. Kradin anticipated that the article would be relevant to future litigation, at least as a tool for himself to rely on in his expert capacity." Order 8.

Dr. Kradin also knew that as part of that litigation, lawyers for talc manufacturers would seek materials related to the Article. That is why he warned his co-authors that the materials "may be subpoenaed," Ex. 7, MADDOX_00001674, and "[a]s we are all actively engaged in litigation, you can be sure that defense counsels will ask to see the data," Ex. 10, EMORY_00001189. That is also why he anticipated "intense scrutiny" from Pecos River because "talc manufacturers would be asking to see information related to [his] article." Ex. 2, Kradin Dep. 138:2-6, 123:13-18. He thus knew—and could reasonably foresee—that his emails and other documents were "relevant" to ongoing litigation involving Pecos River that Dr. Kradin was involved in. Again, as Magistrate Judge Krask found, it is "reasonable"—in fact, inevitable—"to expect that, if the veracity of the article were to come into question, requests for production of emails would follow." Order 8.

Whether Dr. Kradin anticipated that Pecos River would want the materials in a trade libel claim is immaterial. "Rule 37 does not require the exacting prescience . . . concerning the exact *type* of litigation a party anticipates, especially when the party advancing such an argument is the alleged spoliator." *Title Cap. Mgmt.*, 2017 WL 5953428, at *4. Any other rule "would allow misbehaving parties to escape their obligations to preserve evidence through the careful splitting of hairs." *Id.* Courts thus "reject[] the notion that a party's obligation to preserve information arises only after it understands the *precise* nature of the *specific* litigation at issue." *Zbylski v. Douglas Cnty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1162 (D. Colo. 2015); s*ee also Rambus, Inc. v. Infineon Techs., AG*, 220 F.R.D. 264, 287 n.30 (E.D. Va. 2004). What matters is that litigation *generally* is foreseeable. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 496 (E.D. Va. 2011). Dr. Kradin—a sophisticated expert—intended that the Article would be used in

12

ongoing talc litigation against Pecos River and that the Article's accuracy and methodology would be hotly disputed in that litigation.

For these reasons, Magistrate Judge Krask found two critical facts: as an expert witness with an active litigation docket, Dr. Kradin knew that the Article would be relevant to ongoing talc litigation (and in fact intended to use it himself in talc litigation), and Dr. Kradin also reasonably anticipated that his emails about the Article would be sought. Those facts mean that Dr. Kradin had a duty to preserve those emails. But despite that duty, he deleted the emails, thus preventing Pecos River or any other talc manufacturer from obtaining relevant evidence.

### B.      Dr. Kradin's Arguments Fail.

Dr. Kradin objects to the Order but does not (and cannot) dispute key facts. His own pleading to the Court admits, for example, that he deleted every relevant email, that he knew the Article would be subject to litigation, and that he had a duty to preserve "data" about the Article. Obj. 4, 13-14. Given those admissions, Dr. Kradin's arguments are nonstarters.

### 1.      The precise nature of the litigation is irrelevant.

Dr. Kradin's lead argument is that he "didn't expect to be sued" and was "shocked" when he was named as a defendant. Obj. 6, 8, 12. But the question is not whether he expected *this* lawsuit, but rather whether he reasonably expected *any* lawsuit for which the materials underlying the Article would be relevant. Here, Dr. Kradin personally warned his co-authors to expect subpoenas and discovery requests, especially because "we are all actively engaged in litigation." Ex. 10, EMORY_00001189. No wonder Dr. Kradin told his co-authors to "get ready for the J&J lawyers!" Ex. 1, MADDOX_00001941. That warning was not a lucky guess, much less a vague expression of generalized concern. Rather, it was the instruction of a professional expert witness with decades of experience who understood how discovery works. Magistrate Judge Krask

13

correctly relied on those statements in concluding that litigation was reasonably foreseeable. Order 7-8.

Dr. Kradin disagrees, but his argument fails on its own terms. He concedes that "he reasonably foresaw that the Article could be used in talcum powder personal injury cases." Obj. 13. Yet the Article—which addresses whether cosmetic talc can cause mesothelioma—may be used in just such cases. He thus had a duty to preserve evidence. That Pecos River happens to be the plaintiff is irrelevant. Requiring a spoliator to anticipate the precise nature of the litigation would allow parties "to destroy evidence" with impunity. *Zbylski*, 154 F. Supp. 3d at 1166-67. "That simply cannot be." *Id.* Nor does the Order mean that "experts would have a duty to indefinitely preserve any communication (text message, email, etc.) about their potentially controversial research purely because there is a possibility that someone might attempt to subpoena them about it." Obj. 14. This case is not about "*potentially* controversial research" that "*possib[ly]*" might come up. The Article was written for use in litigation while Dr. Kradin was working as an expert witness, and he knew it would prompt a "subpoena[]." Ex. 7, MADDOX_00001674.

