# EXHIBIT 17

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

---oOo---

TERESA ELIZABETH LEAVITT
and DEAN J. MCELROY,

          Plaintiffs,

                                    No. RG17882401
vs.

JOHNSON & JOHNSON, et
al.,

          Defendants.
_____/


DEPOSITION OF DAVID S. EGILMAN, M.D., Ph.D.

VOLUME I, Pages 1 - 200




Taken before EARLY K. LANGLEY, B.A., RMR, RSA, CLR

CSR No. 3537

November 19, 2018




Aiken Welch Court Reporters
One Kaiser Plaza, Suite 250
Oakland, California 94612
(510) 451-1580/(877) 451-1580
Fax:  (510) 451-3797
www.aikenwelch.com

Page 118

Q. Okay.

A. I mean, I went over that with you. Am I assuming -- I didn't produce another copy of the medical records that I was sent by the Kazan firm.

Q. Did you bring --

A. Everything that I saw or was sent -- they sent me, and I think it was intended that that list that they produced here incorporate all those things.

Q. Okay. What about Number 8, "all documents regarding fee arrangements including billing records and invoices for work performed by each expert witness"?

A. I didn't bring any.

Q. Did you look for any?

A. Yeah. I don't have any.

Q. You don't have any invoices for this case?

A. I don't think so.

Q. Are you doing it pro bono?

A. No.

Q. Do you have any record of how many hours you've worked on this case?

A. Yes.

Q. How many?

A. 86 hours as of yesterday.

Q. You said 86 hours for working on this case, do

Page 119

you mean specifically the Leavitt litigation?

A. Correct.

Q. The 86 hours, does that include hours worked by your staff?

A. No.

Q. How many hours -- well, first, who is assisting you with the Leavitt litigation on your staff?

A. Nancy Ida and Joan Steffen, S-t-e-f-f-e-n.

Q. Do you have a record of how many hours Nancy Ida has worked on the Leavitt litigation?

A. No.

Q. Do you have any idea?

A. No.

Q. What about --

A. I mean, I have an idea. It's probably 20, 30 hours, but I don't know how many.

Q. How about Joan Steffen, how many hours has she worked on the Leavitt litigation?

A. Probably the same, maybe less.

Q. 20 to 30 or less?

A. I think so because I don't think -- most of the stuff that we've been doing, she's been doing, has been working on the papers. So we don't charge for that.

Q. When were you retained on the Leavitt litigation specifically?

Page 120

A. I don't recall.

Q. Any idea of the month?

A. No.

Q. The year? Was it this year?

A. Beats me. Probably. But I don't remember.

Q. Who retained you?

A. Mr. Satterley.

Q. Were you retained as a consulting expert first?

A. I don't think so.

Q. Probably?

All right. What about -- back to the Notice of Deposition, Exhibit 1191.

Did you bring Number 9, "all documents including correspondence consisting of communications between each expert witness and counsel for plaintiffs in this matter"?

A. No.

Q. Did you look for it?

A. No.

Q. Do you have any communications between you and Mr. Satterley?

A. I'm sure there is because he sent me all the documents related to the case, the Leavitt medical records, things like that.

Q. And what about --

Page 121

A. And I sent him all this stuff.

Q. And -- okay. So why didn't you bring it?

A. Well, this stuff is here.

Q. No. I mean why didn't you bring the documents responsive to Number 9?

MR. SATTERLEY: He's never seen this notice. He testified to that.

THE WITNESS: That would be one reason. I mean, I brought most of the things. I think everything substantively, you know, aside from my flight arrangements when I was coming, when we were meeting is probably here on the table produced.

BY MS. ZOU:

Q. Do you still --

A. Related to this case plus the other stuff on the other two cases.

Q. Do you have emails between you and Mr. Satterley?

A. Probably some in the last day or two, yeah.

Q. So your email is no longer -- or did you ever have a program of deleting emails?

A. Yeah. They delete.

Q. How often -- or how soon after you sent you --

A. Usually they leave right away. When you send them -- it's a Purdue Pharma program, so you send them

Page 122

and they exist on your server and they go away after, you know, time set.  One minute, 5 minutes, 30 minutes.

Q.  And that's for received emails or sent emails?

A.  That's for sent emails.

Q.  What about received emails?

A.  Those I delete.

Q.  You regularly delete all --

A.  Right.

Q.  -- received emails?

A.  It's my policy to delete all emails.

Q.  And why is that?

A.  Well, two reasons.  Well, the main reason is because defense lawyers hack my computers and use material they get from my computers to lie to a judge and get my testimony struck.  So I try not to have anything accessible.