Dr. Kradin nonetheless claims that "courts within the Fourth Circuit have found no duty to preserve in cases with far more notice than this one." Obj. 12. That claim is both irrelevant and wrong. When finding facts and drawing inferences, different judges may reach different conclusions. *See, e.g.*, *Pierce v. N. Carolina State Bd. of Elections*, 97 F.4th 194, 210 (4th Cir. 2024) ("mere disagreement" with the lower court "does not make its findings clearly erroneous"). Dr. Kradin is also wrong. None of his cited cases are like this one because all involved "generalized concerns" about possible litigation rather than specific knowledge that litigation was likely. *Webb v. Daymark Recovery Servs., Inc*., 2022 WL 17832160, at *3 (M.D.N.C. July 26, 2022); *see also Snell v. Reid*, 2024 WL 2815061, at *2 (4th Cir. June 3, 2024) (tenant's notification to landlord

14

that she fell on stairs showed only "the mere existence of a potential claim"); *Bhattacharya v. Murray*, 2022 WL 875032, at *3 (W.D. Va. Mar. 23, 2022) (vague references to "hiring lawyers" "too ambiguous" to trigger preservation obligations).

This case is different. As Magistrate Judge Krask found, Dr. Kradin was testifying as an expert witness on a weekly basis, and the Article was written to support and inform expert testimony in talc cases, including his own talc cases. Order 8. He was not a passive bystander who received a vague warning but rather was an active participant identified by name who would seek his materials. *Barnes v. Harling*—cited by Dr. Kradin—explains that a prison "should have reasonably anticipated" a lawsuit because of prior experience. 368 F. Supp. 3d 573, 607 (W.D.N.Y. 2019). If a history of lawsuits is enough to trigger a preservation duty, a professional expert witness who wrote an article to assist with his own testimony also surely has a preservation duty.

### 2. Dr. Kradin's attempt to distinguish his "emails" from his "data" fails.

Dr. Kradin next objects that even though litigation involving the Article was foreseeable, he had no reason to know his *emails* would be relevant, unlike his "data." Obj. 14-16. Dr. Kradin never argued before the Magistrate Judge that the court should distinguish between his emails and other data. In any event, the argument fails on the merits. Dr. Kradin knew his Article would be subject to unusually "intense scrutiny," Ex. 2, Kradin Dep. 138:2-6, and expert witnesses (like anyone else) sometimes must turn over communications, *e.g.*, *Donald v. Novant Health, Inc.*, 2025 WL 863621, at *5 (E.D.N.C. Mar. 18, 2025) (permitting discovery of expert communications that reflect facts/data considered); *Gammons v. Adroit Med. Sys., Inc.*, 2022 WL 17640125, at *2 (E.D. Tenn. Dec. 13, 2022) (compelling production of emails between counsel and testifying expert). Nor is the question whether Dr. Kradin's emails are "routinely discoverable" in expert proceedings, but whether the deleted evidence "may be *relevant* to anticipated litigation." *Silvestri*, 271 F.3d at 591 (emphasis added). Dr. Kradin's emails certainly "may be relevant to anticipated

15

litigation," which is enough. Regardless, he admits that while co-authoring the Article, he "regularly sent drafts and comments and *Excel tables* . . . by email." Obj. 2 (emphasis added). His emails thus contain *data*.

Dr. Kradin points to Rule 26(a)(2) to claim "[h]is emails about the Article are entirely outside the scope of expert discovery." Obj. 15. Again, he never argued below that Rule 26(a)(2) is relevant. But it is also wrong on many levels.

*First*, the Article and his emails regarding it are relevant to the talc litigation regardless of whether Dr. Kradin himself was serving as an expert. For example, Pecos River successfully subpoenaed information regarding Dr. Moline's similar paper in a case where she was no longer serving as an expert. *See Johnson & Johnson v. Northwell Health Inc.*, 231 A.D.3d 481, 481 (1st Dep't 2024) (concluding the information was "clearly relevant to the underlying New Jersey personal injury action").[4]

*Second*, he cites no authority that Rule 26(a)(2) impacts the duty to preserve. The question under Rule 37 is whether the information destroyed is *relevant* to anticipated litigation, which Rule 26(a)(2) does not speak to.

*Third*, this argument assumes a provision of the *federal* rules impacts the analysis when most talc litigation is in state courts around the country.