Q.  Did you --

A.  The case is Egilman v. Keller & Heckman.

Q.  So you said two reasons.  What's the other reason?

A.  I think that's the main reason.  The other reason is anybody could hack them, but the only one -- the only one that's actually done it is lawyers, defense lawyers.

Q.  Who sets the time on how soon after you send an

Page 123

email that they get deleted?

A.  I do.

Q.  And what is the time that you set?

A.  It depends on what it is.

Q.  Oh, you have different times for different emails?

A.  I can set -- usually there's a standard time and you could set it whatever you want.

Q.  Well, what did you set it as?

A.  Usually it's a minute.

Q.  Okay.  You said you still have some emails between you and Mr. Satterley in the last day or two?

A.  Probably related to when I'm going to show up.

Q.  Because you chose not to delete those?

A.  Probably.  One was a direction, so I didn't -- I think I didn't delete directions.

Q.  Let's do your CV.  Is the most updated CV the one that we marked today?

A.  Yes.

Q.  So that's 1176?

A.  Yes.

MR. SATTERLEY:  Do you want me to help you find it?

MS. ZOU:  Yes, please.

MR. SATTERLEY:  What's blue represent again?

Page 124

THE WITNESS:  Duty.

MR. SATTERLEY:  Duty?  Okay.

Here's the duty.

MS. ZOU:  No.  He can take that.  I have this, what you sent me.

BY MS. ZOU:

Q.  Okay.  So a couple things that were interesting.  On the third page, I think, where you talk about membership in societies?

A.  Yeah.

Q.  So you've joined the Geological Society of America this year?

A.  Right.

Q.  Is there any requirements -- or prerequisite to joining?

A.  I don't think so.

Q.  So you just signed up for it?

A.  Correct.

Q.  Have you done any activities with Geological Society of America?

A.  Activities?  Probably no.

Q.  Well, what -- what is the nature of your involvement with the Geological Society of America?

A.  I get their magazines, I get their emails, I get their blog posts.  I get access to some

Page 125

publications.

Q.  Okay.  Is that all?

A.  Well, I get to go to their meetings if I want to get notice of their meetings.

Q.  Have you gone to any meetings?

A.  Not yet.

Q.  Do you plan to?

A.  Depends what they're talking about, they don't have meetings scheduled yet.

Q.  You also joined the Mineralogical Society of America this year?

A.  Yeah.  Or yes.

Q.  Any prerequisites to joining?

A.  I don't think so.

Q.  And what -- how did I say it before?  What is the nature of your involvement with the Mineralogical Society of America?

A.  I get their mailings.  I get access to their publications.  I think I get a discount.

Q.  So is anything that you brought today from the Geological Society of America or Mineralogical Society of America?

A.  Don't think so.

Q.  When were you first retained in a talc case against Johnson & Johnson?

Page 198

4:30 now.

MS. ZOU:  That's fine.

(Recess taken.)

MS. ZOU:  Back on the record.

We've decided to stop for today and reconvene at 9:00.

MR. SATTERLEY:  Yeah.  And we'll leave all the exhibits here.

MS. ZOU:  Exactly.

(Whereupon, the deposition was adjourned at 4:40 p.m.)

Page 199

SIGNATURE OF DEPONENT

I, the undersigned, DAVID S. EGILMAN, M.D., Ph.D., do hereby certify that I have read the foregoing deposition and find it to be a true and accurate transcription of my testimony, with the following corrections, if any:

PAGE    LINE                    CHANGE
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____
____    ____    _____

_____
DAVID S. EGILMAN, M.D., Ph.D., Date

Page 200

STATE OF CALIFORNIA      )
                         )    ss.
COUNTY OF ALAMEDA        )

I, EARLY LANGLEY, a Certified Shorthand Reporter, State of California, do hereby certify:

That DAVID S. EGILMAN, M.D., Ph.D., in the foregoing deposition named, was present and by me sworn as a witness in the above-entitled action at the time and place therein specified;

That said deposition was taken before me at said time and place, and was taken down in shorthand by me, a Certified Shorthand Reporter of the State of California, and was thereafter transcribed into typewriting, and that the foregoing transcript constitutes a full, true and correct report of said deposition and of the proceedings that took place;

IN WITNESS WHEREOF, I have hereunder subscribed my hand on November 21, 2018.

_____
EARLY LANGLEY, CSR NO. 3537
State of California