*Fourth*, even if—despite all the above—the Court were to evaluate whether Rule 26(a)(2) would have permitted discovery into Dr. Kradin's emails when serving as an expert, that rule does

---

[4]    As explained in the motion to compel the identities of the Article's subjects, courts allow discovery about relevant articles in products liability cases. ECF No. 45; *see also, e.g.*, *Kellington v. Bayer Healthcare Pharms., Inc.*, 2016 WL 5349801, at *2 (W.D. Va. Sept. 23, 2016); *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 561-62 (7th Cir. 1984); *Wolpin v. Philip Morris Inc.*, 189 F.R.D. 418, 429 (C.D. Cal. 1999); *Wright v. Jeep Corp.*, 547 F. Supp. 871, 874 (E.D. Mich. 1982).

not limit discovery. Rule 26(a)(2) governs *mandatory* disclosure; it is not the full limit of what may be discovered. Rather, "expert discovery may reach beyond what is required in disclosure, and indeed that reach is the purpose of discovery." *Coleman Co., Inc. v. Team Worldwide Corp.*, 2021 WL 5045067, at *2 (E.D. Va. Oct. 18, 2021). The cases Dr. Kradin cites prove the point. *See, e.g.*, *Kaiser v. Imperial Oil of N. Dakota, Inc.*, 2025 WL 305462, at *4 (D. Mont. Jan. 27, 2025) (although "Rule 26(a)(2) governs the disclosure of expert testimony," "[t]here are circumstances where it is necessary for a party to inquire beyond an expert's automatic disclosures"); *Roman v. City of Chicago*, 2023 WL 121765, at *4 (N.D. Ill. Jan. 6, 2023) ("[T]he plain text of Rule 26(a)(2) does not state that a party is limited to *only* a report and the six specified components that the report must contain. There is nothing in the text of Rule 26(a)(2) to suggest that a party is prohibited from requesting additional written information from an opponent's testifying expert witnesses.").[5]

*Fifth*, even if Rule 26(a)(2) served as some sort of limit on discovery, Dr. Kradin's emails would fall within the scope of that rule anyway. The Article was on Dr. Kradin's reliance list, and he testified he intended to rely on that Article. Rule 26 sweeps broadly, reaching "*any* material considered by the expert, *from whatever source*." Fed. R. Civ. P. 26(a)(2)(B)(ii) (Adv. Comm. Notes on 2010 amend.) (emphasis added). That language means what it says: Because the duty to disclose extends to all information an expert considered, not merely the final product, emails are

---

[5]    Dr. Kradin's other cases are also irrelevant. They generally involve attempts to evade Rule *26(b)(4)*'s prohibitions on disclosing draft reports or otherwise do not rule that Rule 26(a)(2) is a ceiling on discovery. *See Spencer v. Greenwald*, 2022 WL 2180052, at *3 (D. Idaho June 15, 2022) (discussing Rule 26(b)(4)—not (a)(2)); *Schwarz & Schwarz of Va., LLC v. Certain Underwriters at Lloyd's London Who Subscribed to Pol'y No. NC959*, 2009 WL 1043929, at *5 (W.D. Va. Apr. 17, 2009) (analyzing subpoena that sought draft reports prohibited by Rule 26(b)(4)); *see also Robinson v. Food Lion, LLC*, 2010 WL 11700599, at *2 (E.D. Va. Apr. 13, 2010) (no analysis of Rule 26(a)(2)); *Sines v. Darling Ingredients, Inc.*, 2022 WL 1554824, at *19 (D.N.M. May 17, 2022) (analyzing a subpoena to an "anticipated—but not yet retained—expert" before the deadline for expert disclosures and reports).

fair game to the extent they include information that underlies the expert's opinion. *See, e.g.*, *Synthes Spine Co., L.P. v. Walden*, 232 F.R.D. 460, 463-64 (E.D. Pa. 2005) (compelling production of all materials "in whatever form the expert received them, of materials that plaintiff's counsel supplied to plaintiff's expert, *including e-mails*" (emphasis added)); *Colindres v. Quietflex Mfg.*, 228 F.R.D. 567, 571-72 (S.D. Tex. 2005) (compelling production of email); *Mitku v. Ultradent Prods., Inc.*, 2022 WL 137720, at *3 (D. Utah Jan. 14, 2022) (rejecting that expert "considered" only attachments and not emails); *In re Application of Republic of Ecuador*, 280 F.R.D. 506, 516 (N.D. Cal. 2012) (compelling production of communications subject to disclosure obligation, regardless of whether they were exchanged with co-authors, other experts, or counsel), *aff'd sub nom. Republic of Ecuador v. Mackay*, 742 F.3d 860 (9th Cir. 2014).

### 3. Dr. Kradin's attempt to cast his emails as "personal" correspondence with "friends" is not relevant to the analysis.

Finally, Dr. Kradin downplays the emails as "personal" correspondence with "friends" (his euphemism for his co-authors). Obj. 15. But he admits that he used his Gmail account for work, including the Article. Ex. 2, Kradin Dep. 120:9-18, 122:9-19. He did not meaningfully use his "Kradin Consulting" account for those purposes. *Id.* Nor are his emails distinct from data—rather, they contain data and describe how data was selected, analyzed, and presented. And no one is asking him to preserve "every shred of paper." Obj. 13. Instead, he deleted *every* sent and received email from the account used to perform the work at issue, despite knowing the Article would be subject to intense scrutiny during litigation. The Court should not ignore common sense.

### II. Magistrate Judge Krask Also Did Not Clearly Err in Finding that Dr. Kradin's Spoliation Prejudiced Pecos River.

Magistrate Judge Krask also found that Dr. Kradin's spoliation prejudiced Pecos River. Once more, Dr. Kradin cannot overcome those findings.

**A.       Magistrate Judge Krask's Factual Findings Again Are Well Supported.**

Because of Dr. Kradin's spoliation, Pecos River cannot use his words to test his mental state. And although Pecos River has recovered some of his emails from other Defendants, Pecos River has no way to test what he said to plaintiffs' counsel, other plaintiffs' experts (like Dr. Moline), or others. Yet such evidence is critical to the "actual malice" element.

That is prejudice. The deleted emails were the primary, contemporaneous record of the drafting process. They would have shown how the authors selected and interpreted data, how they responded to anticipated challenges, what information was shared with or received from outside actors, and whether any concerns were disregarded. Rule 37(e) exists precisely to counteract such unfairness. *See, e.g.*, *Buddenberg v. Est. of Weisdack*, 711 F. Supp. 3d 712, 822 (N.D. Ohio 2024) (defendants prejudiced where lost ESI "changes the complexion of the case"); *Connor v. Sun Tr. Bank*, 546 F. Supp. 2d 1360, 1376 (N.D. Ga. 2008) ("[T]he absence of the relevant evidence prejudices the party that would have relied on it to prove its case."). Indeed, being "left with an incomplete record of the communications that Defendants had with both each other and third parties" is itself prejudice. *Paisley Park Enters. v. Boxill*, 330 F.R.D. 226, 236 (D. Minn. 2019). Magistrate Judge Krask thus correctly concluded that this spoliation impaired Pecos River's ability to develop its case. Order 12-13. That conclusion was well supported and is not remotely clearly erroneous.

**B.       Dr. Kradin's Arguments Again Fail.**

**1.       Pecos River need not prove the contents of destroyed evidence.**

Dr. Kradin's arguments do not undermine Magistrate Judge Krask's finding. For example, Dr. Kradin repeatedly faults Pecos River for not identifying the contents of the emails he deleted. Obj. 1, 11, 19, 22-23. But "Plaintiff is under no burden to prove the contents of the missing emails to demonstrate that there is prejudice." Order 13 (citing Fed. R. Civ. P. 37 (Adv. Comm. Notes on

19

2015 amend.). Any other rule would create "manifest unfairness and injustice." *Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 285 (E.D. Va. 2001). For the same reason, Pecos River need not prove that the deleted emails would have been favorable. *But see* Obj. 22-23. A spoliating party cannot destroy evidence and then insist that the other side prove what's missing.

Otherwise, a party could freely destroy evidence because no one could prove how it would have helped. But parties often cannot "point to any specific missing information" as "that is precisely the problem that arises in spoliation cases—the party claiming spoliation does not know what it does not have." *Lee*, 2025 WL 2505484, at *9. "[T]here is no way to know what representations might have been contained in any deleted emails." *FTC v. F&G Int'l Grp. Holdings, LLC*, 339 F.R.D. 325, 331 (S.D. Ga. 2021). "A spoliator should not be able to avoid sanctions by merely asserting that destroyed electronically stored information was not critical." *Vitality Sys., Inc. v. Sogeval Labs, Inc.,* 2010 WL 11507249, at *4 (M.D. Fla. May 13, 2010); *see also Kronisch*, 150 F.3d at 128. In short, "the burden placed on the moving party to show that the lost evidence would have been favorable . . . ought not be too onerous, lest the spoliator be permitted to profit from its destruction." *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 616 (S.D. Tex. 2010).

The law thus does not require Pecos River to reconstruct the precise contents or recipients of broad swaths of spoliated communications. *See, e.g.*, *Trigon*, 204 F.R.D. at 285. Such a rule would invite "manifest unfairness and injustice," and turn Rule 37(e) on its head. *Id.* Instead, since "the evidence no longer exists," a party "must only come forward with plausible, concrete suggestions as to what [the destroyed] evidence might have been." *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 339 (D. Ariz. 2022); *see also Donofrio v. Ikea US Retail, LLC*, 2024 WL 1998094, at *30 (E.D. Pa. May 6, 2024) (similar); *Paisley Park Enters.*, 330 F.R.D. at 234 (similar); *Rimkus*

20

*Consulting*, 688 F. Supp. 2d at 616 (similar). In other words, the law asks the more practical question of what "categories" of information were lost. *E.I. du Pont*, 803 F. Supp. 2d at 498-99.

### 2. The deleted emails were relevant and their loss is prejudicial.

The parties dispute whether the "clear-and-convincing" evidence standard applies. While, as discussed below, Dr. Kradin cited cases improperly apply that standard to the issue of the spoliator's *intent*, Dr. Kradin cited no case applying that standard to any other element of the spoliation analysis. In fact, cases cited by Dr. Kradin support that even if clear and convincing were to apply, it should apply to only "[b]ad faith and intent to deprive." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 496 (S.D.N.Y. 2022) (cited at Obj. 18). And Dr. Kradin agreed that intent is the only element to which clear and convincing applies in the last round of briefing. Dr. Kradin's Response in Opposition to Pecos River Talc LLC's Motion for Sanctions, ECF No. 110 ("Opp'n") at 11 ("Courts in the Fourth Circuit generally require proof of ***intent*** to deprive by clear and convincing evidence, especially when—as here—an adverse inference instruction is requested." (emphasis added)). The Magistrate Judge therefore correctly found prejudice even under an overly strict standard of proof.

Here, the deleted emails are the contemporaneous messages in which the Article was developed, including what role Dr. Kradin played. Such facts go to the Article's veracity and to Dr. Kradin's state of mind, Obj. 8, 12, and thus plainly are the type of information likely to be favorable to Pecos River. Nor is there anything "speculative" about that conclusion. Obj. 22. Not only do the circumstances here—a professional expert witness drafting an article to be used in litigation—suggest the evidence would have been relevant, but because his destruction was so widespread, prejudice is apparent. For example, the plaintiff in *Schnatter* also "deleted all of his text messages." 2022 WL 2402658, at *14. The court reasoned that because so much was deleted, the opposing party could not "identify every person Schnatter communicated with . . . , let alone

21

identify the communications at issue or their subject matter." *Id.* The court thus concluded that "it can be inferred that . . . a substantial record of Schnatter's communications . . . was lost," and "f[ound] that the lost record of Schnatter's communications would have been relevant." *Id.*

*Owens* is a similar case involving a cell phone that was wiped and restored to factory settings. The court reached a similar conclusion that the phones had relevant evidence: "Neither the Court nor Plaintiffs can know exactly what ESI has been lost or how significant that ESI was to this litigation. Defendants claim that Plaintiffs cannot show that any relevant evidence has indeed been lost and thus there can be no showing of prejudice. But to allow such an argument would be to allow every spoliator to claim lack of evidence implies lack of relevance. Given the Sells' role in this litigation, it stretches the bounds of reason to think their LSU-issued cell phones would contain no relevant communications." 695 F. Supp. 3d at 759.

*Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96 (E.D. Va. 2018), is not to the contrary. Dr. Kradin cites *Steves* for the proposition that destroyed evidence must be "essential" to establish prejudice. Obj. 17. But *Steves* explains that prejudice exists along "a continuum," ranging "from an inability to prove claims or defenses to little or no impact on the presentation of proof." *Id.* at 110. As part of that continuum, prejudice exists where a party is deprived of "essential" evidence. *Id.* Here, the evidence *is* essential, but regardless, the court did not suggest that it is the *only* evidence that suffices. To the contrary, a "spoliator should not be able to avoid sanctions by merely asserting that destroyed electronically stored information was not critical." *Vitality Sys., Inc. v. Sogeval Labs, Inc.*, 2010 WL 11507249, at \*4 (M.D. Fla. May 13, 2010). Here, the loss harms Pecos River's ability to present its case. *Silvestri*, 271 F.3d at 593-94. At the very least, Dr. Kradin's spoliation prevents Pecos River from being able to know the full extent and nature of his communications, which is enough. *See, e.g.*, *Paisley Park Enters.*, 330 F.R.D. at 235;

22

*Sines v. Kessler*, 2021 WL 4943742, at *9 (W.D. Va. Oct. 22, 2021) (lack of a "complete record of [the spoliator's] written communications" sufficient to show data is both "lost and irreplaceable"); *cf. Summers*, 2022 WL 385163, at *5 ("While Plaintiffs have recovered select emails, they have not been able to obtain the complete records from the City. This is sufficient.").

### 3. Dr. Kradin's specific challenges to the Order lack merit.

Dr. Kradin's effort to flyspeck the Order also fails, even without the clear-error standard and certainly with it. Take the email involving Simon Greenstone Panatier. He says Dr. Maddox—not Dr. Kradin—sent the email. Obj. 19. But the email states: "Dr. Kradin seem[ed] very interested in including other brands," prompting the outreach. ECF No. 95-4, Kradin Dep. 53:24-54:1. Whether the message was sent by Dr. Kradin or on his behalf does not undermine the obvious inference that he was communicating about the Article with a plaintiffs' firm, which directly supports actual malice. Regardless, any error would be harmless because Magistrate Judge Krask relied on *multiple* independent facts supporting prejudice. *See, e.g.*, *Johnston v. Colvin*, 2015 WL 893064, at *3 (D.S.C. Mar. 3, 2015) ("Routinely, Courts have found harmless error where only one or a few reasons among many were improper, where the remaining bases constitute substantial evidence.").

Magistrate Judge Krask also correctly found that Dr. Kradin's memory was limited, making the deleted emails even more significant. Order 9. The cited testimony reflects Dr. Kradin's inability to recall the circumstances surrounding one exchange. ECF No. 95-4, Kradin Dep. 50:7-23. Dr. Kradin does not dispute that he exhibited poor memory but argues it is improper to infer that he suffers from a poor memory respecting his email. But what inferences to draw is a question entrusted to the factfinder—here, Magistrate Judge Krask. Identifying a concrete example of Dr. Kradin's poor memory is more than enough to reinforce a factual finding of prejudice.

23

Dr. Kradin's footnote about a purported "telephone conversation" is equally flawed. Obj. 21 n.9. Magistrate Judge Krask cited this testimony for the proposition that "Plaintiff has also attempted to discover to what extent Dr. Kradin communicated with others through his deposition testimony, but his memory on the subject was admittedly incomplete." Order 9; *see* Ex. 2, Kradin Dep. 110:2-111:16. That is what the record shows. Neither Dr. Kradin nor Dr. Moline remembered the exchange. *See id.* This confirms that Dr. Kradin's memories about his discussions concerning the Article are incomplete.

### 4.       Pecos River cannot reconstruct the deleted emails from other sources.

Dr. Kradin also argues that any prejudice is mitigated or eliminated because Pecos River can reconstruct the content of the deleted emails from other sources. *See* Obj. 18. But he deleted the only complete set. As Magistrate Judge Krask explained, it is unreasonable to force Pecos River to piece the record back together by subpoenaing a host of third parties—including multiple plaintiffs' law firms—without even knowing whom Dr. Kradin communicated with. That Pecos River has tried (to no avail) to obtain information from Dr. Moline illustrates the problem.

Indeed, Pecos River believes Dr. Kradin may have communicated with plaintiffs-side experts Dr. William Longo and Dr. David Egilman, authors of another paper on talc published in the same time period as the Article. But Dr. Egilman (now deceased) and Dr. Longo have testified that they too delete all their emails—making any attempt to reconstruct Dr. Kradin's communications with them futile. Ex. 17, Egilman Leavitt Dep. 122:10; Ex. 18, Egilman Fong Dep. 11:7; Ex. 19, Longo Rimondi Dep. 37:3-4; Ex. 20, Longo Kerkhof Dep. 104:9-11.

The law does not require Pecos River to undertake a burdensome fishing expedition. *See, e.g.*, *Schnatter*, 2022 WL 2402658, at *14 (finding ESI "lost" where recovery would be incomplete and burdensome); *Owens*, 695 F. Supp. 3d at 759 (similar). Dr. Kradin concedes as much, noting the law "does not require that [J&J] pursue every possible avenue for replacing or restoring the

24

ESI." Obj. 21 (quoting *Steves & Sons*, 327 F.R.D. at 108-09). That is the situation here. At best, any third-party discovery would yield a partial and distorted subset of the original emails—stripped of context and missing unknown participants. Even if Pecos River can recover some of Dr. Kradin's emails, Pecos River is *still* prejudiced because it does not have the complete record— evidence he chose to destroy. Rule 37(e) does not allow a spoliator to destroy evidence and then argue that what's left is good enough. "[I]f such an argument were sufficient to defeat discovery sanctions, then no party could ever be sanctioned." *First Fin. Sec., Inc. v. Lee*, 2016 WL 881003, at \*5 (D. Minn. Mar. 8, 2016). In short, "[t]he burden placed on the moving party to show that the lost evidence would have been favorable to it ought not be too onerous, lest the spoliator be permitted to profit from its destruction." *Rimkus Consulting*, 688 F. Supp. 2d at 616.

Finally, Dr. Kradin's passing reference to Google is no better. In the Objection's background (not argument) section, he says Pecos River "never attempted to subpoena Google . . . to ascertain whether his emails from 2019–2020 might have been recoverable." Obj. 4. To the extent this even is an argument, it ignores Magistrate Judge Krask's finding that this information is lost, Order 10, and the undisputed evidence that Google retains deleted emails for only a limited period—approximately six months. *Id.* at 9-10. Here, the emails are at least five years old.

### III.   Regardless, Dr. Kradin Intentionally Deprived Pecos River of Evidence.

For the foregoing reasons, Dr. Kradin cannot point to any error—thus defeating his Objection. Regardless, the Court should affirm on alternative grounds. *See, e.g.*, *Navient Sols. LLC v. L. Offs. of Jeffrey Lohman*, 2020 WL 1917837, at \*4 (E.D. Va. Apr. 20, 2020). Not only is Pecos River entitled to a remedial instruction under Rule 37(e)(1), Dr. Kradin also acted with the intent to deprive Pecos River of important evidence. This conclusion is especially obvious under the correct evidentiary standard. Accordingly, if the Court does not affirm Magistrate Judge Krask's

25

Order for the reasons he gave, the Court should affirm because the required jury instruction is separately supported by Rule 37(e)(2).

### A.   The Correct Standard is Preponderance of the Evidence.

Magistrate Judge Krask ruled that "plaintiff has not established by *clear and convincing evidence* that [Dr. Kradin] intended to deprive plaintiff from using such information in this case." Order 12 (emphasis added). But the correct standard is preponderance of the evidence.

Within the Fourth Circuit, "[t]he burden of proof on a motion for spoliation sanctions is unsettled." *Steves & Sons*, 327 F.R.D. at 104; *see also Globus Med., Inc. v. Jamison*, 2023 WL 2127410, at *3 (E.D. Va. Feb. 10, 2023).[6] Thus, if it does not simply affirm the Order as written, the Court must decide this important question. The correct approach is the one laid out by the Second Circuit in *Hoffer v. Tellone*, 128 F.4th 433 (2d Cir. 2025). The Second Circuit outlined five reasons why the preponderance standard should apply, each of which applies here.

"First, the preponderance standard is the 'usual rule in civil cases.'" *Id.* at 439 (quoting *In re Plaza Shoe Co.*, 15 F.2d 278, 279 (2d Cir. 1926)). Because the Federal Rules do not tell courts to apply a different rule, judges should use the usual one. And "[s]econd, the nature of the sanctions authorized by Rule 37(e)(2) does not justify venturing above the preponderance default." *Id.* Rather, the preponderance of the evidence standard usually applies unless "important individual interests or rights" (such as "proceedings to terminate parental rights, involuntary commitment proceedings, and deportation") are implicated, while other "severe civil sanctions" can be proved by a preponderance of the evidence. *Id.* (quoting *Grogan v. Garner*, 498 U.S. 279, 286 (1991) and

---

[6]    Courts generally apply the higher standard when the standard does not affect the outcome. *See, e.g.*, *Jenkins v. Woody*, 2017 WL 362475, at *12 (E.D. Va. Jan. 21, 2017); *Glynn v. EDO Corp.*, 2010 WL 3294347, at *2 (D. Md. Aug. 20, 2010); *Steves & Sons*, 327 F.R.D. at 105 (following *Jenkins* and *Glynn*); *Haysbert v. Bloomin' Brands, Inc.*, 2021 WL 5003284, at *4 (E.D. Va. July 9, 2021) (relying on *Steves*, 327 F.R.D. at 104-05).

*Herman & MacLean v. Huddleston*, 459 U.S. 375, 389-90 (1983)). Here, a spoliation sanction, while significant, is nothing like involuntary commitment.

"Third, the specific intent required to impose sanctions under Rule 37(e)(2) sets a sufficiently high bar such that a 'clear and convincing' burden of proof is unnecessary." *Id.* Because the Rule already provides sufficient protection, there is no reason for a heightened standard. And "[f]ourth, neither the language of Rule 37(e)(2) nor the Advisory Committee notes to the 2015 Amendment suggests an intent to impose a heightened burden of proof." *Id.*

"Finally, the default preponderance standard is preferable because . . . imposing too strict a standard of proof in the context of establishing entitlement to an adverse inference instruction risks subverting the prophylactic and punitive purposes of the adverse inference." *Id.* (cleaned up).

This Court should adopt the Second Circuit's analysis. It would be perverse if Dr. Kradin—a professional expert witness—could delete all his emails but *Pecos River* would have to prove by *clear and convincing evidence* that he did it on purpose. Imposing a heightened evidentiary standard nowhere found in Rule 37 is both bad law and fundamentally unfair.

### B.     Dr. Kradin Deliberately Deprived Pecos River of Relevant Evidence.

Whatever the standard, Pecos River proved that Dr. Kradin intentionally deprived the company of evidence. After all, "[t]here need not be a smoking gun to prove intent." *Paisley Park Enters.*, 330 F.R.D. at 236 (internal quotations omitted). Instead, courts evaluate intent through four factors: "(1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator." *StoneX Grp., Inc. v. Shipman*, 2024 WL 1509346, at *11 (S.D.N.Y. Feb. 5, 2024); *see also F&G Int'l Grp.*

27

*Holdings, LLC*, 339 F.R.D. 325, 332 (S.D. Ga. 2021) (same factors). Each factor supports finding intent here.[7]

**First**, Dr. Kradin deleted evidence he knew was material. There is no dispute that he deleted emails concerning the Article, including communications with Dr. Maddox and Dr. Emory. And after warning his co-authors to "get ready for the J&J lawyers," Dr. Kradin deleted that very message from his sent folder. Ex. 1, MADDOX_00001941. By any measure, such evidence is material.

**Second**, the deletion was deliberate. This is not a case of inadvertent deletion or a computer malfunction. Instead, Dr. Kradin admits that he affirmatively deleted his emails—both sent and received—on an email-by-email basis. Ex. 2, Kradin Dep. 120:19-24. That is purposeful conduct. Nor does the fact that he deleted other emails change that conclusion. Deleting all emails one at a time does not negate intent but underscores that the destruction was deliberate.

**Third**, Dr. Kradin knew his emails would be sought in litigation. In fact, he warned his co-authors that "may be subpoenaed," that J&J and other talc-litigation defendants would "want to see" the materials, and that counsel would seek "reports, depositions, etc." Ex. 7, MADDOX_000001674; Ex. 8, MADDOX_00001744; Ex. 10, EMORY_00001189. His attempt

---

[7]    Unlike Rule 37(e)(1), Rule 37(e)(2) does not require a showing of prejudice. The Advisory Committee Notes make this explicit: "Subdivision (e)(2) does not include a requirement that the court find prejudice to the party deprived of the information. This is because the finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position." Fed. R. Civ. P. 37(e) (Adv. Comm. Notes on 2015 amend.); *see also Modern Remodeling, Inc. v. Tripod Holdings, LLC*, 2021 WL 3852323, at *13 (D. Md. Aug. 30, 2021) ("sanctions under Rule 37(e)(2) are available regardless of whether there is prejudice"); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 496 (S.D.N.Y. 2022) ("no separate showing of prejudice is required" under Rule 37(e)(2)). Thus, if the Court finds intent, Pecos River is entitled to a mandatory adverse inference instruction without any additional showing of prejudice.

to recast those statements as referring only to deposition questioning misses the point. He understood that the Article—and the materials underlying it—would be scrutinized and sought in litigation.

*Fourth*, Dr. Kradin's proffered explanation is not credible. Courts routinely infer intent where a party's explanation is implausible. *See, e.g.*, *Lamb v. Liberty Univ.*, 2022 WL 3692670, at *5, *7 (W.D. Va. Aug. 25, 2022) (inferring intent from "inconsistencies and oddities" in testimony); *Paisley Park Enters.*, 330 F.R.D. at 235 (inferring intent based on failure to disengage auto-delete function despite a court order). But that describes this case in spades. Dr. Kradin claims he deleted his emails to "clear up the space" and because he does not like "long chains of emails." Ex. 2, Kradin Dep. 121:1-7, 121:20-21; Opp'n 24. But not only does he have gigabytes of storage available, that self-serving defense does not explain why he deleted *sent* emails. The simpler explanation is he did not want anyone to see his emails because they show bad faith. This is particularly true because Dr. Kradin testified that defense counsel "will use anything you say in print against you." Ex. 2, Kradin Dep. 148:19-149:2, 150:20-25.

Wrongly applying a clear-and-convincing-evidence standard, Magistrate Judge Krask concluded that Dr. Kradin did not intentionally deprive Pecos River of evidence. But that analysis misses the mark. The Order emphasizes that Dr. Kradin deleted all his emails, even before working on the Article. Order 11. But earlier deletions do not show that Dr. Kradin—a sophisticated legal participant—did not understand that he needed to start preserving his emails once litigation became reasonably foreseeable, especially given Dr. Kradin's own warnings about subpoenas. The Order also notes that Dr. Kradin told his co-authors to be accurate and did not instruct them to delete their emails. *Id.* But given Dr. Kradin's sophistication, the Article's obvious falsehoods, the transparency of his excuses, and the fact that he was corresponding with a plaintiffs' firm while

29

preparing the Article, the far and away most plausible explanation is he did not want Pecos River's lawyers to see his emails. The Court is "not required to exhibit a naiveté from which ordinary citizens are free." *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019).

## **<u>CONCLUSION</u>**

The Court should dismiss Dr. Kradin's Objection and affirm the Spoliation Order.

Dated: April 7, 2026

Respectfully submitted,

*/s/ Benjamin L. Hatch*

**MCGUIRE WOODS**

Benjamin L. Hatch (VSB No. 70116)
Sylvia Macon Kastens (VSB No. 92375)
World Trade Center
101 West Main Street, Suite 9000
Norfolk, VA 23510-1655
Telephone: (757) 640-3727
Facsimile: (757) 640-3947
bhatch@mcguirewoods.com
skastens@mcguirewoods.com

Samuel L. Tarry, Jr. (VSB No. 36850)
1750 Tysons Boulevard, Suite 1800
Tysons, VA 22102-4215
Telephone: (703) 712-5000
Facsimile: (703) 712-5050
starry@mcguirewoods.com

**KIRKLAND & ELLIS, LLP**

Kristen Fournier (VSB No. 48290)
Matthew Bush *(pro hac vice)*
601 Lexington Avenue
New York, NY 10022
T: (212) 446-4800
F: (212) 446-4900
kristen.fournier@kirkland.com
matthew.bush@kirkland.com

Akhil K. Gola *(pro hac vice)*
1301 Pennsylvania Ave NW
Washington, DC 20004
T: (202) 389-3256
F: (202) 736-1910
akhil.gola@kirkland.com

*Attorneys for Plaintiff Pecos River Talc LLC*

31

**CERTIFICATE OF SERVICE**

I hereby certify that on April 7, 2026, the foregoing was filed with the Clerk of Court using

the CM/ECF system, which will automatically send notification of electronic filing to all counsel

of record.

/s/ Benjamin L. Hatch
Benjamin L. Hatch